# Exhibit B



## AGV2 – US Container Glass Project

### Arglass Southeast LLC

### US Container Glass Project

### COMMERCIAL CONDITIONS

**This document is prepared by:**
cm.project.ing GmbH

 cm.project.ing

| REV. | DATE | CREATED BY | CHECKED BY | APPROVED BY | DESCRIPTION |
|------|------|------------|------------|-------------|-------------|
| 00 | 25/05/2017 | TG | | | |
| 01 | 06/06/2017 | TG | | | |
| 02 | 12/06/2017 | TG | | JA (Arglass) | |
| 03 | 18/06/2019 | TG | | | renamed from "Commercial Tender Document" to "Commercial Conditions" |

## AGV2 – US Container Glass Project

**Content**

1.  General .................................................................................................4
2.  Specification .........................................................................................4
3.  Personal Briefing ..................................................................................4
4.  Delivery Schedule .................................................................................4
5.  Manufacture, Set-Up, Assembly and Commissioning .........................5
6.  Packaging for Transport........................................................................7
7.  Availability of the System .....................................................................7
8.  Acceptance ...........................................................................................8
9.  Contract Liquidated Damages ..............................................................9
10. Termination of the contract ..................................................................9
11. Payment in Advance ...........................................................................10
12. Rectification of Faults after expiration of the Liability Period for Faults ...........11
13. Contract Price .....................................................................................11
14. Variation...............................................................................................13
15. Force Majeure......................................................................................13
16. Documentation......................................................................................14
17. Standards ............................................................................................15
18. Warranty, Insurance and Limitation Period ........................................15
19. Amendements, Extension ...................................................................19
20. Place of Fulfilment, Court of Jurisdiction, Applicable Law................19

## AGV2 – US Container Glass Project

### Commercial conditions

BETWEEN:

Arglass Southeast LLC
c/o Cambium USA, Inc.
10 East 22nd Street, Suite 3
New York, NY 10010
United States of America

-Hereafter referred to as Customer-

And

**The Supplier – mentioned in the Particular Conditions to this Agreement**

-Hereafter referred to as Supplier-

-Both are mentioned as Parties -

## AGV2 – US Container Glass Project

**1.   General**

This Commercial Tender Document, along with the attached Contract Documents (as defined below) will, when executed by both Parties, constitute the entire agreement ("Agreement") for the US Container Glass-Project, as further described herein. Changes to this Commercial Tender Document must be made in the Particular Conditions Document. The following attached documents are hereby incorporated herein by reference (the "Contract Documents"):

- Document 00 – General Tender Document
- Document 01 – Milestone Planning
- Document 02 – Technical Specification
- Document 03 – Training Definition
- Document 04 – Acceptance
- Document 05 – Commercial Conditions
- Document 06 – Performance Test
- Document 07 – Scope of Supply
- Document 08 – Non-Disclosure Agreement
- Document 09 – Particular Conditions

**2.   Specification**

2.1.   Technical Specification can be found in **Document 02 – Technical Specification**.

2.2.   The goods and services required to be furnished under this Agreement (the "Work") and documentation must conform to the standards set forth in **Document 02 – Technical Specification**, as well as all US laws, rules and regulations and the most stringent of the international standards and acts engaged in or observed or approved by a significant portion of the glass industry for similar facilities and which accomplish the desired result in a manner consistent with the applicable industry standard of reliability, safety, environmental protection, economy and expediency (the "Norm").

**3.   Personal Briefing**

3.1.   The Supplier will train the Customer personnel regarding work in accordance with **Document 03 – Training Definition**. All costs for Supplier's employees and material costs for this training are included in the Contract Price. The training dates are to be agreed upon shortly. The training is necessary in order for the acceptance of the Work to be carried out.

**4.   Delivery Schedule**

4.1.   Delivery conditions: DDP Customer's facility in Valdosta, Georgia (Incoterms 2010), sea freight capable packed. Customer hereby nominates the company indicated in Exhibit 4.1 as the sole approved provider for all logistics requirements for all goods to be shipped to the Customer's facility including shipping, customs clearing and final delivery ("Shipping Agent"). The Supplier shall use the Shipping Agent to ship all goods to Customer.

4.2.   The goods have to be packed into containers, including packaging and packaging material, suitable for sea freight (3 months) and including all necessary export and import documents to the United States.

4.3.   The schedule for delivery can be found in **Document 01 – Milestone Planning**.

## AGV2 – US Container Glass Project

4.4.  If the payments are undisputed and do not reach the Suppliers bank account within the agreed upon payment schedule in Section 13 for any reason other than bank error or a Force Majeure Event, the Supplier is allowed to interrupt the implementation of his performance. Agreed delivery and performance dates shall be extended by this period. Liquidated damages shall not be payable for this period. The Contract Price as per Section 13 shall be agreed anew if this period exceeds five (5) months.

**5.**    **Manufacture, Set-Up, Assembly, Installation and Commissioning**

5.1.  The assembly conditions and construction requirements at the set-up location can be seen in the layout in **Document 00 – General Tender Document**.

5.2.  **Naming of the Project Manager**
The Project Manager of the Supplier who is responsible for the development of the project is to be named in the Particular Conditions. In doing so, the name, address and mobile telephone number and email address is to be stated and updated as needed from time to time. In the event that the Project Manager is absent, an appropriate substitute is to be named.

The Customer has to name a responsible Project Manager in the Particular Conditions with all contact information like telephone number and email address, which will be updated as needed from time to time. In the event that the Customer Project Manager is absent, an appropriate substitute is to be named.

5.3.  **Manufacturing documents**
Supplier has to provide Customer with layout preliminary drawings ("Preliminary Drawings") for approval no later than the date set forth in **Document 01 – Milestone Planning**. Any deviations and errors which are caused by Supplier go to its own costs. Customer has to review and approve or reject the documents provided by Supplier within 15 Business Days after receipt.  During such review period, Supplier will be available at all reasonable times to meet with or respond to any comments or questions of Customer, and to respond promptly.  Supplier must correct any errors in the Preliminary Drawings and otherwise incorporate all of Customer's reasonable comments necessary to make such Preliminary Drawings comply with the technical specifications as described in **Document 02-Technical Specifications**.  Supplier shall be responsible for confirming that all technical specifications and Final Design Documents comply with all US laws, rules and regulations.  The final Preliminary Drawings submitted to Customer and to which Customer has no comments and queries are referred to herein as, the "Final Design Documents." The review, approval (or lack thereof), acceptance, comment or evaluation by Customer of the Final Design Documents and the fact that Customer has not discovered any errors or defects reflected in such Final Design Documents, whether with respect to the accuracy of the dimensions, details, integrity, or quality of the Final Design Documents, or otherwise, will not relieve or release Supplier of any of its duties, obligations, or liabilities under the terms of this Agreement.  Supplier will not make any changes to the Final Design Documents unless approved in writing by Customer.

All information and data in any format relating to the project (including, but not limited to, that relating to accounting, financial, business, legal, marketing, branding, intellectual property and information technology matters, technology, processes or methods utilised) including any design documents, layouts, reports, opinions, recommendations, analyses, compilations, studies or other documents, may not be disclosed or communicated to third parties without the written permission of Customer.

## AGV2 – US Container Glass Project

The disclosure to third parties with prior Customer written agreement as part of the project fulfilment is admissible.

5.4. **Consultation Meetings**
On request of the Customer, the Supplier is to participate in person at joint consultation meetings at a location specified by the Customer. No extra cost to the Customer will result due to the consultation meetings taking place. These consultation meetings are limited to five (5) meetings.

5.5. **Manufacturing Inspections**
The Customer – or any person assigned by the Customer – is permitted to carry out manufacturing inspections at the premises of the Supplier. The Supplier is to inform the Customer in writing three weeks in advance with regards to the start date of the manufacturing process as well as the duration of the manufacture.

5.6. **Approval of Documents**
To aid the Supplier in developing the Initial Design Drawings, Customer will send to Supplier execution drawings for Supplier's review and approval. Supplier has to review and approve or reject the execution drawings provided by Customer within 15 Business Days of receipt. If Supplier rejects the execution drawings, Customer and Supplier shall meet to discuss any necessary changes to the execution drawings.

5.7. **Assembly; Installation**
The Supplier will carry out the assembly and installation in accordance with **Document 07 - Scope of supply** and services within the deadlines that are stipulated in this Agreement.
All equipment, devices, tools, materials, measuring instruments, personnel, etc. that are required for the assembly and installation phase are included in the service package that is provided by service Supplier.
All shipments must be made in accordance with the Shipping Agent's and the Customer's instructions and the Norm.
In the event that it emerges during the assembly or installation phase that particular personnel provided by the Supplier are not capable of fulfilling the requirements on the construction site, then the person(s) in question are to be replaced by competent personnel within three Business Days.
The Supplier hereby commits themselves to submitting a written progress report to the Project Manager of the Customer upon Customer's request, but in any event no less than weekly.

5.8. **Work Assigned to Sub-Contractors**
Reassigning services to any third parties is subject to the express prior written approval by the Customer.

The Supplier is responsible for selection of subcontractors with regard to required qualifications and quality and time of work performed by subcontractors.

It is a precondition for the approval being granted by the Customer that the Supplier provides all documents and data that are relevant to the subcontractor contracts and available at the time of application for the approval (service specifications, offers, terms of contract, conditions of insurance, etc.). Moreover, the Supplier undertakes, upon the Customer's request, to provide the Customer directly with any contracts concluded between Supplier and the subcontractors together with any other data and information that are relevant to this Agreement.

## AGV2 – US Container Glass Project

5.9. **Delivery and Labelling**
Supplier shall notify the logistics provider of any shipment at least 10 Business Days prior to the shipment date. The packages are to be labelled in accordance with the unit list and the defined Incoterm.

5.10. **Travel and Travel Documents**
The acquisition of all travel documentation (such as Visas, tickets, etc.) is the responsibility of the Supplier. The Customer shall, at the Supplier's sole cost and expense, support the Supplier with invitation letters and other documents which are necessary from Customer's side to receive working Visas.

# 6. Packaging for Transport

6.1. **Full price**
The Contract Price includes all costs and charges for: (i) labor, supervision, permits, licenses, materials, equipment and tools; (ii) packing, loading and transportation of goods to Customer's plant in Valdosta, Georgia; (iii) assembly and installation; (iv) Supplier's travel costs and expenses / expense rates; and (v) any other services and items required for Supplier to fulfill its obligations under this Agreement.

6.2. **Delivery Documents**
The Supplier must send to the Customer, along with the applicable shipment, an electronic copy and a hard copy of the following delivery-documents, all of which shall be in English language:

    a.   Commercial Invoice
    b.   Certificate of Origin
    c.   Bill of Lading
    d.   Packing List; detailed List of Materials
    e.   Material Safety Data Sheet (only if necessary for delivery)
    f.   Chemical analysis (only if necessary for delivery)
    g.   all other documents required for customs declaration
    h.   Installation Manual
    i.   Operation-Manual

6.3. **Waste Disposal**
The Supplier is obliged to help the Customer to prepare the disposal of all packaging and other waste that occurs due to **Document 02 – Technical Specification** and services provided by the Supplier. Such disposal will be organized and paid for by the Customer.

# 7. Availability of the System

7.1. **Performance Guarantee**
The Supplier guarantees that the system(s) described in **Document 02 – Technical Specification** (the "System(s)") will perform as stated in the **Document 02 – Technical Specification** (the "Performance Guarantee"). This performance must be sustained over continuous operation period amounting to 24 hours per Business Day. The performance test is described in **Document 06 – Performance Test**.

7.2. **Availability Guarantee**
The Supplier also guarantees an annual working time (availability of the System) that amounts to three-shift operation a day for seven days a week (the "Availability Guarantee"). All assurances of performance characteristics as well as guarantees are designed for three-shift operational use (24 hours a day) and for seven (7) days a

## AGV2 – US Container Glass Project

week. This only takes place, if the Customer makes sure, that the maintenance was done substantially in accordance with the reasonable instructions of the Supplier indicated in the instruction manual.

7.3. **Guarantees**
If, following the completion of the Performance Tests, the Customer determines that the System fails to meet the Performance Guarantee or the Availability Guarantee for any reason other than the fault of the Customer, the Supplier shall, at the Supplier's sole cost and expense: (i) investigate the root cause of the failure; (ii) develop a "make right" solution; and (iii) promptly provide all corrective work as is reasonably required to implement the solution until the System meets the Performance Guarantee and the Availability Guarantee or all parameters, when tested in accordance with this Agreement, fall within the permitted validity range.  Corrective work includes, but is not limited to, any necessary removal, disassembly, reinstallation, repair, replacement, reassembly, reconstruction, retesting, and/or reinspection of any part or portion of the Work.

## 8.    Acceptance

8.1. **Preliminary examination**
The initial inspection of all relevant Systems is provided by the Supplier.

8.2. **Acceptance**
The Parties shall jointly nominate a group of people to carry out acceptance procedures as described in **Document 04 - Acceptance**. Each party shall certify the Final Acceptance (as defined in Section 8.3 below) upon such party's reasonable determination that the System meets the requirements set forth in this Agreement, including, but not limited to, the following the required acceptance tests:
   a.      Acceptance of engineering documents
   b.      FAT – Factory Acceptance Test (only on demand of Customer)
   c.      Cold Test Run
   d.      Hot Test Run
   e.      Performance Test
The Performance Test Run is to take place at the premises of the Customer in accordance with **Document No. 06 – Performance Test**.

8.3. **Successful final acceptance**
The successful final acceptance of the System (the "Final Acceptance") with signed acceptance record has to take place within forty (40) Business Days of the successful performance of the Hot Run Test in the event that the contractual requirements are satisfied. Supplier will not charge any additional amounts to Customer in case of delay of start-up which was announced in writing four (4) weeks ahead of the original date. Customer shall make reasonable efforts to reach Final Acceptance. In furtherance thereof, Final Acceptance shall not be unreasonably delayed or withheld by the Customer.

8.4. **Liability**
The responsibility for the proper operation of the System will transfer to the Customer from the Supplier upon Customer's Final Acceptance in accordance with Section 8. Notwithstanding anything to the contrary herein, Supplier will continue to be responsible for the guarantees and warranties set forth herein.

To the fullest extent permitted by applicable law, indirect or consequential losses or damages such as loss of production or loss of profit are waived by each party.

# AGV2 – US Container Glass Project

8.5. **Permit**
The Customer does not permit an acceptance to take place via usage or commissioning of the System except as mentioned under Section 8.3 above. The transfer of risk for operation of the System will pass on to the Customer upon Final Acceptance.

## 9. Contract Liquidated Damages

9.1. **Liquidated Damages for Delayed Delivery**
In the event that the start-up date of the System is delayed due to reasons other than the Customer's fault or a Force Majeure Event, Supplier shall pay to Customer liquidated damages for this delay. Liquidated damages shall be in an amount equal to one half of one percent of the Contract Price per day between the originally scheduled start-up date set forth in **Document 01 – Milestone Planning** and the date stated in the Completion Certificate once issued.

9.2. **Liquidated damages for lack of performance**
In the event that the System / machine does not meet the Performance Guarantee or Availability Guarantee as further described in Sections 7.1 and 7.2 (planned maintenance or production downtime due to economic reasons are exempted) within the guarantee time, then liquidated damages, as described in Section 9.1, will apply.

9.3. **Maximum liquidated damages**
The maximum of all penalties for all matters covered by Sections 9.1-9.3 is limited to [15.00% of] the aggregate Contract Price and is the sole and complete compensation to the Customer for delays or non-achievement of technological parameters as per Sections 9.1 to 9.3 of this Agreement; provided, however, that if the maximum liquidated damages are assessed and delay persists, such delay will be deemed to be a Supplier default and the Customer may terminate this Agreement for cause in accordance with Section 10. For any other breach of this Agreement by Supplier, Customer's remedies provided herein, including without limitation Customer's right of termination (which is also available to Customer for the matters covered by Sections 9.1-9.3), shall be cumulative and in addition to any other remedies provided by law or equity.

9.4. **Liquidated Damages**
Liquidated damages will be payable from the Supplier to the Customer upon demand. If the Customer becomes entitled to liquidated damages, the Customer may invoice the Supplier or deduct the amount of such liquidated damages from the final amount due or which may become due to the Supplier under this Agreement.  The Parties acknowledge, as of the date of this Agreement, the liquidated damages specified herein represent reasonable estimates of actual damages that the Customer would incur as a result of any delay or failure by the Supplier to meet the performance or availability guarantees set forth herein, and such liquidated damages are not a penalty. The Customer will not be required to prove that it has incurred actual damages in order to assess liquidated damages against the Supplier.  The Supplier's obligations to pay the Customer liquidated damages will not affect, waive, or modify the Supplier's warranty obligations or any other of Supplier's obligations to the Customer.

## 10. Termination of the contract

10.1. **Suppliers Event of Default**

## AGV2 – US Container Glass Project

The occurrence of any one or more of the following events shall constitute an event of default by Supplier hereunder:

    a.    Breach by the Supplier of any obligation, covenant, agreement, obligation, duty, or provision of this Agreement, and failure to cure its breach within thirty (30) days after notice from the Customer;

    b.    Supplier makes a general assignment for the benefit of its creditors, is unable to pay its debts as they become due, or becomes the subject of any voluntary or involuntary bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding under any applicable law, now in existence or hereafter becoming effective, and, in the case of any involuntary proceeding, that is not dismissed or stayed within forty-five (45) Days after it is commenced;

    c.    Supplier intentionally or negligently disregards any applicable law, Norm, or this Agreement and does not commence to cure its noncompliance therewith within thirty (30) Days after notice from Customer;

    d.    Supplier disregards the instructions of Customer delivered in accordance with this Agreement; or

    e.    Supplier fails to show adequate progress of the Work and fails to provide, or implement a revised project performance schedule within the time specified in **Document 01 – Milestone Planning** and does not cure its noncompliance therewith within thirty (30) days after notice from Customer.

    f.    Failure by Supplier to submit a bank guarantee within the time specified in Section 11.1.

10.2. **Customers Event of Default**

The occurrence of any one or more of the following events shall constitute an event of default by Customer hereunder:

    a.    Breach by the Customer of any obligation, covenant, agreement, obligation, duty, or provision of this Agreement, and failure to cure its noncompliance within thirty (30) days after written notice from Supplier;

    b.    Customer fails to make the payments stipulated in Section 13 of this Agreement that are not in dispute within thirty (30) days after written notice from Supplier; or

    c.    Customer goes bankrupt or institutes composition proceedings with creditors or goes into liquidation.

10.3. **Termination for cause**

Upon the occurrence of an event of default, the non-defaulting party may, without prejudice to any other right or remedy the non-defaulting may have under this Agreement or at law or in equity, terminate this Agreement or any portion of this Agreement.

10.4. **Termination without cause**

Customer may at its convenience unilaterally terminate this Agreement after giving notice of at least thirty (30) days to Supplier. In the event of any such termination without cause, Supplier shall be entitled to recover all sums already paid or remaining due to Customer for the Work duly executed as of the date of such termination without cause.

## 11.  Payment in Advance

11.1. **Guarantee by Bank**

## AGV2 – US Container Glass Project

In order to ensure the advance deposit, the Supplier shall, at its sole cost, deliver and maintain for the period beginning as of [_____] and ending on the Final Acceptance date a directly enforceable, indefinite and irrevocable bank guarantee from a financial institution permitted by the European Union and acceptable to Customer according to the applicable law. This guarantee is to be submitted to the Customer together with the countersigned Supplier as of the Effective Date.  Failure to submit an acceptable irrevocable bank guarantee on time will be an event of default, pursuant to which Customer shall have the right to terminate this Agreement for cause in accordance with Section 10.3. The costs arising from the guarantee are to be assumed by the Supplier.

### 12.   Rectification of Faults after expiration of the Liability Period for Faults

#### 12.1.   Rectification and availability of spare parts
The Supplier shall remedy all defects that occur after the expiration of the Warranty Period for faults and shall supply the Customer with necessary replacement parts for a period of fifteen (15) years. After this period of fifteen (15) years Supplier will support Customer in the procurement of necessary spare parts. The prices of these parts are to be no greater than the prices that have been calculated for this Agreement.

#### 12.2.   Reaction time
The Supplier shall have a remote 24/7 support service available to customer and send a qualified technician within three Business Days after the written notification from the Customer with clear description of defects in order to rectify the problem (the "Required Response Time"). The reaction time also applies in cases of a warranty defect but only if a correction of defect via telephone or tele-link is not possible.  In the event of the Supplier is unable to send a qualified technician within the Required Response Time, Customer may, at Supplier's cost, correct, or cause a third party contractor to correct, such defect.

### 13.   Contract Price

13.1.  The Contract Price is a firm, global lump sum, non-adjustable amount as of the Effective Date. Therefore, except for scope variation orders, the Contract Price shall not be increased for any reason under this Agreement.

The Contract Price is defined in the Order document.

The Order document will be issued with the signed Contract Document from the Customer.

Any quantities, prices or rates of payment per unit of quantity indicated in the Contract Documents or in a price unit schedule have been provided solely for information purposes in order to estimate additional costs or scope variation if any.

13.2.  **Conditions of Payment**
Supplier's right to receive any payment hereunder is conditioned upon submitting to Customer:

a.   a signed and stamped invoice;
b.   a progress report (except Milestone 1 (as defined in **Document 01 - Milestone Planning**)); and
c.   evidence of achievement of all milestones required prior to payment;

Commercial Conditions.docx

## AGV2 – US Container Glass Project

The invoice has to be sent in the form of a hardcopy by post and in electronic form to the following addresses:

E-Mail:   jda@arglass.us.com

Postal:   Arglass Southeast LLC
          c/o Cambium USA, Inc.
          10 East 22nd Street, Suite 3
          New York, NY 10010
          United States of America

All invoices and payments that become payable under this Agreement will be in United States Dollars. All invoices will be due and paid on the 15th day of the month immediately following the month in which the invoice is received.
Notwithstanding anything to the contrary, if a payment to be made under this Agreement falls due on any day that is not a Business Day, the payment shall be automatically deemed due on the first Business Day thereafter. "Business Day" means every day other than a Saturday or Sunday or any other day on which banks in the State of New York are permitted or required to remain closed.

13.3.  **Other payments**
Further partial payments will not be supplied. Payment requires the submission of an auditable invoice that may only be sent in the form of a hardcopy by post and in electronic form. The invoice has to be sent to the following addresses:

Arglass Southeast, LLC
c/o Cambium USA, Inc.
10 East 22nd Street, Suite 3
New York, NY 10010
United States of America

13.4.  **Payment dates**
All payments are subject to complete fulfillment to Customer's reasonable satisfaction of the Milestones set forth in **Document 01 – Milestone Planning.** Payments will be initiated as described in the Particular Conditions

13.5.  **Travel costs**
All costs for travelling and accommodation are included in the Contract Price, except for travel and accommodations that may be required for the Supplier to remedy a defect caused by the Customer.

13.6.  **Holdbacks**
Any provision hereof to the contrary notwithstanding, upon the occurrence and continuance of any of the following events, Customer, upon written notice to Supplier within forty-five (45) days after becoming known, may, but shall have no obligation to withhold or retain such portion (including all) of any payment due to Supplier under this Agreement that is equal to the reasonable cost to cure the event giving rise to the holdback:

a.  Supplier Event of Default shall have occurred;
b.  Any part of such payment is attributable to Work which have not been performed in accordance with this Agreement; or
c.  Non-presentation of the documents mentioned in Sections 5.3 and 6.2.

Commercial Conditions.docx

## AGV2 – US Container Glass Project

No payment made hereunder shall be construed to relieve Supplier of any of its obligations hereunder. Notwithstanding any other provision to the contrary herein, Supplier shall not have any rights of termination or suspension under this Agreement as a result of Customer's exercise or attempted exercise of its rights.

13.7. **Taxes**

Supplier will be liable, for all taxes, imposts, duties, withholding taxes, charges, fees, levies, employee and employer's national income contributions, other contributions, and/or deductibles relating to such fees or other dues or assessments of whatsoever nature payable from the Commencement Date arising out of Supplier's performance of the Work and any other obligations under the Agreement which apply in Supplier's country. All taxes, duties, charges, fees and other levies in the country of the Customer are on Supplier's account.

## 14. Variation

14.1. **Right to Vary**

Scope variations may be initiated by Customer at any time during the term of this Agreement, either by written instruction or by requesting that Supplier submits a proposal. Supplier shall not implement any variation or other change to the scope, unless a scope variation order has been issued by the Customer in writing. In case it is technically impossible to commit to a variation requested by Customer, Supplier shall promptly notify Customer by giving him all explanations in support of its rejection.

14.2. **Procedure of Variation**

Prior to any scope variation order, Supplier shall submit to Customer a scope variation proposal in a timely manner including:

a.  a description of the variation,
b.  any necessary changes to the Project Performance Schedule, and
c.  Adjustments to the Plant Aggregate Construction Costs and as the case may be to the Contract Prices, if any, Time for Acceptance and/or changes to the Contract Documents

Upon receipt of such scope variation proposal, the Customer shall review such scope variation proposal and accept or reject such proposal in writing within fifteen (15) Business Days.  Failure by the Customer to provide a written acceptance will be deemed a rejection by the Customer of the scope variation proposal.  If the Supplier proceeds with any scope variation work without obtaining the Customer's prior written authorization in accordance with the previous sentence, then the Supplier will be solely liable for the costs of the variation and will not be entitled to any increase in compensation or any schedule extension for such variation.

14.3. **Impact of Variation**

Variation by Customer shall become effective, and Supplier shall commence with the performance of such variation, immediately upon receipt of a written Scope Variation Order from the Customer.

## 15. Force Majeure

15.1. **Definition of Force Majeure Event**

For purposes of this Agreement, "Force Majeure Event" means an unpredictable event beyond the reasonable control of the affected Party, which makes it impossible for such Party to perform its obligations, and to continue the project notably:

a.  natural disasters; extraordinary period of hard rain; earthquake

Commercial Conditions.docx

## AGV2 – US Container Glass Project

b. war of any kind, hostilities (whether war be declared or not), invasions, mobilizations, requisitions, or embargoes;

c. rebellions, revolutions, insurrections, acts of terrorism;

d. contamination by radio-activity from any nuclear fuel, any nuclear waste, radio-active toxic explosion, or other unknown properties of any nuclear assembly or one of the nuclear components of such assembly;

e. riot or agitation unless attributable to the employees of Customer.

f. general strikes in the industries and activities directly related to the purpose of the Agreement, except for strikes affecting Customer.

### 15.2. Effect of Force Majeure Event

Upon occurrence of an event considered by the Parties to constitute a Force Majeure Event which may affect performance of its obligations, the affected Party shall notify the other Party as soon as possible, and shall endeavour to continue to perform its obligations. The affected Party shall also notify the other Party of any alternative proposals, with the objective of completing the performance.

If the Parties have not reached an agreement one (1) month after meeting pursuant to a Force Majeure Event, Customer may terminate this Agreement if such Force Majeure event affects the manufacture, delivery or commissioning of the parts/System or performance testing and Supplier may terminate this Agreement if such Force Majeure event prevents the Customer from performing its obligations necessary for the Supplier to complete the manufacture, delivery or commissioning of the parts/System or performance test.

## 16. Documentation

### 16.1. Documentation

The Supplier shall furnish to the Customer the following documents (three hardcopies version and one digital version): English language according to Section 2.

On engineering:
2D top view
2D length section
2D cross section
3D simplified model with all utility connection points

At start up:
Operation instructions
Machine and circuit plans and instructions
Maintenance plans and instructions
Declaration of Conformity

No later than 40 days after the Acceptance Date:
Replacement parts lists with information regarding the sub-Supplier
Replacement parts lists with information regarding the Supplier
Wear and tear parts lists with information regarding the Supplier.

The Source codes has to be deposited in trust if Supplier eventually does not exist anymore in future.

### 16.2. Complete delivery of Documentation

The Customer has the right to withhold further payments and refuse acceptance until the above documentation has been submitted to the Customer in full.

## AGV2 – US Container Glass Project

**17.  Standards**

    17.1.  **Software standards**
All drawings and layouts must be compatible to Auto Cad 2012 and later versions or .dxf or .stp formats. The 3D volume model drawings should be provided by the Supplier as AutoCAD 3D file or Autodesk Inventor with all necessary utility connection points. In his offer, the Supplier provides an overview of the software which is used by him to make sure that it is compatible to the software which is used by Customer.

**18.  Warranty, Insurance and Limitation Period**

    18.1.  **Insurance**
**Care of the Works**
From the Effective Date to the Final Acceptance date of the Work the Supplier shall take full responsibility for the care thereof and of all temporary work and materials and in case any damage, loss or injury shall happen to the Work or to any part thereof or to any temporary Work or materials from any cause whatsoever, save and except the excepted risks (as defined below), shall at his own cost repair and make good the same so that at completion the Work shall be in good order and condition and in conformity in every respect with the requirements of this Agreement, applicable law, and the Customer's instructions. In the event of any damage loss or injury resulting from any of the excepted risks, Supplier shall, if and to the extent required by the Customer, repair and make good the same as aforesaid at the cost of the Customer. Supplier shall be liable for any damage to the Work occasioned by him in the course of any operations carried out by him for the purpose of complying with his obligations under any maintenance or defects liability provisions.

**Excepted Risks**
The "excepted risks" are

    a)    war, invasion, act of foreign enemies, hostilities or warlike operations (whether war is declared or not) or civil war,

    b)    insurrection, rebellion or revolution,

    c)    mutiny, military rising, military or usurped power, martial law or state of siege, or any other event or cause which determines the proclamation or maintenance of martial law or state of siege,

    d)    riot (in so far as it is uninsurable),

    e)    ionising, radiation or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuels,

    f)    a cause due to use or occupation by the Customer of any part of the Work,

    g)    a cause due to the Customer's design of the Work,

all of which are herein collectively referred to as "excepted risks".

**Damage to persons and property**
Supplier shall defend, hold harmless and indemnify the Customer from and against any and all losses, claims, demands, proceedings, damages, costs, charges and expenses whatsoever (including reasonably attorneys' fees and legal expenses) for injuries or damage to any person or property whatsoever which may arise out of or in consequence of Supplier's performance under this Agreement and against all claims, demands, proceedings, damages, costs, charges and expenses whatsoever in respect thereof or in relation thereto; provided, that nothing herein shall be deemed to render Supplier liable for or in respect of or to indemnify Customer against any compensation or damages for or with respect to injuries or damage to persons or property resulting

## AGV2 – US Container Glass Project

from any act or neglect done or committed by Customer, his agents, servants or other contractors (not being employed by Supplier) or for or in respect of any claims, demands, proceedings, damages, costs, charges and expenses in respect thereof or in relation thereto.

**Accident or injury to workmen**
The Customer shall not be liable for or in respect of any damages or compensation payable under applicable law in respect of or in consequence of any accident or injury to any workman or other person in the employment of Supplier or any sub-contractor save and except an accident or injury resulting from any act or default of Customer, his agents or servants, and Supplier shall indemnify and keep indemnified Customer against all such damages and compensation (save and except as aforesaid) and against all claims, demands, proceedings, costs, charges and expenses whatsoever in respect thereof or in relation thereto.

**Insurance Arranged by the Supplier**

Supplier must, at its sole cost and expense, obtain and maintain in full force and effect during the term of this Agreement and for any extended period provided for in this Agreement or by law, the insurance coverages as well as the limits and endorsements described below:

   (a)   Worker's Compensation and Employers Liability Insurance: $1,000,00;

   (b)   Commercial General Liability Insurance. $1,000,000 each occurrence and $2,000,000 general aggregate;

   (c)   Automobile Liability Insurance. $1,000,000 combined single limit; and

   (d)   Commercial Umbrella or Excess Insurance: $5,000,000 per occurrence, $5,000,000 aggregate. The excess policies shall be "following form" and shall not contain endorsements which restrict coverage as set forth in (a) (with respect to Employers Liability Insurance), (b), and (c) above.

In the event any insurance policy required is subject to a deductible or self-insured retention, such deductible or self-insured retention will be exclusively satisfied by Supplier. Supplier shall name the Customer as additional insured on each policy listed above. Supplier shall provide Customer with a certificate of insurance for each of the above policies within thirty (30) days of the Effective Date. Supplier must provide at least thirty (30) days prior written notice to Customer upon cancellation or any material adverse change in any insurance coverage that Supplier is required to carry under this Agreement.

**Insurance Arranged by the Customer**
Notwithstanding anything elsewhere contained in the Order and without limiting the obligations liabilities or responsibilities of the Supplier in any way whatsoever (including but not limited to any requirement for the provision by the Supplier of any other insurances) the Customer shall procure and maintain as appropriate in the joint names of the Customer, Supplier and sub-contractors, consultants and sub-consultants the following insurances which are subject to the terms, limits, exceptions and conditions of the Policy:

   (a)   PROPERTY/BUILDER's RISK Insurance – which will provide cover against accidental physical loss of or damage to the Work including temporary Work, plant and materials intended to form part of the

Commercial Conditions.docx

## AGV2 – US Container Glass Project

permanent Work with a limit of not less than USD 5,000,000 (five million USD).

(b)   PUBLIC LIABILITY Insurance – which will provide indemnity against the insured parties legal liability in the event of accidental death of or injury to third party persons and/or accidental loss of or damage to third party property arising directly from the execution of the Order with a limit of indemnity of not less than [USD5,000,000] (five million USD) in respect of all claims arising from any one occurrence or series of occurrences consequent on or attributable to one source or original cause.

(c)   PROFESSIONAL INDEMNITY Insurance – to be provided by Supplier.

(d)   SPECIAL RISKS Insurance – in respect of Riot, Strike and associated risks for damage to the Work, including temporary Work, plant and materials intended to form part of the permanent Work.

The Customer shall pay any premium due in connection with the insurance affected by the Customer.

The Supplier shall not include any premium charges for this insurance except to the extent that he may deem necessary in his own interests to effect supplementary insurance to the insurance effected by the Customer. The Customer reserves the right to call for full information regarding insurance costs included by the Supplier.

Any further clarification of the scope of cover provided by the Policies arranged by Customer should be obtained from the Customer.

In the event of any occurrence which is likely to or could give rise to a claim under the insurances arranged by the Customer the Supplier shall:

(a)   in addition to any statutory requirement or other requirements contained in the Order immediately notify the Customer's insurance broker or the insurers by telephone, telefax or email giving the circumstances nature and an estimate of the loss or damage or liability

(b)   complete a claims advice form available from the insurance brokers to whom the form must be returned without delay.

(c)   negotiate the settlement of claims with the insurers through the Customer's insurance brokers and shall when required to do so obtain the Customer's approval of such settlement.

The Customer and insurers shall have the right to make all and any inquiries to the site of the Work or elsewhere as to the cause and results of any such occurrence and the Supplier shall co-operate in the carrying out of such inquiries.

### Deductibles
The Supplier will be liable for the amount of any deductible (First Amount Payable) in respect of any claim made by or against the Supplier or sub-contractors under the insurance policies maintained by the Customer as well as the insurance policies maintained by the Supplier.

Where more than one Supplier is involved in the same claim, the deductible will be borne in pro-rata amounts by each Supplier in proportion to the extent of each

Commercial Conditions.docx

## AGV2 – US Container Glass Project

Supplier's admitted claim. The pro rata proportion will be at the discretion of the Project Manager.

The deductible for which the Suppliers are responsible and which are applicable in respect of each and every occurrence or series of occurrences attributable to one source or original case giving rise to a loss or damage or liability indemnifiable are as stated below:

**Contract Works**
**All claims – USD $25,000 (twenty-five thousand USD)**

**Public Liability**
**Property Damage only – USD $1,500 (one thousand five hundred USD)**

**Special Risks**
**0.10% of the Order Value in respect of loss by theft following an insured peril subject to a minimum of USD $250 (two hundred fifty USD) and a maximum of USD $2,500 (two thousand five hundred USD) in respect of theft losses**

Any amount which becomes payable to the Supplier or any of his sub-contractors as a result of a claim under the Contact Work Insurance shall, if required by the Customer, be paid net of the deductible to the Customer who shall pay the Supplier from the proceeds of such payment upon rectification repair or reinstatement of the loss or damage but this provision shall not in any way affect the Supplier's obligations liabilities or responsibilities in terms of the Order.

18.2. **Reporting of defects**
The Customer must promptly notify the Supplier of any defects within [___] Business Days of discovery of the same by delivering to the Supplier a written description of the defect.  However, the failure to notify the Supplier with the time provided for in the previous sentence will only relieve the Supplier of its warranty obligation for such defect to the extent such delay further damages the defective part or the System.

18.3. **Rectification**
Supplier hereby warrants that the System, including, but not limited to, all goods, parts, components, and equipment delivered hereunder, are merchantable, fit for the particular purpose detailed in this Agreement, free of defects in material, workmanship, design and manufacture.  Any defects that are discovered during the Warranty Period shall be replaced or corrected by Supplier or a third party at no costs to Customer. Normal wear and tear on parts is specifically excluded from the warranty, unless any proven defect(s) of such parts are due to wrong design or use of wrong material or defect(s) in manufacturing or caused by Supplier's negligence. Also excluded from the warranty are those parts:

    a.    where repair or replacement becomes necessary due to normal wear and tear, or due to corrosion caused by normal process operations.

    b.    on which repair, alteration, or adjustment has been performed or begun by the Customer or any third party without the Suppliers previous consent.

    c.    showing defects which have not been communicated to the Supplier in writing within a reasonable time after discovery and within the respective Warranty Period, but only to the extent such delay in notifying the Supplier caused the defect.

The warranty is given under the condition that:

    a.    raw materials, energy sources and utilities are used by Customer in accordance with the Supplier's written instructions in all material respects.

Commercial Conditions.docx

## AGV2 – US Container Glass Project

The supplies or parts thereof are not to be run under overload condition nor handled contrary in any material respects to the Supplier's instructions.

[The Supplier may attempt to rectify any defect up to three (3) times. If the defect is not rectified after the third attempt, Customer may engage a third party to rectify the defect at Supplier's cost.]

18.4. **No reaction in case of warranty**
If the Supplier does not begin to remedy a defect within five (5) Business Days of being notified of such defect by the Customer, Customer is allowed to fix the defects at Supplier's expense. Alternatively, the Customer is also allowed to claim a contractually agreed remuneration equal to the costs to correct the defect. The right to terminate this Agreement pursuant to Section 10 shall be reserved in case the Supplier breaches his warranty obligations.

18.5. **Choice of material**
The Supplier will be responsible for the correct choice of materials such that the System meets the technical specifications.

18.6. **Instructions by Customer**
If a defect caused in a written instruction issued by Customer, Customer is not entitled to a repair at Supplier's costs. The Supplier must submit a supplementary offer to remedy in this regard.

18.7. **Other cases**
In all other cases, the Customer is entitled to all legal warranty rights without any further restrictions. In urgent cases where there is a risk of disproportionately high damage, the Customer has the right to carry out rectification measures without having to give the Supplier an appropriate deadline to carry out subsequent fulfilment in advance. Customer will immediately inform the Supplier with regards to the implementation of such measures.

18.8. **Warranty period**
The warranties set forth in Section 18 will apply for a period of 24 months from the Final Acceptance date (the "Warranty Period").
Supplier shall ensure that there are support personnel available with valid visa documents for the duration of the Warranty Period.

## 19.  Amendments, Extension

19.1. All amendments and extensions to this Agreement are only effective in the event that they are written and confirmed by the Parties.

## 20.  Place of Fulfilment, Court of Jurisdiction, Applicable Law

20.1. **Place of Fulfilment**
Arglass Southeast, LLC
c/o Cambium USA, Inc.
10 East 22nd Street, Suite 3
New York, NY 10010
United States of America

20.2. **Effective Date**
This Agreement becomes effective on the date of signature of this Agreement and all Contract Documents from the last corresponding party (the "Effective Date").

## AGV2 – US Container Glass Project

**20.3. Exclusive Court**
The exclusive Court of Jurisdiction for all legal disputes arising from this Agreement is New York, New York USA.

**20.4. Applicable Law**
This Agreement will be governed by and construed in accordance with the internal laws of the State of New York, without regard to conflict of laws principles.

**20.5. Invalid clauses**
In the event that individual clauses of this Agreement be invalid, the remaining clauses will remain unaffected. The Parties will work together in order to replace invalid clauses with new regulations that are as consistent as possible to the invalid clause.

**20.6. Confidential Agreement**
Confidentiality Agreement and Standard Terms and Conditions, **Document 08 - NDA.**

**20.7. Approval for Export**
The offer is subject to the approval of the Export Authorities.

**20.8. Order of Precedence**
In the event of a conflict among the documents comprising the Agreement, the documents will be given priority in the following order:

1. Technical Specification
2. Particular Conditions
3. The Commercial Tender Document
4. The remaining Contract Documents

To the extent that either or both of the Parties find it convenient to employ their standard forms, such as forms for purchase order or acknowledgement of order, in administering the terms of this Agreement, the party may do so but none of the pre-printed terms and/or conditions on such form shall be applicable to the sale of the goods or services under this Agreement unless specifically accepted by the other party in writing.

**20.9. No partnership or Joint Venture**
This Agreement shall not constitute or give rise to a partnership between the Parties. All activities by Supplier hereunder shall be carried on by Supplier as an independent contractor and not as an agent for Customer.

**20.10. Entire Agreement**
This Agreement and any documents referenced in this Agreement set forth the entire agreement between the Parties and supersede all previous agreements and understandings, whether oral or written, between the Parties with respect to the subject matter of this Agreement.

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed by a duly authorized representative in duplicate, effective as of the day and year first written above.

**AS SUPPLIER**

Commercial Conditions.docx

Rev. : 03              Page 20 / 21              Date : 18/06/2019

## AGV2 – US Container Glass Project

**ALL GLASS s.r.l.**
Via Cesare Sarti, 20
43029 TRAVERSETOLO (PR)
C.F. e P.IVA 02051840342
Tel. 0521-340810 Fax 0521-340⁻ ⁻ ⁵

By: MARCO DOMENICO BALLERINI
Title: PRESIDENT
(Print Name)

**ARGLASS SOUTHEAST LLC**
**AS CUSTOMER**

By:
Title: CEO
(Print Name) JOSE DIEGO AROZAMENA