**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br>             Plaintiff, <br><br>     v. <br><br> IQVIA HOLDINGS INC., <br><br> and <br><br> PROPEL MEDIA, INC. <br><br>           Defendants. | Case No. 1:23-cv-06188-ER |

**ANSWER AND DEFENSES**
**OF DEFENDANT IQVIA HOLDINGS INC.**

Defendant IQVIA Holdings Inc. ("IQVIA") hereby answers the Complaint of the Federal Trade Commission ("FTC"). To the extent not specifically admitted, IQVIA denies the allegations in the Complaint. To the extent the Complaint purports to quote from documents or testimony, IQVIA refers to the documents or testimony themselves for their full contents and context. IQVIA has not attempted to verify the accuracy of the quotations or that the documents or testimony exist and denies the allegations to the extent the quotations are incomplete, inaccurate, or misleading, or to the extent the underlying documents or testimony do not exist. IQVIA's use of the Complaint's defined terms is solely for the Court's convenience, and IQVIA denies that the Complaint has defined these terms appropriately.

**PRELIMINARY STATEMENT**

IQVIA wants to acquire DeepIntent so that IQVIA can better compete in providing services related to healthcare digital advertising to consumers and healthcare professionals ("HCPs"). The

proposed transaction would benefit IQVIA's customers and increase the overall level of competition in healthcare digital advertising.

The FTC seeks to block IQVIA's acquisition of DeepIntent on the basis that the acquisition will substantially lessen competition in the FTC's artificially narrow proposed market of "programmatic advertising targeted specifically at U.S. based HCPs on a one-to-one basis." The FTC's case depends on the Court accepting this artificially narrow market and ignoring the many competitors beyond the parties who provide services in this market and the massive entry and expansion that has recently occurred in this industry. The FTC cannot carry its burden under the law, and its claims should be rejected.

DeepIntent provides demand side platform ("DSP") services that facilitate programmatic advertising—i.e., the automated purchase of advertising space on websites—on behalf of healthcare advertisers. Until recently, IQVIA did not have any business in digital healthcare advertising. In ▮▮▮▮▮▮, IQVIA entered a portion of the space as a data provider by acquiring a company that provided data about HCPs for use in digital advertising. In ▮▮▮▮▮, IQVIA expanded beyond data by acquiring Lasso, a digital advertising business that launched in 2020. Lasso is not a DSP—instead, it is an "omnichannel" interface that connects to other technology providers. It relies on Microsoft's Xandr DSP to allow its customers to engage in programmatic advertising, and it connects into multiple social media platforms. IQVIA's proposed acquisition of DeepIntent would complement Lasso's capabilities with DeepIntent's DSP technology and direct-to-consumer ("DTC") and connected TV advertising capabilities that Lasso does not have.

While the FTC asserts that the relevant market is "programmatic advertising targeted specifically at U.S. based HCPs on a one-to-one basis," the Complaint also admits that healthcare

2

digital advertising is a $14 billion industry that is experiencing rapid growth and numerous new entrants.  Yet the FTC is challenging the combination of two companies that together had only ███████████ in spending on their platforms last year—only about ███ of the healthcare digital advertising industry.  The FTC's focus on one particular subset of healthcare digital advertising excludes many other ways that advertisers can and do display digital advertisements to HCPs. Even within the FTC's narrow market, the merging parties face competition from many players that can and do advertise to HCPs programmatically.  These competitors include large DSPs that serve many industries—such as Google, The Trade Desk, AdTheorent, Amobee, and others, which the FTC dismisses because they do not limit their activities to healthcare advertising (i.e., they support healthcare advertising as well as advertising in other industries)—as well as multiple healthcare-focused DSPs.  The FTC also ignores the extensive entry and expansion that has occurred recently, including just this year, which belie any claim that the parties would have market power post-transaction.

Aside from its misguided market definition and ignoring the extensive and increasing competition even within the FTC's narrow market, the FTC also alleges that the acquisition will allow IQVIA to withhold data from DSPs competing with DeepIntent and from pharmaceutical companies unless they use DeepIntent.  This assertion is flawed in numerous ways, including that most of the FTC's allegations regarding IQVIA's data relate to data offerings that have little or nothing to do with digital advertising, that there are many alternatives to IQVIA's data in digital advertising, and that other DSPs and pharmaceutical companies are not reliant on IQVIA data for digital advertising.  Moreover, the notion that IQVIA would jeopardize its long term, multi-faceted relationships with pharmaceutical companies to attempt to divert business to a newly acquired DeepIntent is economically irrational and is belied by IQVIA's longstanding and consistent "data

everywhere" strategy that focuses on making widely available the IQVIA datasets that are used in HCP programmatic advertising.

The FTC's claim lacks merit and should be rejected.

## GENERAL ANSWER TO THE FTC'S COMPLAINT

Except to the extent specifically stated, IQVIA denies each and every allegation contained in the Complaint.

The FTC's unnumbered introductory paragraphs characterize this action and assert legal arguments and conclusions to which no response is required.  To the extent such a response is required, IQVIA denies the allegations in the FTC's unnumbered introductory paragraphs.

IQVIA additionally denies that the FTC is entitled to any of the relief sought in paragraph 133 of the Complaint.

IQVIA reserves the right to amend and/or supplement this Answer at a later stage of the proceedings as permitted by the Federal Rules of Civil Procedure.

## SPECIFIC RESPONSES TO THE FTC'S ALLEGATIONS

1.      IQVIA admits that it is a Fortune 500 company and proposes to acquire Propel, which owns DeepIntent.  IQVIA admits that programmatic advertising is a form of automated matching between buyers and sellers of advertising space.  IQVIA denies the remaining allegations in this paragraph.

2.      IQVIA admits that pharmaceutical and biotechnology companies and their advertising agencies use DSPs, as well as other solutions, to engage in digital advertising to consumers and HCPs.  IQVIA admits that healthcare digital advertising is at least a $14 billion industry and that this industry continues to grow.  IQVIA admits that programmatic advertising to HCPs is a subset of the total healthcare digital advertising industry and that it has grown in recent

years due in part to the COVID-19 pandemic.  IQVIA denies the remaining allegations in this paragraph.

3.      IQVIA admits that DSPs enable programmatic advertising campaigns that can deliver information to HCPs and consumers.  IQVIA denies the remaining allegations in this paragraph.

4.      Denied.

5.      IQVIA admits that its offerings to life science customers include market research data, analytics, clinical research services, laboratory services, technology solutions, and other services.  IQVIA admits that it licenses market research data to stakeholders across multiple segments, but denies that its data licensed outside of IQVIA's digital advertising business are licensed for digital advertising purposes.  IQVIA admits that, starting in November 2019 when it acquired MedData Group, IQVIA has provided HCP audiences for use in HCP programmatic advertising.  IQVIA denies the remaining allegations in this paragraph.

6.      ████████████████████████████████████████████

████████████████████████     █████████████████████████████████

████████████████████████     In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

7.      Denied.

8.      Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

9.      Denied.

10.     IQVIA admits that it is one of many data providers that offers HCP data that can be used in programmatic advertising.  IQVIA denies the remaining allegations in this paragraph.

11.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

12.     IQVIA admits that it acquired MedData Group ("MedData") in ▮▮ and DMD Marketing Solutions ("DMD") in ▮▮ and that the combined acquisition prices were approximately ▮▮▮▮.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for an accurate and complete statement of their contents.  IQVIA denies the remaining allegations in this paragraph.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     This paragraph purports to state conclusions of law to which no response is required.

18.     This paragraph purports to state conclusions of law to which no response is required.

19.     This paragraph purports to state conclusions of law to which no response is required.

20.     This paragraph purports to state conclusions of law to which no response is required.

21.     This paragraph purports to state conclusions of law to which no response is required.

22.     IQVIA denies that it was founded in 1982.  IQVIA denies that it was "formerly IMS Health," as it was created by the merger between Quintiles Transnational Holdings, Inc. and IMS Health Holdings, Inc.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to those documents for an accurate and complete statement of their contents.  IQVIA admits the remaining allegations in this paragraph.

23.     IQVIA admits that it purchased MedData, DMD, and Lasso within the last four years.  IQVIA admits that Lasso's customers include advertising agencies and pharmaceutical manufacturers.  IQVIA denies the remaining allegations in this paragraph.

24.     IQVIA admits that Propel is a Delaware company headquartered in Jackson, Wyoming, and that Propel owns DeepIntent.  IQVIA admits that DeepIntent is headquartered in New York.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

25.     ████████████████████████████████████████████
████████████████████████████████████████████████████████
IQVIA denies the remaining allegations in this paragraph.

26.     IQVIA admits that the FTC initiated an administrative proceeding to determine whether the Proposed Acquisition is unlawful.  The remainder of this paragraph purports to state conclusions of law to which no response is required.

27.     IQVIA admits that "[d]igital advertising includes advertising on any type of digital site, including websites, applications, email, social media, and connected TV devices like Roku or Apple TV."  IQVIA denies the remaining allegations in this paragraph.

28.     IQVIA admits that programmatic digital advertising can be characterized as the "automation of digital media buying."  IQVIA admits that an advertiser and publisher can agree to execute an advertising campaign on a publisher's site.  In addition, to the extent this paragraph of the Complaint is quoting from documents or sworn testimony, IQVIA refers the Court to the documents and transcript for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

29.     IQVIA admits that DSPs facilitate the programmatic buying of digital advertising space.  IQVIA denies the remaining allegations in this paragraph.

30.     IQVIA admits that DSPs can facilitate advertising to consumers and HCPs.  IQVIA admits that DSPs can provide information to HCPs 1:1.  IQVIA denies the remaining allegations in this paragraph.

31.     Denied.

32.     IQVIA admits that there are many ways to build HCP audiences.  IQVIA denies the remaining allegations in this paragraph.

33.     IQVIA admits that identity graphs can convert lists of HCPs into digital identities, but denies that DeepIntent is an identity graph.  IQVIA admits that DSPs can provide information to HCPs using their digital identities.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

34.     Denied.

35.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents or sworn testimony, IQVIA refers the Court to the documents and deposition transcripts for an accurate and complete statement of their contents.

36.     Denied.

37.     Denied.

38.     IQVIA admits that programmatic advertising can be used to advertise to HCPs. IQVIA denies the remaining allegations in this paragraph.

39.     ███████████████████████████████████

██████████████████  IQVIA admits that substantially all HCPs practicing medicine in the United States have NPIs assigned by the Centers for Medicare and Medicaid Services and that these NPIs can be used in providing information to HCPs.  IQVIA denies the remaining allegations in this paragraph.

40.     Denied.

41.     IQVIA admits that data about HCPs from many data providers can be used in HCP programmatic advertising, but denies that this data is "specialized" or "detailed" or "unique." IQVIA denies the remaining allegations in this paragraph.

42.     IQVIA admits that HCPs have NPI numbers that are publicly available and that NPIs can be used in advertising to HCPs.   IQVIA denies the remaining allegations in this paragraph.

43.     Denied.

44.     IQVIA admits that healthcare advertisers can advertise to consumers and HCPs on both medical-related sites and non-medical sites.  IQVIA denies the remaining allegations in this paragraph.

45.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

46.     IQVIA admits that DTC programmatic advertising can cost less than HCP programmatic advertising on a per thousand impressions basis.  In addition, to the extent this paragraph of the Complaint is quoting from documents or deposition testimony, IQVIA refers the Court to the documents or transcripts for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

47.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

48.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context

49.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context

50.     Denied.

51.     Denied.

52.     ████████████████████████████████████████████

████████████    ████████████████████████████████████

████████████████████████████  IQVIA denies the remaining allegations in this paragraph.

53.     Denied.

54.     Denied. In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

55.     IQVIA admits that DeepIntent provides DSP services and that DeepIntent Outcomes is a measurement tool that DeepIntent offers.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

56.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

57.     IQVIA admits that Lasso is not a DSP and instead relies on Microsoft's DSP Xandr for programmatic advertising.  However, IQVIA denies that Lasso "licenses" Xandr.  IQVIA admits that Lasso sometimes has marketed itself as an "omnichannel" platform.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

58.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

59.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

60.     ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████  IQVIA denies the remaining allegations in this paragraph.

61.     ██████████████████████████████████████████████████████ ██████████  To the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.  IQVIA denies the remaining allegations in this paragraph.

62.     Denied.

63.     Denied.

64.     Paragraph 64 purports to state conclusions of law to which no response is required. To the extent a response is required, IQVIA denies the allegations in this paragraph.

65.     Denied.

66.     Denied.  In addition, to the extent this paragraph of the Complaint refers to documents and testimony, IQVIA refers the Court to the documents and testimony for their full contents and context.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

71.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

72.     Denied.

73.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

74.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

75.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

76.     Denied.

77.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

78.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

79.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

84.     IQVIA admits that it licenses particular data to some DSPs and to some pharmaceutical manufacturers, advertising agencies, and life sciences entities, but denies that the term "healthcare data" is a relevant or useful way to describe the specific data at issue.  IQVIA admits it has a third-party access program that allows IQVIA's customers to use IQVIA licensed data with third-parties at no additional cost.  IQVIA denies the remaining allegations in this paragraph.

85.     Denied.

86.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

87.     Denied.

88.     Denied.

89.     IQVIA admits that identity graphs can link HCPs to their digital identities.  IQVIA denies the remaining allegations in this paragraph.

90.     Denied.

13

91.     IQVIA admits that it acquired MDG in ███ and DMD in ███.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.   IQVIA denies the remaining allegations in this paragraph.

92.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

93.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

94.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

99.     ███ ███ ██ ███ ████ █████ ████████ █████ ██████████████████████████████████████████  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.   IQVIA denies the remaining allegations in this paragraph.

100.    Denied.

101.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

102.     Denied.

103.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

104.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

105.     Denied.

106.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

107.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

108.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

109.     Denied.

110.     Denied.

111.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

112.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

113.     ██████████████████████████████████████████████████████████████ IQVIA denies the remaining allegations in this paragraph.

114.     Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

115.    Denied.

116.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

117.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

118.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

119.    Denied.

120.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

121.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

122.    IQVIA admits that MediaMath was reported to have filed for bankruptcy on June 30, 2023.  IQVIA denies the remaining allegations in this paragraph.  In addition, to the extent this paragraph of the Complaint is quoting from documents or sworn testimony, IQVIA refers the Court to the corresponding documents and transcripts for their full contents and context.

123.    Denied.

124.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

125.    Denied.

126.    Denied.  In addition, to the extent this paragraph of the Complaint is quoting from documents, IQVIA refers the Court to the documents for their full contents and context.

127.    Denied.

128.   The answers to Paragraph 1 through 127 above are incorporated by reference

129.   Denied.

130.   This paragraph purports to state conclusions of law to which no response is required.

131.   This paragraph purports to state conclusions of law to which no response is required.

132.   This paragraph purports to state conclusions of law to which no response is required.

133.   This paragraph purports to state conclusions of law to which no response is required.

## **AFFIRMATIVE DEFENSES**

IQVIA asserts the following defenses without assuming the burden of production, proof, or persuasion where such burden rests on the FTC.  IQVIA has not knowingly or intentionally waived any applicable defense and reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.

1.   The Complaint fails to state a claim upon which relief can be granted.

2.   The Complaint fails to allege a plausible relevant product market or markets.

3.   The Complaint fails to allege a plausible relevant geographic market.

4.   The FTC cannot show that IQVIA, Lasso, or DeepIntent have market power either pre- or post-transaction in any plausible relevant market.

5.   The FTC cannot show that the acquisition will result in substantial harm to competition in any plausible relevant market.

6.    The transaction will result in substantial efficiencies, synergies, and other procompetitive effects.  These benefits will outweigh any anticompetitive effects.

7.    Entry, expansion, and repositioning will be timely, likely, and sufficient to prevent substantial harm to competition.

8.    The FTC cannot show that IQVIA has the ability or the incentive to restrict the availability of data used in the alleged relevant market.

9.    The injunctive relief the Complaint seeks is inconsistent with the public interest and the balance of the equities and alternative injunctive relief would adequately address the alleged harms to competition.

10.   The FTC's parallel administrative proceedings are invalid and unconstitutional because the structure of the FTC violates the U.S. Constitution (including Article II) and the separation of powers.  The Commissioners are protected from at-will removal by the President, and instead may be removed only upon a finding of "inefficiency, neglect of duty, or malfeasance in office."  The FTC exercises quintessentially executive powers, including by prosecuting actions in its own name in both administrative proceedings and federal courts.  Because the FTC exercises executive powers, the Commissioners cannot constitutionally be shielded from for-cause removal by the President, as this limitation on the President's ability to oversee and control the exercise of Executive authority violates the U.S. Constitution and the separation of powers.

11.   The FTC's parallel administrative proceedings are invalid and unconstitutional because the FTC is designed as a bipartisan independent agency, but the deliberations

relating to the complaint and the vote thereon involved only three Democratic Commissioners, with no Republic Commissioners participating.

12.    The absence of bipartisan deliberations also is an independent and supporting reason that the Commissioners' protection from for-cause removal is unconstitutional and in violation of the separation of powers.

13.    The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Due Process Clause because they deprive IQVIA of a fair opportunity to rebut the government's factual assertions before a neutral decisionmaker.  The Commissioners act as both the prosecutors in that action— deliberating and voting on the filing of the complaint—and the ultimate administrative adjudicators.  That combination of executive and adjudicative authority in a proceeding is unconstitutional and raises an intolerably high risk of an unfair proceeding.  This violation is exacerbated by the FTC's amendment of its own adjudication rules on June 23, 2023 to provide that the ALJ's decision in proceedings such as these is nothing more than a "recommendation" to the Commissioners.

14.    The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Equal Protection Clause because they expose persons and entities to differential treatment for arbitrary reasons.  The FTC and the Department of Justice divide up challenges to proposed mergers based on nonpublic and, on information and belief, arbitrary internal operating rules.  The decision of whether the FTC or the Department of Justice will prosecute a challenge to a proposed merger has significant implications for the procedural rights of the defendants.  Those implications include, but are not limited to, the forum for adjudication of the merits, the identity of

the ultimate factfinder, the substantive standard for liability, the applicable procedural rules, and the standard for appellate review.   There is no rational basis for this differential treatment, and reducing IQVIA's procedural and substantive rights without a rational basis violates the Equal Protection Clause.

15.    The FTC's parallel administrative proceedings are invalid and unconstitutional because adjudication of the FTC's Complaint by the ALJ violates the U.S. Constitution (including Articles II and III) and the separation of powers.   ALJs enjoy two levels of removal protection—they are removable by the Commissioners only "for cause" by the Merit System Protection Board, whose members themselves may be removed "only for inefficiency, neglect of duty, or malfeasance in office." This dual layer of insulation from Executive oversight is unconstitutional.

16.    The FTC's charges under Section 5 of the Federal Trade Commission Act are unlawful to the extent the FTC purports to apply Section 5 beyond the scope of the Sherman and Clayton Acts.

17.    Any potential claims or assertions by the FTC that IQVIA's prior acquisitions of Lasso, DMD, or MDG substantially lessened competition in any relevant market are barred by the doctrines of estoppel and laches.

18.    The doctrine of equitable estoppel binds the FTC to the claims, assertions, and admissions made by the U.S. Government about the digital advertising industry in the lawsuit currently pending against Google in the Eastern District of Virginia under Section 1 and Section 2 of the Sherman Act that, among other things, alleges that Google is a monopolist in digital advertising and that Google has a significant market share as a DSP.

## **PRAYER FOR RELIEF**

WHEREFORE, IQVIA respectfully requests that the Court enter an order:

1.      Denying the FTC's contemplated relief;

2.      Dismissing the Complaint in its entirety with prejudice;

3.      Awarding IQVIA its costs of suit; and

4.      Awarding such other and further relief as the Court may deem proper.

Dated: August 2, 2023

Respectfully submitted,

/s/  *Chantale Fiebig*

Chantale Fiebig
Mark A. Perry
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Chantale.fiebig@weil.com
Mark.perry@weil.com
Joshua.wesneski@weil.com

Kenneth Reinker
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 974-1500
kreinker@cgsh.com

Rahul Mukhi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
rmukhi@cgsh.com

**Counsel for Defendant IQVIA Holdings Inc.**