# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | Case No. 1:23-cv-06188-ER |
| v. | |
| IQVIA HOLDINGS INC., | **REDACTED VERSION** |
| and | |
| PROPEL MEDIA, INC., | |
| Defendants. | |

## ANSWERS AND DEFENSES OF PROPEL MEDIA, INC.

Defendant Propel Media, Inc. ("Propel Media", "DeepIntent" or "Defendant") hereby answers the Complaint (the "Complaint") filed by Plaintiff Federal Trade Commission ("FTC or "Plaintiff") in relation to IQVIA Holdings Inc.'s ("IQVIA") proposed acquisition of DeepIntent (the "Proposed Acquisition" or the "Transaction").

Propel Media denies the allegations in the Complaint, to the extent not specifically admitted. Where the Complaint purports to quote from documents or testimony, Propel Media refers to the documents or testimony themselves for their full contents and context. Propel Media has not attempted to verify the accuracy of the quotations or that the documents or testimony exist and denies the allegations to the extent the quotations are incomplete, inaccurate, or misleading or the underlying documents or testimony do not exist. Propel Media's use of the Complaint's defined terms is solely for the Court's convenience, and Propel Media denies that the Complaint has defined these terms appropriately.

## PRELIMINARY STATEMENT

IQVIA's proposed acquisition of DeepIntent will enhance competition in the healthcare advertising industry by allowing it to better compete with giants in online advertising such as Google, Amazon, and The Trade Desk and will benefit healthcare providers, consumers, and the U.S. economy.

DeepIntent is a healthcare marketing technology company founded on the principle that digital media can influence positive health outcomes.

The FTC's Complaint fails on many levels.  The FTC's Complaint relies heavily on an outdated snapshot of the healthcare advertising landscape, which is changing by the day.  The Complaint draws an implausibly narrow product market definition that fails to recognize that DeepIntent and Lasso (which is not a DSP) face vigorous competition from many players in the digital advertising industry.  The Complaint also speculates that IQVIA might act in ways that could disadvantage its potential competitors.  But there is no evidence that a combined IQVIA and DeepIntent would have either the ability or the incentive to harm competition.  Instead, the evidence supports the fact that this Transaction will be procompetitive.

## GENERAL ANSWER

Except to the extent specifically stated herein, Propel Media denies each and every allegation contained in the Complaint, including all allegations contained in headings or otherwise not contained in one of the Complaint's 133 numbered paragraphs.

Propel Media does not interpret the headings and sub-headings throughout the Complaint as well-pleaded allegations to which any response is required.  To the extent such a response is required, Propel Media denies all allegations in the headings and sub-headings of the Complaint.

Use of certain terms or phrases defined in the Complaint is not an acknowledgment or admission of any characterization the FTC may ascribe to the defined terms.  Unless otherwise

defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgment or admission of any characterization the FTC may ascribe to the capitalized terms.

Propel Media does not concede the truthfulness of sources quoted or referenced in the Complaint.  To the extent that a response is required and unless otherwise indicated, Propel Media denies all allegations of sources quoted in or referenced in the Complaint.  Propel Media has not attempted to verify the accuracy of the quotations or that the documents or testimony exist and denies the allegations to the extent the quotations are incomplete, inaccurate, or misleading or the underlying documents or testimony do not exist.

Propel Media additionally denies that the FTC is entitled to any of the relief sought.

Propel Media reserves the right to amend and/or supplement this Answer at a later stage of the proceedings as permitted by the Rules.

The preamble to the Complaint characterizes this action and asserts legal conclusions to which no response is required; to the extent that a response is deemed necessary, Propel Media states that the FTC has issued a Complaint regarding the Transaction and in all other respects denies the allegations in the preamble to the Complaint.

## RESPONSES TO THE SPECIFIC ALLEGATIONS OF THE COMPLAINT NATURE OF THE CASE

1.      Propel Media admits that IQVIA is a Fortune 500 company and that IQVIA proposes to acquire Propel Media, which owns DeepIntent.  Further, Propel Media admits that DeepIntent is a DSP and that programmatic advertising is a form of automated, instantaneous matching between buyers and sellers of advertising space.  The remaining allegations contained in Paragraph 1 assert legal conclusions to which no response is required.  To the extent a response is required, Propel Media denies those allegations.

2.     Paragraph 2 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that healthcare companies and their advertising agencies can use DSPs, as well as other solutions, to engage in digital advertising to consumers and HCPs.  Further, Propel Media admits that the healthcare digital advertising industry is at least a $14 billion industry that is expected to continue growing.  Propel Media denies the remaining allegations contained in Paragraph 2.

3.     Paragraph 3 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that DSPs enable programmatic advertising campaigns that can deliver information to HCPs and consumers.  Further, Propel Media admits that DSPs facilitate programmatic advertising campaigns to HCPs and consumers through automated purchases and placement of ads on the internet.  Propel Media admits that advertising customers can measure the efficacy of a programmatic campaign—in clicks, impressions, prescriptions written, or other metrics—as provided through measurement solutions, some of which are provided by some DSPs.  Propel Media denies the remaining allegations contained in Paragraph 3.

4.     The allegations contained in Paragraph 4 assert legal conclusions to which no response is required.  To the extent a response is required, Propel Media denies those allegations.

5.     Propel Media denies that Lasso is a DSP.  As to the remaining allegations contained in Paragraph 5, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations and denies those allegations on that basis.

6.     ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████ Paragraph 6 otherwise contains

allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations that do not relate to Propel Media and denies the remaining allegations on that basis.

7.      Propel Media states that Paragraph 7 asserts legal conclusions to which no response is required.  To the extent that Paragraph 7 asserts any factual allegations, Propel Media denies them.

8.      Propel Media denies the allegations contained in Paragraph 8.  Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning ███████████████████████ may have made about the competition between DeepIntent and Lasso and denies those allegations on that basis.  For the quote from DeepIntent, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

9.      Paragraph 9 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations and denies them on that basis.

10.      Paragraph 10 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that IQVIA offers data that can be used to facilitate programmatic advertising.  As to the remaining allegations contained in Paragraph 10, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations and denies those allegations on that basis.

11. Propel Media denies the allegations contained in Paragraph 11. To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

12. Propel Media denies the allegations contained in Paragraph 12, except admits that IQVIA acquired MedData in ████ and DMD in ████, and that ████████████████████████ ███████████████. To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

13. Propel Media states that Paragraph 13 asserts legal conclusions to which no response is required. To the extent that Paragraph 13 asserts any factual allegations, Propel Media denies them.

14. Propel Media states that Paragraph 14 asserts legal conclusions to which no response is required. To the extent that Paragraph 14 asserts any factual allegations, Propel Media denies them.

15. Propel Media states that Paragraph 15 asserts legal conclusions to which no response is required. To the extent that Paragraph 15 asserts any factual allegations, Propel Media denies them.

16. Propel Media states that Paragraph 16 asserts legal conclusions to which no response is required. To the extent that Paragraph 16 asserts any factual allegations, Propel Media denies them.

## JURISDICTION AND VENUE

17. Propel Media states that Paragraph 17 asserts legal conclusions to which no response is required. To the extent that Paragraph 17 asserts any factual allegations, Propel Media denies them.

18.     Propel Media states that Paragraph 18 asserts legal conclusions to which no response is required.  To the extent that Paragraph 18 asserts any factual allegations, Propel Media denies them.

19.     Propel Media states that Paragraph 19 asserts legal conclusions to which no response is required.

20.     Propel Media states that Paragraph 20 asserts legal conclusions to which no response is required.  To the extent that Paragraph 20 asserts any factual allegations, Propel Media denies them.

## THE RESPONDENTS AND THE PROPOSED ACQUISITION

21.     Propel Media states that Paragraph 21 asserts legal conclusions to which no response is required.  To the extent that Paragraph 21 asserts any factual allegations, Propel Media denies them.

22.     Paragraph 22 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that IQVIA is a publicly traded Delaware corporation, headquartered in Durham, North Carolina.  As to the remaining allegations contained in Paragraph 22, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations and denies those allegations on that basis.

23.     Paragraph 23 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits it is aware that IQVIA purchased three companies—MedData, DMD, and Lasso—in the last four years. Further, Propel Media admits that Lasso's customers include advertising agencies and pharmaceutical manufacturers.  As to the remaining allegations contained in Paragraph 23,

Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations and denies those allegations on that basis.

24.     Propel Media admits that it is headquartered in Jackson, Wyoming.  Propel Media admits that DeepIntent is headquartered in New York, New York.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Propel Media denies the remaining allegations contained in Paragraph 24.

25.     Propel Media admits that ███████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ .
Propel Media denies the remaining allegations contained in Paragraph 25.

26.     Propel Media admits that the FTC initiated an administrative proceeding to determine whether the Proposed Acquisition is unlawful.  The remainder of this paragraph asserts legal conclusions to which no response is required.

## INDUSTRY BACKGROUND

27.     Propel Media admits "[d]igital advertising includes advertising on any type of digital site, including websites, applications, email, social media, and connected TV devices like Roku or Apple TV."  Propel Media denies the remaining allegations contained in Paragraph 27.

28.     Propel Media admits that programmatic digital advertising can be characterized as the "automation of digital media buying."  Propel Media admits that an advertiser and publisher can agree to execute an advertising campaign on a publisher's site.  Propel Media denies the remaining allegations in Paragraph 28.  To the extent the Complaint is quoting from documents or sworn testimony, Propel Media refers the Court to the documents and transcript for their full contents and context.

29.     Paragraph 29 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that healthcare advertisers use many DSPs and other similar services to buy programmatic digital advertising.  Propel Media admits that DSPs facilitate the buying of digital advertising space.  Propel Media denies the remaining allegations contained in Paragraph 29.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

30.     Propel Media admits that DSPs can facilitate programmatic advertising.  Propel Media denies the remaining allegations contained in Paragraph 30.

31.     Propel Media denies the allegations contained in Paragraph 31.

**A.      Planning and Audience Creation**

32.     Propel Media admits that there are many ways to build HCP audiences.  Propel Media denies the remaining allegations contained in Paragraph 32.

**B.      Activation and Execution**

33.     Propel Media admits that identity graphs can convert lists of HCPs into digital identities but denies that DeepIntent is an identity graph.  Propel Media admits that DSPs can provide information to HCPs using their digital identities.  Propel Media denies the remaining allegations in Paragraph 33.  To the extent the Complaint is quoting from documents, Propel Media refers the Court to the documents for their full contents and context.

**C.      Measurement and Optimization**

34.     Propel Media denies the allegations contained in Paragraph 34.

35.     Paragraph 35 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations

concerning ████████████████████████ and denies those allegations on that basis.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

## THE RELEVANT ANTITRUST MARKET

36.     Propel Media states that Paragraph 36 asserts legal conclusions to which no response is required.  To the extent that Paragraph 36 asserts any factual allegations, Propel Media denies them.

### A.     HCP Programmatic Advertising Is the Relevant Product Market

37.     Propel Media states that Paragraph 37 asserts legal conclusions to which no response is required.  To the extent that Paragraph 37 asserts any factual allegations, Propel Media denies them.

38.     Paragraph 38 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media admits that programmatic advertising is one of multiple methods used by pharmaceutical companies and their advertising agencies to target advertising to HCPs.  As to the remaining allegations contained in Paragraph 38, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and denies those allegations on that basis.

39.     Propel Media admits that ████████████████████████████████████ Propel Media denies the remaining allegations contained in Paragraph 39 as they do not relate to Propel Media and no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39, and denies those allegations on that basis.

40.     Paragraph 40 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or

information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and denies those allegations on that basis.

41.     Propel Media admits that HCP programmatic advertising can use datasets that contain information about HCPs.  Propel Media also admits that prescription data and claims data can include information about the prescribing behavior of individual HCPs.  Propel Media denies the remaining allegations contained in Paragraph 41.

42.     Propel Media admits that many U.S. HCPs have "a unique, publicly available NPI number, which is accessible on the Centers for Medicare and Medicaid Services website." Propel Media admits that audiences can be built based on lists of NPIs but avers that there are many other ways to build an audience.  Propel Media also admits that an audience list combined with a dataset can be linked to an HCP's digital devices.  Propel Media denies the remaining allegations contained in Paragraph 42.

43.     Propel Media denies the allegations contained in Paragraph 43.

44.     Propel Media admits that healthcare advertisers can target consumers and HCPs on both medical-related sites and non-medical sites.  Propel Media denies the remaining allegations contained in Paragraph 44.

45.     Propel Media denies the allegations contained in Paragraph 45.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

46.     Propel Media admits that DTC programmatic advertising can cost less than HCP programmatic advertising.  Propel Media denies the remaining allegations contained in Paragraph 46.

47.     Propel Media denies the allegations contained in Paragraph 47.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

48.     Paragraph 48 asserts general background allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and denies those allegations on that basis.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

49.     Propel Media denies the allegations contained in Paragraph 49.  To the extent the Complaint is quoting from documents or testimony, Propel Media respectfully refers the Court to the documents and transcripts for an accurate and complete statement of their contents.

50.     Propel Media states that Paragraph 50 asserts legal conclusions to which no response is required.  To the extent that Paragraph 50 asserts any factual allegations, Propel Media denies them.

51.     Propel Media states that Paragraph 51 asserts legal conclusions to which no response is required.  To the extent that Paragraph 51 asserts any factual allegations, Propel Media denies them.

**B.     Relevant Geographic Market Is Worldwide**

52.     Propel Media admits that ████████████████████████████ ███████████████████  Propel Media denies the remaining allegations contained in Paragraph 52.

**MARKET STRUCTURE AND THE PROPOSED**
**ACQUISITION'S PRESUMPTIVE ILLEGALITY**

53.     Paragraph 53 asserts legal conclusions to which no response is required.  To the extent that Paragraph 53 asserts any factual allegations, Propel Media denies them.

**A.     DeepIntent, Lasso, and** ███████

54.     Propel Media denies that Lasso is a DSP.  Propel Media further denies the remaining allegations contained in Paragraph 54.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

**i.     DeepIntent**

55.     Propel Media admits that DeepIntent provides a DSP.  Propel Media denies the remaining allegations contained in Paragraph 55.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

56.     Propel Media denies the allegations contained in Paragraph 56.  Propel Media lacks knowledge or information sufficient to form a belief regarding ███████ ███████ and denies those allegations on that basis.  For the quote from DeepIntent, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

**ii.     Lasso**

57.     Paragraph 57 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding ███████ ███ and denies those allegations on that basis.  For the DeepIntent quote, Propel Media

respectfully refers the Court to the documents for an accurate and complete statement of their contents.

58.     Paragraph 58 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 and denies those allegations on that basis.

59.     Paragraph 59 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and denies those allegations on that basis.

**iii.** ██████████

60.     Propel Media admits that ███████████████████████████████████████████████████████████████████████████████████████████████. Propel Media otherwise lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 and denies those allegations on that basis.

61.     Propel Media admits that ████████ is one of multiple competitors of DeepIntent and Lasso.  Propel Media denies the remaining allegations contained in Paragraph 61.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

**iv.** ████████████████

62.     Propel Media denies the allegations contained in Paragraph 62.

B.      **The Proposed Acquisition Would Substantially Increase
Concentration Levels in the HCP Programmatic Advertising Market**

63.      Propel Media states that Paragraph 63 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 63 asserts any factual allegations, Propel
Media denies them.

64.      Propel Media states that Paragraph 64 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 64 asserts any factual allegations, Propel
Media denies them.

65.      Propel Media states that Paragraph 65 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 65 asserts any factual allegations, Propel
Media denies them.

## ANTICOMPETITIVE EFFECTS

66.      Propel Media states that Paragraph 66 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 66 asserts any factual allegations, Propel
Media denies them.  To the extent the Complaint is quoting from documents, Propel Media
respectfully refers the Court to the documents for an accurate and complete statement of their
contents.

67.      Propel Media states that Paragraph 67 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 67 asserts any factual allegations, Propel
Media denies them.

68.      Propel Media states that Paragraph 68 asserts legal conclusions to which no
response is required.  To the extent that Paragraph 68 asserts any factual allegations, Propel
Media denies them.

A.      **The Proposed Acquisition Would Eliminate Significant Head-to-Head Competition Between DeepIntent and Lasso**

69.     Propel Media states that Paragraph 69 asserts legal conclusions to which no response is required.  To the extent that Paragraph 69 asserts any factual allegations, Propel Media denies them.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

70.     Propel Media denies the allegations contained in Paragraph 70.  Paragraph 70 also asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 and denies those allegations on that basis.

71.     Propel Media denies the allegations contained in Paragraph 71.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

72.     Propel Media denies the allegations contained in Paragraph 72.

73.     Paragraph 73 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 and denies those allegations on that basis.

74.     Propel Media denies the allegations contained in Paragraph 74.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

75.     Propel Media denies the allegations contained in Paragraph 75.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

76.     Propel Media denies the allegations contained in Paragraph 76.

77.     Propel Media denies the allegations contained in Paragraph 77.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

78.     Propel Media admits that its Outcomes offering measures the reach and effectiveness of marketing campaigns but avers that ███████████████████████ ██████████████████████  Propel Media denies the remaining allegations contained in Paragraph 78.  Propel Media lacks knowledge or information sufficient to form a belief regarding ███████████  and denies those allegations on that basis.  For the quote from DeepIntent, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

79.     Paragraph 79 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 and denies those allegations on that basis.

80.     Propel Media denies the allegations contained in Paragraph 80.

81.     Propel Media denies the allegations contained in Paragraph 81.

**B.    The Proposed Acquisition May Substantially Lessen Competition in the HCP Programmatic Advertising Market Through IQVIA's Control of Leading Data Inputs**

82.    Propel Media states that Paragraph 82 asserts legal conclusions to which no response is required.  To the extent that Paragraph 82 asserts any factual allegations, Propel Media denies them.

**i.    As a Key Supplier of Certain Healthcare Data, IQVIA Would Have the Ability and Incentive to Disadvantage Rivals to DeepIntent and Lasso**

83.    Propel Media denies the allegations contained in Paragraph 83.  Paragraph 83 also asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 and denies those allegations on that basis.

84.    Propel Media admits that IQVIA has a third-party access program that allows IQVIA's customers to use licensed data with their DSPs.  Paragraph 84 also asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 and denies those allegations on that basis.

85.    Propel Media denies the allegations contained in Paragraph 85.  Paragraph 85 also asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 85 and denies those allegations on that basis.

86.    Propel Media denies the allegations contained in Paragraph 86.  Paragraph 86 otherwise asserts allegations that do not relate to Propel Media, to which no response is required.

To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 86 and denies those allegations on that basis.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

87.     Propel Media denies the allegations contained in Paragraph 87.

### 1.     IQVIA Is the Leading Provider of HCP Identity Data

88.     Propel Media denies the allegations contained in Paragraph 88.

89.     Propel Media admits that ███████████████████████████████ ███████████████.  Paragraph 89 otherwise asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 89 and denies those allegations on that basis.

90.     Paragraph 90 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 and denies those allegations on that basis.

91.     Propel Media admits that IQVIA acquired MedData in ████ and DMD in ████, but otherwise denies the remaining allegations contained in Paragraph 91.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

92.     Propel Media denies the allegations contained in Paragraph 92.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

93.     Propel Media denies the allegations contained in Paragraph 93.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

94.     Paragraph 94 asserts allegations that do not relate to Propel Media, to which no response is required.  To the extent a response is required, Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 and denies those allegations on that basis.

## 2.     IQVIA Is the Leading Provider of HCP Prescribing Data

95.     Propel Media denies the allegations contained in Paragraph 95.

96.     Propel Media denies the allegations contained in Paragraph 96 except Propel Media admits that a drug company could target HCP using the method described in this paragraph but there are many other methods of targeting HCPs.

97.     Propel Media denies the allegations contained in Paragraph 97.

98.     Propel Media denies the allegations contained in Paragraph 98.  Propel Media lacks knowledge or information sufficient to form a belief regarding ████████████ ████████████ executives and denies those allegations on that basis.  For the quote from DeepIntent, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

99.     Propel Media admits that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████.  Propel Media denies the remaining allegations contained in Paragraph 99 and that the reference to the DeepIntent document supports the Complaint's allegations.  For the quote from DeepIntent's slide deck, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

ii.     **IQVIA Has the Tools to Reduce the Competitiveness of DeepIntent and Lasso's Rivals**

100.    Propel Media denies the allegations contained in Paragraph 100 and avers that there are many other sources of data that can be used for HCP targeting.

101.    Propel Media denies the allegations contained in Paragraph 101.  Propel Media lacks knowledge or information sufficient to form a belief regarding the quote from ██████████ and denies those allegations on that basis.  For the quote from DeepIntent, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

102.    Propel Media denies the allegations contained in Paragraph 102.

103.    Propel Media lacks knowledge or information sufficient to form a belief regarding IQVIA's data licensing and otherwise denies the allegations contained in Paragraph 103 on that basis.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

104.    Propel Media denies the allegations contained in Paragraph 104.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

iii.    **Post-Acquisition, IQVIA Would Have an Increased Incentive to Lessen Competition in the HCP Programmatic Advertising Market by Disadvantaging Rivals of DeepIntent and Lasso**

105.    Propel Media states that Paragraph 105 asserts legal conclusions to which no response is required.  To the extent that Paragraph 105 asserts any factual allegations, Propel Media denies them.

106.     Propel Media denies the allegations contained in Paragraph 106.  For the quote from DeepIntent's document, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

107.     Propel Media denies the allegations contained in Paragraph 107.  For the quote from DeepIntent's document, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

108.     Propel Media denies the allegations contained in Paragraph 108.  For the quote from DeepIntent's document, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

109.     Propel Media states that Paragraph 109 asserts legal conclusions to which no response is required.  To the extent that Paragraph 109 asserts any factual allegations, Propel Media denies them.

**B.     Other Factors Confirm that the Vertical Integration Resulting from the Proposed Acquisition May Substantially Lessen Competition in the Relevant Market**

110.     Propel Media states that Paragraph 110 asserts legal conclusions to which no response is required.  To the extent that Paragraph 110 asserts any factual allegations, Propel Media denies them.

111.     Propel Media states that Paragraph 111 asserts legal conclusions to which no response is required.  To the extent that Paragraph 111 asserts any factual allegations, Propel Media denies them.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

112.     Propel Media states that Paragraph 112 asserts legal conclusions to which no response is required.  To the extent that Paragraph 112 asserts any factual allegations, Propel

Media denies them.  For the representation of DeepIntent's strategy, Propel Media respectfully

refers the Court to the documents for an accurate and complete statement of their contents.

113.    Propel Media admits that .  Propel Media denies the remaining

allegations contained in Paragraph 113.

114.    Propel Media denies the allegations contained in Paragraph 114.  Propel Media

lacks knowledge or information sufficient to form a belief on ████████████████

████ and denies those allegations on that basis.  To the extent the Complaint is quoting from

documents, Propel Media respectfully refers the Court to the documents for an accurate and

complete statement of their contents.

115.    Propel Media denies the allegations contained in Paragraph 115.  Propel Media

lacks knowledge or information sufficient to form a belief ████████████  and denies those

allegations in Paragraph 115 on that basis.  Propel Media states that Paragraph 115 also asserts

legal conclusions to which no response is required.  To the extent that Paragraph 115 asserts any

factual allegations, Propel Media denies them.

116.    Propel Media denies the allegations contained in Paragraph 116.  Propel Media

states that Paragraph 116 also asserts legal conclusions to which no response is required.  To the

extent that Paragraph 116 asserts any factual allegations, Propel Media denies them.  To the

extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to

the documents for an accurate and complete statement of their contents.

117.    Propel Media states that Paragraph 117 asserts legal conclusions to which no

response is required.  To the extent that Paragraph 117 asserts any factual allegations, Propel

Media denies them.  To the extent the Complaint is quoting from documents, Propel Media

respectfully refers the Court to the documents for an accurate and complete statement of their contents.

118.     Propel Media denies the allegations contained in Paragraph 118.  Propel Media states that Paragraph 118 also asserts legal conclusions to which no response is required.  To the extent that Paragraph 118 asserts any factual allegations, Propel Media denies them.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

## ABSENCE OF COUNTERVAILING FACTORS

### A.     Entry or Expansion

119.     Propel Media states that Paragraph 119 asserts legal conclusions to which no response is required.  To the extent that Paragraph 119 asserts any factual allegations, Propel Media denies them.

120.     Propel Media states that Paragraph 120 asserts legal conclusions to which no response is required.  To the extent that Paragraph 120 asserts any factual allegations, Propel Media denies them.  Propel Media also lacks knowledge or information sufficient to form a belief on ███████████████████████████████████.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

121.     Propel Media denies the allegations contained in Paragraph 121.  Propel Media states that Paragraph 121 also asserts legal conclusions to which no response is required.  To the extent that Paragraph 121 asserts any factual allegations, Propel Media denies them.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

122.     Propel Media admits that MediaMath was reported to have filed for bankruptcy on June 30, 2023.  Propel Media lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 122 and denies those allegations on that basis.  Propel Media states that Paragraph 122 also asserts legal conclusions to which no response is required.  To the extent that Paragraph 122 asserts any factual allegations, Propel Media denies them.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

123.     Propel Media states that Paragraph 123 asserts legal conclusions to which no response is required.  To the extent that Paragraph 123 asserts any factual allegations, Propel Media denies them.

124.     Propel Media states that Paragraph 124 asserts legal conclusions to which no response is required.  To the extent that Paragraph 124 asserts any factual allegations, Propel Media denies them.  With regards to the DeepIntent document, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

125.     Propel Media states that Paragraph 125 asserts legal conclusions to which no response is required.  To the extent that Paragraph 125 asserts any factual allegations, Propel Media denies them.

126.     Propel Media lacks knowledge or information sufficient to form a belief regarding ████████████████ and otherwise denies the allegations contained in Paragraph 126.  To the extent the Complaint is quoting from documents, Propel Media respectfully refers the Court to the documents for an accurate and complete statement of their contents.

**B.**     **Efficiencies**

127.    Propel Media states that Paragraph 127 asserts legal conclusions to which no response is required.  To the extent that Paragraph 127 asserts any factual allegations, Propel Media denies them.

## VIOLATION

## COUNT 1 – ILLEGAL ACQUISITION

128.    Propel Media states that, to the extent that a separate response is required, Propel Media incorporates their responses to paragraphs 1 through 127 as though fully stated herein.

129.    Propel Media states that Paragraph 129 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Propel Media denies such allegations.

## LIKELIHOOD OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES, AND NEED FOR RELIEF

130.    Propel Media states that Paragraph 130 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Propel Media denies such allegations.

131.    Propel Media states that Paragraph 131 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Propel Media denies such allegations.

132.    Propel Media states that Paragraph 132 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Propel Media denies such allegations.

133.    Propel Media states that Paragraph 133 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Propel Media denies such allegations.

## AFFIRMATIVE AND OTHER DEFENSES

Propel Media asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the FTC.  Propel Media has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Propel Media reserves the right to amend, or seek to amend, its Answer, including its affirmative and other defenses.

1.    The Complaint fails to state a claim on which relief can be granted.

2.    The Complaint fails to allege any appropriate relevant product market or markets.

3.    The Complaint fails to allege any appropriate relevant geographic market.

4.    The FTC has failed to establish that Defendants exercise market power with respect to any relevant market either pre- or post-transaction.

5.    The Transaction does not violate the antitrust laws because the Transaction is not likely to substantially lessen competition in any plausible relevant market.

6.    The combination of IQVIA and DeepIntent's businesses will be procompetitive. The Transaction with result in substantial merger-specific efficiencies and procompetitive benefits that will directly benefit competition and consumers.  The benefits greatly outweigh any and all alleged anticompetitive effects.

7.    New entry and expansion by competitors can be timely, likely, and sufficient, and such ease of entry will ensure that there will be no harm to competition, consumers, or consumer welfare.

8.     The FTC cannot show that IQVIA has the ability or the incentive to restrict the availability of data used in the alleged relevant market.

9.     The relief that the FTC seeks is inconsistent with the public interest and the balance of the equities.  The public interest favors consummation of the Transaction and alternative remedies are available to the FTC.

10.     The FTC's structure is unconstitutional because the constraints on removal of the Commissioners violate Article II of the Constitution and the separation of powers.  The current day FTC does not resemble the "quasi-legislative" or "quasi-judicial" agency.  *See Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935).  The FTC is acting as an executive agency, bringing enforcement actions for violations of the antitrust, consumer protection, and privacy laws.  *See* Daniel A. Crane, *Debunking Humphrey's Executor*, 83 GEO. WASH. L. REV. 1835, 1859-68 (2015).  Therefore, as the Commissioners exercise executive function, they should be able to be removed for cause.  *See Myers v. United States*, 272 U.S. 52 (1926).

11.     These proceedings are invalid because the structure of the FTC is as a bi-partisan independent agency and deliberations relating to the complaint and the related vote involved only three Democratic Commissioners with no Republican Commissioners.

12.     The FTC's structure is unconstitutional because the constraints on for cause removal of the Administrative Law Judge violate Article II of the Constitution and the separation of powers.  *See Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044 (2018); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).

13.     The FTC violates Propel Media's right to Equal Protection under the Fifth Amendment due to the Department of Justice, Antitrust Division ("DOJ") and FTC's black box clearance process.  The FTC and DOJ, without authorization from Congress, arbitrarily decide

which agency investigates certain mergers.  As a result of that arbitrary clearance process, this Transaction was reviewed by the FTC and thus Propel Media is forced to litigate in the administrative proceeding that lacks the protections of an Article II court such as the ability to rely on evidence not admissible under the Federal Rules of Evidence, and where the same decision-makers initiate, prosecute and decide the merits of the case.  Had the DOJ reviewed the Transaction, the DOJ could only bring a challenge of the Transaction in an Article III court on a final adjudication of the merits.

14.     The FTC violates Propel Media's due process rights under the Fifth Amendment by depriving Respondents of their right to adjudication before a neutral arbiter.  The FTC has the power to investigate, prosecute, and adjudicate the same matter, which violates due process where "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable."  *Withrow v. Larkin*, 421 U.S. 35, 47, 58 (1975).  This is the case here as the FTC Commissioners voted out the complaint, dictate prosecution strategy, and automatically adjudicate the matter after the ALJ has made his recommended decision.  The FTC reportedly has not lost an administrative proceeding in 25 years, "reveal[ing] just how tilted this game is," *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 917 (2023) (Gorsuch, J., concurring).

15.     The FTC's charges under Section 5 of the Federal Trade Commission Act are unlawful to the extent the FTC purports to apply Section 5 beyond the scope of the Sherman and Clayton Acts.

16.     Any potential claims or assertions by the FTC that IQVIA's prior acquisitions of Lasso, DMD, or MDG substantially lessened competition in any relevant market are barred by the doctrines of estoppel and laches.

17.     The doctrine of equitable estoppel binds the FTC to the claims, assertions, and admissions made by the U.S. Government about the digital advertising industry in the lawsuit currently pending against Google in the Eastern District of Virginia under Section 1 and Section 2 of the Sherman Act that, among other things, alleges that Google is a monopolist in digital advertising and that Google has a dominant DSP.

## PRAYER FOR RELIEF

WHEREFORE, Propel Media respectfully requests that the Court enter an order:

1.     Denying the FTC's contemplated relief;

2.     Dismissing the Complaint in its entirety with prejudice;

3.     Awarding Propel Media its costs of suit, including expert fees and reasonable attorneys' fees, as may be allowed by law; and

4.     Awarding to Propel Media such other and further relief as the Court deems just and appropriate.

Dated:   August 2, 2023                    Respectfully submitted,

MORRISON & FOERSTER LLP

*/s/ Alexander Okuliar*
Alexander P. Okuliar (*pro hac vice*)
David J. Shaw (*pro hac vice* pending)
Alexa Rae DiCunzolo (*pro hac vice*)
Andrew J. Molina (*pro hac vice*)
Kevin Wang (*pro hac vice*)
Richelle Gernan (*pro hac vice*)
2100 L Street, NW, Suite 900
Washington, DC 20037
Tel: (202) 887-1500
aokuliar@mofo.com
dshaw@mofo.com
adicunzolo@mofo.com
amolina@mofo.com
kwang@mofo.com
rgernan@mofo.com

David J. Fioccola
Mika M. Fitzgerald
Michael B. Miller
250 West 55th Street
New York NY 10019
T: (212) 468-8000
dfioccola@mofo.com
mfitzgerald@mofo.com
mbmiller@mofo.com

*Counsel for Defendant Propel Media, Inc.*