**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,

                    Plaintiff,

          v.

IQVIA HOLDINGS INC.,

and

PROPEL MEDIA, INC.

                    Defendants.

Case No. 1:23-cv-06188-ER

**JOINT STATEMENT REGARDING THE**
**PRELIMINARY INJUNCTION HEARING AND SCHEDULE**

I.      **The Legal Standard Governing this 13(b) Preliminary Injunction Proceeding**

- **Plaintiff's Position**

The Federal Trade Commission ("FTC") requests that this Court grant a preliminary injunction under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b).  There is a specific legal standard set forth in Section 13(b) for preliminary injunctions, which is distinct from the standard governing preliminary injunctions in non-FTC Act cases.  Section 13(b) provides for a district court to grant a preliminary injunction upon a "proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b).  The sole purpose of the FTC's request is to prevent the consummation of Defendant IQVIA Holdings Inc.'s ("IQVIA") proposed acquisition of DeepIntent, Inc. ("DeepIntent") (the "Proposed Acquisition") to preserve the FTC's

ability to adjudicate the Proposed Acquisition's legality in its administrative proceeding.  *See* 15 U.S.C. § 53(b).  Concurrent with the FTC's request for a preliminary injunction, the FTC initiated an administrative proceeding to determine whether the Proposed Acquisition may substantially lessen competition in violation of the Clayton Act.  This administrative hearing, which is scheduled to begin on December 20, 2023, will include up to 210 hours of fact and expert witness testimony. 16 C.F.R. § 3.41(b).

The FTC does not ask this Court to determine "whether [Defendants] have violated, or are about to violate, the antitrust laws, for adjudication of those issues is vested in the FTC in the first instance. . . .  Rather, the question for [this Court] is whether the FTC has shown prima facie that the public interest requires that a preliminary injunction issue to preserve the status quo until the FTC can perform its adjudicatory function." *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090 (S.D.N.Y. July 21, 1977) (citing *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1342 (4th Cir. 1976)).

Therefore, even cases cited by the Defendants agree that Section 13(b) "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984).  Congress determined that the common law-based equity standard is not "appropriate for the implementation of a Federal statute by an independent regulatory agency where the standards of the public interest measure the propriety and need for injunctive relief." *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090 (S.D.N.Y. July 21, 1977) (citing H.R.Rep.No.624, 93d Cong., 1st Sess. 31 (1971)). Defendants rely on *Winter v. Nat. Res. Def. Council, Inc.* to claim that the FTC needs to establish irreparable harm, however, the Ninth Circuit has since clarified that "where the statute specifically

authorizes injunctive relief, irreparable injury should be presumed from the very fact that the statute has been violated" *FTC v. Consumer Defense, LLC*, 926 F.3d 1208 (9th Cir. 2019).

"[W]hile the statute requires [this Court] to consider the FTC's likelihood of ultimate success and to exercise [its] independent judgment in that regard, it appears that it does not require the FTC to prove, or [the Court] to find, probable success on the merits but something less." *Id.* Therefore, "the FTC need not prove a section 7 violation to obtain a preliminary injunction; rather, it need only raise serious, substantial questions as to the merger's legality." *FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1046 (D.C. Cir. 2008) (emphasis and quotations removed). Section 13(b) imposes a lighter burden by requiring the FTC to only show that it has "a fair and tenable chance of ultimate success on the merits." *Lancaster Colony*, 434 F. Supp. at 1090; *see also FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984) (citing *Lancaster Colony*); *FTC v. H.J. Heinz Co*., 246 F.3d 708, 714–15 (D.C. Cir. 2001) (observing that the D.C. Circuit and "other[ courts] have suggested that the standard for likelihood of success is met" if the FTC raises serious and substantial questions about a merger); *see also United States v. Sun and Sand Imports, Ltd., Inc.*, 725 F.2d 184, 188 (2d Cir. 1984) (relying on *Lancaster Colony*'s interpretation of Section 13(b) to apply the "fair and tenable chance" standard to the Department of Justice under a similar statute); *FTC v. Cuban Exchange, Inc.*, 2012 WL 6800794, at *1 (E.D.N.Y. Dec. 19, 2012) (applying *Lancaster Colony*'s Section 13(b) standard in an FTC consumer protection preliminary injunction proceeding); *FTC v. 4 Star Resolution, LLC,* 2015 WL 7431404, at *2 (W.D.N.Y. Nov. 21, 2015) (applying the "fair and tenable chance" standard in an FTC consumer protection case).  It therefore is appropriate that "the district court be guided by preliminary and

tentative findings of fact without attempting to resolve the underlying antitrust issues of fact."

*Lancaster Colony*, 434 F. Supp. at 1091.[1]

 Likewise, in balancing the equities, Congress afforded the FTC a lower standard for a preliminary injunction than private parties because the FTC's antitrust enforcement authority involves the public interest. *Id.* at 1090, 1096 ("The legislative history of Section 13(b) reveals congressional concern with the FTC's historic inability to effectuate a remedy once an acquisition is consummated."); *Whole Foods*, 548 F.3d at 1042 ("Because Congress concluded that the FTC— an expert agency acting on the public's behalf—should be able to obtain injunctive relief more readily than private parties, it incorporated a unique 'public interest' standard in 15 U.S.C. § 53(b), rather than the more stringent, traditional 'equity' standard for injunctive relief.") (J. Tatel, concurring) (citations and quotations omitted).  Congress specifically had "the public interest in effective enforcement of the antitrust laws . . . in mind when it enacted section 13(b)," and "demonstrated its concern that injunctive relief be broadly available to the FTC."  *Heinz*, 246 F.3d at 714, 726  (citations omitted).  In contrast, a "denial of a preliminary injunction would preclude effective relief if the Commission ultimately prevails and divestiture is ordered."  *Warner Communications*, 742 F.2d at 1165.[2]

---

[1] In their opposition to Plaintiff's TRO motion, the Defendants misrepresented the FTC's burden under Section 13(b) by wrongly claiming that the FTC "must do *far more* than merely raise sufficiently serious questions with respect to the merits to make them a fair ground for litigation."  Def. Opp. TRO Mot. (Dkt. No. 34) at 7.  The case relied on by the Defendants for that proposition, *United States v. Siemens Corp.*, is not applicable here both because it was not brought under Section 13(b) of the FTC Act and, in that case, the ultimate fact finder was also deciding the preliminary injunction.  Defendants appear to have recognized that case is inapposite, as they no longer put forth that standard as governing this proceeding.

[2] Defendants claim that the preliminary injunction proceeding will determine the fate of the transaction.  Even were that the case, "weighing of the equities favors the FTC.  If the merger is ultimately found to violate section 7 of the Clayton Act, it will be too late to preserve competition if no preliminary injunction has issued. On the other hand, if the merger is found not to lessen competition substantially, the efficiencies that the appellees urge can be reclaimed by a renewed transaction."  *Heinz*, 246 F.3d at 727.  "If the merger makes economic sense now, the appellees have offered no reason why it would not do so later."  *Id.* at 726.

The FTC requests that this Court apply the same Section 13(b) standard as the court in *Lancaster Colony,* as followed by this and other circuits: requiring the FTC to show it has a "fair and tenable" chance of success on the merits by raising "serious, substantial" questions regarding the proposed merger, and adhering to the express "public interest" standard of Section 13(b). 434 F. Supp. at 1090–91; *see also Warner Communications*, 742 F.2d at 1162 (citing *Lancaster Colony*).

- **Defendants' Position**

The Supreme Court has set forth the requirements for preliminary injunctive relief: "A plaintiff . . . must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "In each case" where a litigant seeks preliminary injunctive relief, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quotation marks omitted). This same standard applies where, as here, a party seeks relief pursuant to a statute that authorizes injunctive relief but does not expressly adopt a different standard. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). That is because "a major departure from the long tradition of equity practice should not be lightly implied," particularly in the realm of injunctive relief. *Id.*

Here, Section 13(b) directs district courts to "weigh[] the equities" and "consider[] the Commission's likelihood of ultimate success," 15 U.S.C. § 53(b), thus expressly incorporating equitable standards for preliminary injunctive relief. There is no clear statement that Congress intended preliminary injunctive relief under Section 13(b) to be judged by a different standard. Moreover, a preliminary injunction sought by the FTC pursuant to Section 13(b) is no less

disruptive than a preliminary injunction sought by a private party, and thus deserves no less scrutiny. Thus, the traditional factors for preliminary injunctive relief apply to the FTC's application here.

The FTC ignores *eBay* and *Winter*, arguing that it need not establish irreparable harm or show a likelihood of success on the merits. But the only authority it cites for that proposition finds its origins in case law predating *eBay* and *Winter*, where the Court clarified the elements that apply to *all* requests for injunctive relief, including those sought pursuant to a statute.

Even if the FTC were correct, however, that a lesser showing for preliminary injunctive relief is required under Section 13(b), its suggestion that it need show only a "fair and tenable" chance of success is wrong. For starters, the statute directs the courts to "consider[] the Commission's likelihood of ultimate success." 15 U.S.C. § 53(b) (emphasis added). The statute thus contemplates more than a superficial assessment of the merits. Moreover, the Second Circuit has never adopted the "fair and tenable chance" standard: The court previously acknowledged that one court in this District applied that standard in a case from 1977, but did not endorse that approach to Section 13(b) (which was not even before the court). *See United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184, 188 (2d Cir. 1984) (citing *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090–91 (S.D.N.Y. 1977). Several courts in other circuits, however, have expressly rejected it. *See FTC v. Freeman Hosp.*, 69 F.3d 260, 267 (8th Cir. 1995); *FTC v. Staples, Inc*., 970 F. Supp. 1066, 1072 (D.D.C. 1997).

Instead, the prevailing rule is that the FTC must raise "questions going to the merits serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals*.*" *FTC v. H.J. Heinz Co*., 246 F.3d 709, 714–15 (D.C. Cir. 2001) (quotation marks

omitted); *see also Freeman Hosp.*, 69 F.3d at 267; *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1162 (9th Cir. 1984).  The Second Circuit has suggested in dicta that it does not see any "significant difference" between the "serious question" standard and the "fair and tenable chance" standard, but acknowledged that to the extent there is a difference, the "serious question" standard is more rigorous.  *Sun & Sand Imports*, 725 F.2d at 188 n.5.  In any event, this standard does not allow a court to simply "rubber stamp" an injunction "whenever the FTC provides some threshold evidence."  *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1035 (D.C. Cir. 2008).  The court must "exercise independent judgment about the questions [Section 13(b)] commits to it."  *Id.* (quotation marks omitted).

That the preliminary injunction standard has teeth is evidenced by the FTC's recent series of losses in federal court.  For example, in the two cases most recently litigated under Section 13(b), different courts found the FTC was not likely to succeed on the merits of its claims.  *See FTC v. Microsoft Corp.*, --- F.Supp.3d ----, 2023 WL 4443412 (N.D. Cal. 2023); *FTC v. Meta Platforms Inc.*, 2023 WL 2346238, at *33 (N.D. Cal. Feb. 3, 2023).  In both cases, the courts reached that conclusion after holding in-person hearings, carefully weighing the evidence, considering the credibility of witnesses, and evaluating the competing legal and economic arguments and submissions.

Despite all this, the FTC downplays the importance of this proceeding by saying it seeks only to "pause" the proposed acquisition during the FTC's Part 3 administrative proceeding.  This position is highly misleading, at best.  Contrary to the FTC's suggestion, this preliminary injunction proceeding will almost certainly decide the fate of the proposed acquisition.  If the Court enjoins the merger, ███████████████████████████████████████████ ███████████████████████████  In contrast, if the Court denies the FTC's preliminary injunction

motion, then the parties will close the transaction and the FTC will almost certainly dismiss the Part 3 administrative proceeding.  *See* Maureen K. Ohlhausen, Comm'r, Fed. Trade Comm'n, Remarks to U.S. Chamber of Commerce: A SMARTER Section 5, at 17 (Sept. 25, 2015), (Commissioner Ohlhausen: "the Commission has not pursued a Part III proceeding following a PI loss in federal court for twenty years").

To be sure, the FTC could theoretically seek to require divestiture of the transaction through the Part 3 proceeding even if this Court denies its preliminary injunction request.  But it has been over ***30 years*** since the FTC continued a Part 3 proceeding after losing a preliminary injunction motion.  *Compare*, *FTC v. R.R. Donnelley & Sons Company*, 1990 WL 193674, at *1– *6 (D.D.C. 1990) (denying preliminary injunction), *with In re FTC*, 120 F.T.C. 36, 36–37 (1995) (FTC decision after Part 3 proceeding).  In the decades since then, the FTC has routinely dismissed Part 3 proceedings after a federal court denies its preliminary injunction request—including in recent high-profile merger challenges.  *See In re Meta, et. al*, Dkt. No. 9411 (FTC Feb. 24, 2023) (dismissing Part 3 proceeding after preliminary injunction motion denial).  The FTC's sole Administrative Law Judge recently acknowledged this reality, describing Part 3 proceedings as "clearly such a waste of resources, time and effort" since "[t]hings just seem to work out" based on the federal court's preliminary injunction ruling.  *See* Koenig, Bryan*, FTC Judge Calls Simultaneous In-House, Fed Cases 'A Waste*', Law360 (July 19, 2023), https://www.law360.com/articles/1701736.  The FTC's representation that it may continue the Part 3 proceeding after losing in federal court is simply not credible in light of this history.  This preliminary injunction proceeding—and whether the FTC can satisfy its burden—will thus determine the fate of the proposed acquisition.

## II.      Scope of Evidentiary Hearing

- ### Plaintiff's Position

      In response to the Court's inquiry regarding the scope of a preliminary injunction hearing inclusive of live witness testimony, the FTC has made an initial assessment of the witnesses and evidence it will have in support of its motion for a preliminary injunction and it estimates that if live witnesses are called, it requires 40 hours (80 hours total, with an even split) to present its evidence live.  That is still a fraction of the 210 hours for the merits trial, but 40 hours for the FTC's presentation will allow for a fuller picture of the evidence and issues in this case.  If live witnesses are called, it would be prejudicial to the FTC to be able to call only a fraction of the witnesses that will be heard at the merits proceeding, or to proceed with a live hearing that only allows for a sliver of its evidence to be presented.

      Defendants informed the Court that they would need "at least a five-day hearing."  Hr'g Tr. 31, July 20, 2023.  ██████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  The Court should not be bound by the ████████████████████ closing date set by the Defendants in scheduling a preliminary injunction hearing.  Particularly given the trial already scheduled in this Court in November, it is impractical if not impossible to accommodate a hearing of that length, or in fact any live evidentiary hearing with sufficient evidence to enable the Court to make a fully informed decision, within the November 22nd TRO deadline or ███████████████████████████ closing date deadline.  The FTC is amenable to moving the schedule to accommodate a full evidentiary hearing, as long as the TRO is also extended, but if the Court chooses not to do that,

the FTC offers the Court another option for resolving this matter — that evidence and argument be presented to the Court in written form, giving the Court more time to consider a fuller evidentiary record, and having the added benefit of not requiring witnesses to appear twice in both the preliminary injunction hearing and the merits trial.  Further details in support of each option are set forth below.

### A.  The FTC's Proposal if the Court Requires Live Witness Testimony

If the Court is inclined to conduct a longer preliminary injunction hearing that includes live witness testimony, the FTC is fully prepared to meet that request.  But the FTC asks this Court to ensure that a live hearing is thorough and does not just give a limited, partial snapshot of the live testimony that would be presented in front of the full factfinder. Given the FTC bears the ultimate burden of persuasion, the FTC should be accorded the opportunity to present evidence addressing all of the elements and issues in the Complaint with enough detail to allow the court to make a reasonable judgment of its chance of ultimate success on the merits in the administrative hearing. A sufficient preliminary injunction hearing that involves live witness testimony will require a two-week, full day hearing with each party receiving forty hours to present their case.  *See, e.g.*, *FTC v. Arch Coal, Inc*., 329 F. Supp. 2d 109, 114 (D.D.C. 2004) (two-week preliminary injunction hearing with over twenty witnesses in a horizontal case); *FTC v. Peabody Energy Corp*., 492 F. Supp. 3d 865, 882 n.7 (E.D. Mo. 2020) (nine-day preliminary injunction hearing with 24 live witnesses in a horizontal case); *FTC v. CCC Holdings Inc.*, 605 F. Supp. 2d 26, 30-31 (D.D.C. 2009) (nine-day preliminary injunction hearing for a horizontal case); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 15 (D.D.C. 2015) (eight-day preliminary injunction hearing for a horizontal case).  An 80-hour hearing schedule is aligned with the hearing schedules in purely horizontal cases.  This case involves horizontal and vertical elements, and the FTC's 80 hour estimate therefore is already

compressed.  The FTC understands that this Court has another trial set for November; the FTC is amenable to working around that trial or to proceeding immediately afterwards.  Moving this matter forward with the expectation of a full evidentiary hearing, unless through the option presented here, would make it impossible to complete an already rushed discovery and briefing schedule.

The Defendants have asked the Court to rush a ruling to meet their merger agreement's arbitrary, self-imposed outside date.  The FTC asks the Court to decline that request, given that:

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████

Defendants could also choose to extend their merger agreement's existing outside date at any time. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ Hr'g Tr. 33, 36-37, July 20, 2023.

It is apparent from the Defendants' actions ███████████████████████████████

████████████████████████████████ Any suggestion that this Court should take

drastic steps to accommodate Defendants' current close date despite its busy schedule and the

importance and complexity of this matter should be viewed with extreme skepticism.  The FTC is

willing and prepared to put on live witnesses at a more robust preliminary hearing.  But it

respectfully asks that this Court afford adequate time for a hearing with live witness testimony, if

that is the approach the Court decides to take, so that the FTC may provide a comprehensive

showing of its likelihood of success in the ultimate proceeding.[3]

## B. An Abbreviated Preliminary Injunction Proceeding, Based on the Evidentiary Record, Is Consistent with the Scope of the Court's Inquiry

If the Court chooses to adhere to the Defendants' preferred date for resolution of this

matter, the Court should adopt the same approach it took in *Lancaster Colony* when assessing the

FTC's request for preliminary injunction against a merger under Section 13(b).  In *Lancaster*

*Colony*, this Court evaluated the FTC's likelihood of ultimate success in the administrative

proceeding.  But it "[saw] no need for an evidentiary hearing nor for extensive analysis of the

---

[3] Defendants provide a chart purporting to show that the FTC's request for an 80-hour hearing is unreasonable.  The chart is not persuasive.  **First**, the chart demonstrates that many cases require more time than Defendants have proposed.  For example, *FTC v. Staples* and *FTC v. Sysco* involved ten- and eight-day hearings respectively—in line with what the FTC seeks in this case.  **Second**, Defendants' chart omits *FTC v. Peabody Energy Corp.*, 4:20-cv-00317, which involved a nine-day hearing.  **Third**, Defendants' chart introduces an arbitrary cut-off date of ten years, strategically omitting *FTC v. Arch Coal*, 04-cv-0534 (ten-day hearing) and *FTC v. CCC Mitchell*, 08-cv-2043 (nine-day hearing).  The ten-year cutoff also omits *FTC v. Inova*, 08-cv-460, which was submitted on the papers. **Fourth**, none of the cases in Defendants' chart involved both horizontal and vertical theories of harm, as this case does, which necessitates more evidence, more witnesses, and more time.

underlying antitrust issues" because "[it is] not required, on a Section 13(b) application, to examine the economic characteristics of the entire [relevant] industry or to try the case."  434 F. Supp. at 1091.  Instead, it allowed the FTC "by affidavits or other proof" to show "that it has a fair and tenable chance of ultimate success on the merits."  *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090 (S.D.N.Y. July 21, 1977); *see also id.* at 1091 (noting a "'firm understanding' of the setting and unique facts of a given market cannot be made without a plenary trial" but that it "seems clear Congress intended that on applications under Section 13(b), the district court be guided by preliminary and tentative findings of fact without attempting to resolve the underlying antitrust issues of fact"); Transcript of Hearing at 12, *FTC v. Inova Health Sys. Found.*, No. 1:08-cv-460 (E.D. Va. May 30, 2008) (declining an "invitation for [the court] to get involved in trying [the merger] case" by having an evidentiary hearing with live witnesses, because the "issue before [the court] is a narrow one, as to whether or not a preliminary injunction should be issued").

Where, as here, the merger results in a presumptively illegal market concentration as expressed in ███████████████████████████, the FTC has demonstrated a strong likelihood of ultimate success. *Id.* at 1095 (noting that "the fact [defendants' combined market share was 19%], in itself, so nearly approaches the presumptively-illegal line that [this Court could] conclude that the FTC has a good chance of ultimate success").  To be sure, the record will also ████████████████████████████████████████████████████████████

---

[4] All references to PX documents are to Exhibits submitted in support of the FTC's Motion for Temporary Restraining Order, Dkt. No. 6.

[5] ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████   The evidentiary record will show that █████████████████████████████

██████████████████████████████████████

The second prong in determining whether to grant a preliminary injunction under Section 13(b) requires balancing the equities, though "[t]he equities will often weigh in favor of the FTC, since 'the public interest in effective enforcement of the antitrust laws' was Congress's specific 'public equity consideration' in enacting the provision." *Whole Foods*, 548 F.3d at 1035 (citing *Heinz*, 246 F.3d at 726).

For the preliminary injunction hearing, the FTC proposes that evidence and argument be presented to the Court in the form of 1) written declarations of fact witnesses; (2) declarations of expert witnesses; 3) excerpts of sworn party and third-party testimony taken from pre-complaint "investigational hearings"; 4) excerpts of depositions conducted by the FTC and Defendants pursuant to the preliminary injunction proceeding; 5) ordinary course of business documents and data from the merging parties, as well as third parties; 6) if helpful to the Court, oral argument at the preliminary injunction hearing, to answer the Court's questions; and 7) in-depth briefing, pointing the Court to the key evidence in the record.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The significant volume of evidence on record, as well as the time pressure currently imposed by the Defendants, counsels against the necessity of holding a full evidentiary hearing with live witness testimony.  The FTC anticipates that it and Defendants will introduce third-party declarations, and there will be voluminous record evidence to draw from in the form of investigational hearing transcripts, deposition transcripts, and party and non-party documents. Both sides can draw from this well of documentary material to point the Court to the evidence in support of their arguments without the need to burden third-party witnesses or this Court's resources with live testimony, particularly when both sides will be preparing for those same witnesses to appear at the live merits trial beginning on December 20th of this year.

The FTC's proposal is more than sufficient to decide the limited, but important, issue before this Court, namely whether the FTC has raised "serious, substantial" questions regarding the Proposed Acquisition's legality warranting injunctive relief to maintain the status quo during the pending administrative proceeding.  This Court is not required to determine whether the antitrust laws have been or will be violated.  *Lancaster Colony*, 434 F. Supp. at 1090-91.  Nor is this Court tasked with resolving key factual disputes on the merits or making credibility determinations; Congress intended the Administrative Law Judge in the FTC's administrative proceeding to resolve those issues in the first instance.  *Id.*  As such, it is appropriate for this Court to conduct a preliminary injunction hearing without the delay and burden imposed by live witness testimony.

- **<u>Defendants' Position</u>**

Defendants are committed to working flexibly and in good faith to ensure the Court can hold an evidentiary hearing on the FTC's preliminary injunction motion and render a decision in the necessary timeframe.  To that end, the Defendants stipulated to a temporary restraining order

preventing the consummation of the proposed acquisition until after November 22, 2023. Defendants are also willing to (a) move the hearing date earlier than November 13, and (b) hold the hearing on non-consecutive days, including in the afternoon after other sessions.

In addition, in response to timing issues the Court raised during the last hearing, Defendants

The FTC's investigative file was only provided to Defendants over the weekend of July 29 and discovery has not yet begun.  Based on the information available to date, Defendants currently estimate the hearing will require approximately 30 to 50 hours of trial time total (15 to 25 hours per side).  This is a conservative estimate, and Defendants are hopeful they can present their case at the bottom-end of this range or in an even more streamlined manner.  Defendants have also prepared a case schedule (discussed further below) that sets forth the deadlines assuming the evidentiary hearing begins on November 13, which demonstrates the feasibility of conducting a hearing on this timeline.  *See* Ex. C.

Defendants' proposal is in line with other Section 13(b) cases.  The chart below lists all Section 13(b) cases decided in the past decade, noting (1) whether a live evidentiary hearing was

held, and (2) the length of that hearing.  It shows that all such actions featured an evidentiary

hearing, and the hearings were generally in the range that Defendants propose.

| Case Name | Live Evidentiary Hearing? | Hearing Length | Part 3 Proceeding After PI? |
|---|---|---|---|
| *FTC v. Microsoft and Activision Blizzard*, 23-cv-02880 | Yes | 5 days<br><br>22 hours | No |
| *FTC v. Meta Platforms, Inc., Mark Zuckerberg, and Within Unlimited, Inc.*, 3:22-CV-04325 | Yes | ~ 40 hours | No |
| *FTC v. Hackensack Meridian Health and Englewood Healthcare Foundation*, 2:20-cv-18140 | Yes | 8 days<br><br>36 hours | No |
| *FTC v. Thomas Jefferson University*, 2:20-cv-01113 | Yes | 6 days<br><br>30-40 hours | No |
| *FTC v. Evonik Industries and PeroxyChem Holding Co.*, 1:19-cv-02337 | Yes | 8 days<br><br>50 hours | No |
| *FTC v. Tronox Limited and Cristal USA*, 1:18-cv-01622 | Yes | 3 days<br><br>14 hours | No |
| *FTC v. Wilhelmson Maritime Services and Drew Marine Group*, 1:18-cv-00414 | Yes | 48 hours | No |
| *FTC v. Sanford Health and Mid Dakota Clinic*, 1:17-cv-00133 | Yes | 4 days<br><br>22 hours | No |
| *FTC v. Penn State Hersey Med. Ctr. And PinnacleHealth System*, 1:15-cv-2362 | Yes | 5 days | No |
| *FTC v. Advocate Health Care Network and NorthShore University* | Yes | 6 days | No |

| Case Name | Live Evidentiary Hearing? | Hearing Length | Part 3 Proceeding After PI? |
|---|---|---|---|
| *Healthcare System*, 1:15-cv-11473 | | | |
| *FTC v. Staples and Office Depot*, 1:15-cv-02115 | Yes | 10 days | No |
| *FTC v. Steris Corp. and Synergy Health*, 1:15-cv-1080 | Yes | 3 days | No |
| *FTC v. Sysco and US Foods*, 1:15-cv-00256 | Yes | 8 days | No |
| *FTC v. Ardagh Group and Saint-Gobain Containe*, 1:13-cv-01021 | Scheduled but parties stipulated to dismiss the case prior to the hearing | 3 days (scheduled) | No |
| *FTC v. Phoebe Putney Health System and Palmyra Park Hospital*, 1:11-cv-00058 | Yes | 1 day | No |
| *FTC v. ProMedica Health System and St. Luke's Hospital*, 3:11-cv-0047 | Yes | 2 days | No |

In contrast, the FTC has proposed two extreme—and completely contradictory—proposals that starkly depart from recent Section 13(b) cases. Both are ill-advised and should be rejected.

**Proceeding without a hearing**. The FTC's primary position is that the Court should not hold an evidentiary hearing but, rather, decide the FTC's preliminary injunction motion on the papers. But as the chart above shows, Defendant are not aware of *any* Section 13(b) action from the last decade that was decided without an evidentiary hearing. And for good reason. Determinations under Section 7 of the Clayton Act are "fact-intensive." *United States v. Gillette*, 828, F. Supp. 78, 81 n.7 (D.D.C. 1993); *see also United States v. Berteslmann SE & Co. KGaA*, -- F.Supp.3d --, 2022 WL 16949715, at *28 n.33 (D.D.C. 2022) ("Merger analysis is industry-

18

specific and fact-intensive.").  Indeed, the threshold question of "market definition is a deeply fact-intensive inquiry."  *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008).  Other parts of the analysis are equally fact-specific.  *See, e.g.*, *United States v. UnitedHealth Grp. Inc.*, 630 F. Supp. 3d 118, 130 (D.D.C. 2022) ("[T]he government meets its prima facie burden in vertical merger cases by making a *fact-specific showing* that the proposed merger is likely to be anticompetitive.") (emphasis added).  Well-settled law thus demonstrates that holding an evidentiary hearing on the FTC's preliminary injunction motion is both necessary and appropriate.

Moreover, when there are factual disputes regarding the issuance of a preliminary injunction, "oral testimony is preferable to affidavits."  *Davis v. New York City Hous. Auth.*, 166 F.3d 432, 437–38 (2d Cir. 1999) (emphasis added).  Here, ruling on the FTC's motion will require the Court to resolve numerous factual disputes.  Among others, these include:

- Whether the FTC's proposed product market—HCP programmatic advertising services provided by healthcare-specific DSPs—is a relevant antitrust product market;

- Whether the geographic scope of the relevant product market is worldwide or limited to the United States;

- The competitors in the relevant market and their significance;

- Whether the proposed acquisition will impact competition in the relevant market;

- Whether the proposed acquisition would create an incentive and ability for IQVIA to significantly reduce competition by discriminating against other DSPs by depriving them of data necessary to compete with DeepIntent and Lasso;

- Whether IQVIA's data is necessary for DSPs to compete, and whether there are alternative sources for this data;

- Whether new entrants will enter the relevant market;

- Whether existing companies will expand or reposition to enter the relevant market; and

- The procompetitive benefits from the transaction.

These disputed issues of fact underscore the importance of the Court holding an evidentiary hearing, at which it can receive evidence and assess the credibility of fact and expert witnesses.

The FTC's main argument in favor of proceeding on the papers is that the Court will be unable to decide the issue by the contractual walk-away date if it holds an evidentiary hearing. That is incorrect.  As explained above, Defendants will work with whatever time the Court has available to present their evidence and provide the Court with sufficient time to reach a decision. Moreover, assuming the hearing begins on November 13, Defendants have proposed a schedule that would provide the Court with time to render a decision before ███████████████████ ███████████  And again, Defendants are willing to begin the hearing earlier if necessary.

The FTC also suggests that proceeding on the papers is warranted because any time pressure was caused by IQVIA's recalcitrance in the FTC's investigation.  That is false.  IQVIA produced a huge amount of material to the FTC during the investigation, including over 1,150,000 documents from 35 custodians, with productions beginning in January 2023 and continuing on a rolling basis, along with extensive data and extensive written responses.  The parties repeatedly gave the FTC more time for its investigation, attempting to resolve the FTC's concerns.  Yet the FTC elected to sue only in July, after nearly a year of investigation.  The FTC is the moving party, and it is responsible for the timing in this proceeding.  This timing in no way supports proceeding on the papers, which would prejudice Defendants and unfairly benefit the FTC who—unlike the Defendants—had nearly a year to interview third parties, hold investigational hearings, and so forth.

**80 hour hearing**.  In complete contradiction to its argument that this case is simple enough to be resolved on the papers, the FTC alternatively says the hearing must be 80 hours total.  Nothing

20

supports this extreme position.  Indeed, as the chart above shows, an 80-hour hearing would—by far—be the longest Section 13(b) evidentiary hearing to occur in the last decade.

The FTC says this case is particularly complex because it involves both horizontal and vertical issues.  Yet far shorter hearings have addressed much more complicated cases.  For example, the FTC recently lost a preliminary injunction hearing that lasted five days for a $69 billion deal involving vertical issues involving video games that involved multiple horizontal markets including gaming consoles, subscription gaming services, and cloud gaming.  *See Microsoft Corp.*, 2023 WL 4443412, at *2.  This case, in contrast, involves a deal that is orders of magnitude smaller in size, yet the FTC says it will take triple the time.  Nor does the FTC identify any other factors, such as extremely large numbers of party witnesses, third parties, or experts, which would justify an 80-hour hearing.  There is no plausible explanation for the FTC's 80-hour hearing proposal—other than using it to discourage the Court from holding a hearing in the first place.

Moreover, the FTC's 80-hour hearing proposal calls for the completion of post-trial briefing on December 20—nearly a month *after* the TRO expires.  While the FTC does not address the TRO's expiration, the FTC appears to believe the TRO should simply be extended for many months.  That is improper, and a reversion back to the FTC's prior request for a TRO of indefinite length.  *See* Dkt. 34, at 4–6.  The FTC cannot obtain a TRO of indefinite duration—contrary to the Federal Rules of Civil Procedure and this Circuit's precedent (*see id.*)—by proposing an unnecessarily long trial schedule that extends far beyond the expiration of the TRO.

III.     **Disputed Case Management Issues**

- **Plaintiff's Position**

The parties will continue to negotiate dates and provisions related to a case management order after receiving additional guidance from the Court on the scope of the preliminary injunction hearing this Thursday.  If the parties are able to reach agreement on any of these issues prior to the hearing, we will inform the Court that the issues are moot.

Below are current disputes related to case management that are ripe for the Court's attention, and the parties' respective positions on each.  The parties have attached proposed schedules for the Court's considerations as Exhibits to this joint statement.

Witness List Exchanges & Depositions

The FTC has agreed to a limit of 15 party witnesses on the preliminary fact witness list exchange, out of a 30 total witnesses on a preliminary witness list, which would also include experts.  The FTC maintains its position that it is in the best interests of both parties and overall case management to have early transparency into the main party, non-party, and expert witnesses that each party is potentially interested in deposing.

FTC also proposes a final witness list exchange winnowed down to 20 total witnesses (party, non-party, experts), with up to 3 new individuals who were not on the parties' preliminary witness lists.  We have agreed with Defendants' proposal that the final witness list can include:

- Witnesses on the preliminary lists;
- Witnesses who submit a declaration/affidavit in connection with this federal court proceeding;
- Witnesses deposed in this federal court proceeding.

If the parties agree to these terms, the FTC will provide its preliminary witness list to Defendants on August 10, 2023 and Defendants will provide the FTC with their preliminary witness list on August 15, 2023.

With such an agreement on witness list exchanges, the FTC can also agree to the categories of deponents and limits on depositions that Defendants outlined in a correspondence this morning:

- Individuals on a preliminary witness list;
- Individuals who provide a declaration, note of support, or affidavit in connection with this matter;
- Individuals who sat for an investigational hearing; and
- Up to 20 additional non-parties.

Written Discovery

Regarding written discovery, the FTC agrees to the following limits on written discovery to each party, with the understanding that both parties may want to style data requests as interrogatories: 35 Requests for Production.  The FTC's proposal on Requests for Production is reasonable and far fewer than those proscribed under the Federal Rules of Civil Procedure.

Regarding timing of productions, the FTC can agree to a time period of service for Requests for Production of thirty (30) calendar days, with rolling production starting at fifteen (15) days, with an emphasis on prioritizing data requests.  To achieve the compressed timing that Defendants have proposed, any longer extensions will be unworkable under any formulation of schedules the parties have proposed.  As explained below related to the FTC's position related to the close of fact discovery (October 6, 2023 in the FTC's Exhibits A and B), any further production extension will push deadlines for production to the end of what the FTC envisions to be the close of fact discovery and when the FTC would plan to submit its initial expert report(s).

Close of Fact Discovery (Party and Non-Party)

For efficient fact and expert discovery management, it is the FTC's position that there should be one deadline for fact discovery, encompassing both party and non-parties.   The FTC's proposed dates in its Exhibit A and B accomplish these goals while also tracking deadlines that Defendants have initially proposed related to expert reports under the compressed schedule for

litigation (October 6, 2023). Both parties benefit from a more comprehensive fact discovery record in preparing their respective expert reports.

The FTC reiterates that a delineation in focus for timeframes related to fact and expert discovery will result in smoother and more efficient case management (and potentially fewer disputes related to facts incorporated into the parties' respective expert reports). If a handful of additional non-party depositions are scheduled beyond what we envision to be the October 6, 2023 close of fact discovery in Exhibit A (e.g. as a result of unavoidable scheduling conflicts after consultation with all parties involved, despite good faith efforts for earlier scheduling, and for good cause), those can be addressed as affirmative points, if necessary, in any subsequent expert report (including rebuttal) submitted.

- **Defendants' Position**

   **A. Front End Dates**

Defendants have proposed parallel tracks for the close of party and non-party fact discovery—with the non-party fact discovery date extending slightly longer than party fact discovery. *See* Ex. C. This reflects the reality that third-party discovery will require more time than party fact discovery. Party discovery will be streamlined due to the fact that Defendants have already produced over a million documents to the FTC during the nearly year-long investigation, and the parties are already familiar with the issues. In contrast, non-parties will have to be subpoenaed, may have to retain counsel, and will need to familiarize themselves with the issues and negotiate their response to the subpoena. This process will take time. Defendants' proposal strikes a balance by not delaying the close of party fact discovery given the longer process required for non-party discovery.

The FTC's principal objection is that staggering party and non-party discovery will result in some non-party discovery occurring after Plaintiffs' expert reports are due.  That is inevitable given the highly compressed nature of this litigation.  Nor will this prejudice the FTC, given that all non-party discovery will be complete by the time the FTC files rebuttal expert reports.

**B.  Fact Witness Lists and Deposition Limits**

The parties have been negotiating the scope of witness lists, as well as the limits on who may be deposed, for around a week. These negotiations have made substantial progress, and Defendants are hopeful agreement can be reached through additional negotiations.  Yet the FTC insisted on presenting this dispute to the Court now.  Defendants believe the dispute is premature and request that the Court instruct the parties to continue conferring.

If the Court is inclined to decide the dispute now, the chart below reflects the parties' positions.

| Issue | FTC Position | Defendants Position |
|---|---|---|
| Preliminary Witness List | 30 person preliminary list, including experts, with a 15 party witness limit | 15 person preliminary list, excluding experts, with a maximum of 10 party witnesses |
| Final Witness List | 20 person final list (party, non-party, and expert), with up to 3 individual not on the preliminary list<br><br>Final lists can only include:<br>• witnesses on the preliminary or updated lists, plus 3 additional witnesses who were either:<br>    (1) deposed, or<br>    (2) submitted declarations/affidavits. | 20 personal final list (party and non-party)<br><br>Final lists can only include:<br>• witnesses on the preliminary lists;<br>• witnesses who submit a declaration/affidavit in connection with this federal court proceeding<br>• witnesses deposed in this federal court proceeding |
| Deposition Limits | Each side may depose:<br>• Individuals on a preliminary witness list;<br>• Individual who provide a declaration, note of support, or | Each side may depose:<br>• Individuals on a preliminary witness list;<br>• Individual who provide a declaration, note of support, or |

| Issue | FTC Position | Defendants Position |
|---|---|---|
| | affidavit in connection with this matter;<br>• Individuals who sat for an investigational hearing; and<br>• Up to 20 additional non-parties | affidavit in connection with this matter;<br>• Individuals who sat for an investigational hearing; and<br>• Up to 20 additional non-parties |

While there is substantial overlap between the parties' proposals, there are three main areas of dispute.

*First*, the parties disagree on the number of party witnesses that may be on preliminary fact witness lists—with Defendants proposing 10, and the FTC proposing 15. Defendants' proposal is reasonable and ensures the lists can include a sufficient number of party witnesses, while not unduly expanding discovery in the highly compressed discovery period. The FTC's proposal, in contrast, would unduly expand discovery and prove unworkable.

*Second*, the parties disagree on two related issues: (a) the size of the preliminary witness list, and (b) the extent to which *non-parties* not on a preliminary witness list can be on the final witness list. Defendants propose a smaller preliminary witness list (15), but propose allowing non-parties who are *not* on the preliminary list but *are* deposed to be included on the final witness lists. In contrast, the FTC proposes a larger preliminary witness list (30), but would require nearly *all* non-parties to be included on that list (with a small exception for 3 individuals). That is, if non-parties are excluded from a party's preliminary witness list, under the FTC's proposal, they cannot be on the final witness list (unless they are one of the 3 exceptions). The FTC's proposal is not workable because Defendants are unable to identify a precise list of non-parties they will likely call to testify by their agreed-upon deadline for submitting preliminary witness lists—August 15—given that (a) this case was only recently filed, and (b) unlike the FTC—who has already interviewed and deposed third parties in connection with its nearly year-long investigation—

Defendants have deposed *no* third parties. Adopting the FTC's proposal would thus significantly prejudice Defendants.

The FTC argues including non-parties on preliminary witness lists is necessary for the parties to transparently reveal potential witnesses. But Defendants will identify non-parties they are currently aware of through initial disclosures, thus eliminating the FTC's concern. Moreover, the FTC will be aware of which non-parties Defendants depose and which submit declarations, which are the *only* non-parties Defendants could include on their final witness list but not their preliminary one. The FTC's concerns about transparency thus fall flat.

*Third*, the parties disagree on whether experts should be included on preliminary witness lists. The parties have *never* discussed expert disclosures during their meet and confers. Defendants are committed to conferring on that topic with the FTC. But Defendants cannot agree to include experts on their preliminary witness list, which is due in approximately two weeks. The FTC only recently brought this case. Defendants are still evaluating experts and are not in a position to disclose their experts at such an early juncture.

### C. Party Written Discovery (Timing, Scope)

#### a. Requests for Production

The parties have two disputes regarding requests for production.

First, the FTC proposes that each party can serve up to 35 requests for production. That is plainly excessive in light of (a) this highly expedited proceeding, and (b) the fact that the Defendants have produced around ***1.15 million*** documents already. Defendants' proposal of a 10 RFP limit is reasonable and should be adopted.

Second, the FTC proposes that productions be substantially complete within 20 calendar days of service of a RFP. That is unworkable. Objections to RFPs will not be served for a week,

and the parties will then have to negotiate the scope of production in light of the objections.  The FTC's proposal thus leave only a few days to respond to RFPs—a physical impossibility given the need to collect materials, run search terms, and so forth.  As a compromise, Defendants propose that the parties substantially complete productions within 45 days of service, and begin making rolling productions within 30 days of service.

Dated: August 2, 2023                    Respectfully submitted,


                                         /s/ Jennifer Fleury
                                         Jennifer Fleury (*pro hac vice*)
                                         Federal Trade Commission
                                         600 Pennsylvania Avenue NW
                                         Washington, DC 20580
                                         jfleury@ftc.gov

                                         *Counsel for Plaintiff Federal Trade
                                         Commission*

                                         /s/ *Chantale Fiebig*
                                         Chantale Fiebig
                                         Mark A. Perry
                                         Joshua M. Wesneski
                                         Weil, Gotshal & Manges LLP
                                         2001 M Street NW, Suite 600
                                         Washington, DC 20036
                                         Chantale.fiebig@weil.com
                                         Mark.perry@weil.com
                                         Joshua.wesneski@weil.com

                                         Kenneth Reinker
                                         Cleary Gottlieb Steen & Hamilton LLP
                                         2112 Pennsylvania Avenue, NW
                                         Washington, DC 20037
                                         Tel: (202) 974-1500
                                         kreinker@cgsh.com

                                         Rahul Mukhi
                                         Cleary Gottlieb Steen & Hamilton LLP
                                         One Liberty Plaza
                                         New York, NY 10006
                                         Tel: (212) 225-2000
                                         rmukhi@cgsh.com

                                         *Counsel for Defendant IQVIA Holdings, Inc.*

                                         /s/ *Alexander Okuliar*
                                         MORRISON & FOERSTER LLP
                                         Alexander P. Okuliar (*pro hac vice*)
                                         David J. Shaw (*pro hac vice pending*)
                                         Alexa Rae DiCunzolo (*pro hac vice*)
                                         Andrew J. Molina (*pro hac vice*)

Kevin Wang (*pro hac vice*)
Richelle Gernan (*pro hac vice*)
2100 L Street, NW, Suite 900
Washington, DC 20037
Tel: (202) 887-1500
aokuliar@mofo.com
dshaw@mofo.com
adicunzolo@mofo.com
amolina@mofo.com
kwang@mofo.com
rgernan@mofo.com

David J. Fioccola
Mika M. Fitzgerald
Michael B. Miller
250 West 55th Street
New York NY 10019
T: (212) 468-8000
dfioccola@mofo.com
mfitzgerald@mofo.com
mbmiller@mofo.com

*Counsel for Defendant Propel Media, Inc.*