# Weil, Gotshal & Manges LLP

2001 M Street, NW Suite 600
Washington, DC 20036
+1 202 682 7000 tel
+1 202 857 0940 fax

**Chantale Fiebig**
+1 (202) 682-7200
Chantale.Fiebig@weil.com

August 10, 2023

Hon. Edgardo Ramos
United States District Court, S.D.N.Y.
40 Foley Square
New York, NY 10007

Re: *Federal Trade Commission v. IQVIA Holdings Inc. et al.*, Case No. 1:23-cv-06188-ER

Dear Judge Ramos:

Pursuant to your Honor's Individual Practices Section 2.A. and S.D.N.Y. Local Civil Rule 37.2, Defendant IQVIA Holdings Inc. ("IQVIA") respectfully requests a pre-motion discovery conference with the Court regarding a proposed amendment to the protective order previously entered in the above-captioned matter. The parties have engaged in several meet-and-confer calls and multiple rounds of correspondence in an attempt to resolve this matter but are unable to come to an agreement. Given this impasse and the condensed timeline of the litigation, IQVIA respectfully seeks expeditious relief from the Court.

## Background

On July 28, 2023, the parties submitted a joint proposed protective order that was entered by the Court on the same day (ECF No. 55). In that submission, the parties noted that they had not yet reached agreement on whether a small number of designated in-house counsel for IQVIA could have access to information designated Confidential under the protective order. *See* ECF No. 54-1 at 4. The parties further noted that if they were unable to reach agreement, IQVIA could seek relief from this Court. *Id.* IQVIA and the FTC held numerous meet-and-confer calls between July 18 and August 4, 2023, and multiple e-mail exchanges, to address this issue but were unable to resolve it.

IQVIA is proposing to allow the following in-house counsel to have access to Confidential Information under the Protective Order:

    1.    Maureen Nakly: IQVIA's lead litigation lawyer, and since January 2023, IQVIA's lead M&A lawyer. She does not participate in any competitive decision-making at IQVIA.

    2.    Harvey Ashman: Harvey Ashman is IQVIA's sole in-house antitrust counsel. He is directly involved in regulatory and litigation matters relating to antitrust, intellectual property and licensing relating to the IQVIA business. His other responsibilities include IQVIA's Third-Party Access ("TPA") program, which involves licensing IQVIA market research offerings to participating vendors in a manner designed to protect IQVIA's intellectual property and support compliance with IQVIA's legal and contract requirements. Mr. Ashman does not participate in any competitive decision-making at IQVIA. With

Hon. Edgardo Ramos  **Weil, Gotshal & Manges LLP**
August 10, 2023
Page 2

respect to the TPA program specifically, he does not make competitive business decisions, but he reviews TPA license requests for legal concerns, including compliance issues and the protection of IQVIA's IP.

3. John O'Tuel is an in-house litigator at IQVIA. He has 25 years of experience as a lawyer, and he joined the company in December 2022. He does not participate in competitive decision-making.

The FTC has refused to agree to allow *any* IQVIA in-house counsel to access Confidential Information, based on the expressed concern that IQVIA in-house counsel may use such information for improper competitive purposes. Although IQVIA does not believe there is any legitimate basis for this concern, IQVIA has agreed to a number of limitations to address it: IQVIA has agreed to limit its in-house designees to three lawyers who would each sign a declaration attesting that they are not involved in competitive decision-making, that they will not share any Confidential Information with others in the company who are competitive decision-makers, and that they will be bound by the terms of the protective order and use any Confidential Information they receive only as explicitly provided in the Protective Order. IQVIA also agreed to notify each individual third party and give them a chance to object before disclosing any of their information to the designated in-house counsel. And IQVIA also agreed to treat the FTC's investigative file, which was compiled before the federal action was initiated, as outside counsel only.

Notwithstanding the accommodations proposed by IQVIA, the FTC has still refused to agree to include IQVIA's in-house designees in the protective order, even with these safeguards in place. They have agreed to allow only one of IQVIA's in-house counsel, Maureen Nakly, to have access under the conditions described above, on the additional condition that IQVIA's sole designee also agree to refrain from competitive decision-making for one year following her last access to any Confidential Information.

The FTC has claimed its objection is based on protecting third-party confidentiality interests, but the FTC has not explained, and cannot explain, how those interests are not fully addressed by IQVIA providing advance notice to any third parties, who will have a full opportunity to object.

**The Law Supports Granting IQVIA In-House Counsel with Access to Confidential Information**

To begin with, the law is clear that as long as they are not involved in "competitive decision-making," in-house counsel cannot be denied access to confidential discovery information they need to defend their company in litigation, merely because of their status as in-house counsel. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984); *see also Koninklijke Philips N.V. v. Iguzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 85-87 (S.D.N.Y. 2015) (granting access to three in-house attorneys who were "most actively involved in [the] case on a daily basis" because "[e]ach attorney fulfills a role essential to [the party's] overall litigation strategy"). Courts across many jurisdictions routinely grant in-house counsel who are not competitive decision-makers access to confidential discovery information under protective orders. *See, e.g., Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, No. 89-484-CMW, 1990 U.S. Dist. LEXIS 14075, at *4 (D. Del. Oct. 12, 1990) (granting access to six in-house counsel); *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-901-JJF, 2005 U.S. Dist. LEXIS 15482, at *6-8 (D. Del. Jul. 28,

Hon. Edgardo Ramos                                                                                                         **Weil, Gotshal & Manges LLP**
August 10, 2023
Page 3

2005) (granting access to four in-house counsel); *Alcon Vision, LLC v. Lens.Com, Inc.*, No. 18-CV-407 (NG), 2019 U.S. Dist. LEXIS 229097, at *6-8 (E.D.N.Y. Aug. 22, 2019) (granting access to two in-house counsel); *Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC (LB), 2012 U.S. Dist. LEXIS 23103, at *17 (N.D. Cal. Feb. 23, 2012) (granting access to two in-house counsel).

In FTC litigation in particular, there is especially strong precedent for in-house counsel access to confidential discovery information, provided that a protective order is in place that institutes appropriate safeguards, such as a mechanism for the FTC to lodge objections or penalty provisions for non-compliance. *FTC v. Penn State Hershey Med. Ctr.*, No. 1:15-CV-2362, 2016 U.S. Dist. LEXIS 24177, at *4-6 (M.D. Pa. Feb. 29, 2016) ("In FTC litigation in-house counsel *typically may have access to confidential information* subject to certain reasonable constraints[.]") (emphasis added); *see also FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015); *FTC v. Whole Foods Mkt., Inc.*, No. 07-1021 (PLF), 2007 U.S. Dist. LEXIS 53567, at *9 (D.D.C. July 6, 2007) (granting in-house counsel access to confidential discovery material); *FTC v. Foster*, No. CIV 07-352 JB/ACT, 2007 U.S. Dist. LEXIS 55163, at *7-8 (D.N.M. Apr. 26, 2007) (same).

Here, IQVIA's designated in-house counsel are not involved in any relevant competitive decision-making, but they are integral to the company's litigation strategy, as they are responsible for making strategic litigation decisions and managing IQVIA's outside counsel. As such, they must be fully informed of the facts in this lawsuit that the FTC has lodged against their company. It would be unreasonable and unjust to deny them access to the information they need to defend their company against the FTC's allegations—especially given the robust protections that an amended protective order from this Court would confer, including notice and an opportunity to object for the third parties whose confidentiality interests are purportedly the basis for the FTC's position. *See FTC. v. Sysco Corp.*, 83 F. Supp. at 4 ("It would be unfair…for the government to attempt to prevent a private business transaction based, even in part, on evidence that is withheld from the actual Defendants (as distinct from their outside counsel).").

The FTC's insistence on a one-year ban on post-litigation activity is unreasonable and unjustified. Courts have rejected protective order proposals that include similar future restrictions on business activity as "draconian" in nature. *See, e.g.*, *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 162 (D. Del. 1999); *see also AFP Advanced Food Prod. LLC v. Snyder's of Hanover Mfg., Inc.*, No. CIV.A. 05-3006, 2006 WL 47374, at *3 (E.D. Pa. Jan. 6, 2006) (rejecting proposed future work restrictions as "burdensome and unnecessary"). The FTC has no reasonable basis for demanding this highly restrictive condition on IQVIA's in-house lawyers accessing Confidential Information

## Conclusion

For the foregoing reasons, IQVIA respectfully requests a pre-motion conference at which IQVIA will request that the Court enter the Proposed Amended Protective Order, attached hereto as <u>Exhibit A</u>, that would allow IQVIA's designated in-house counsel to access discovery material designated as Confidential.

Hon. Edgardo Ramos
August 10, 2023
Page 4

**Weil, Gotshal & Manges LLP**

Respectfully submitted,

*/s/ Chantale Fiebig*

Chantale Fiebig