```
     N83DFEDC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    FEDERAL TRADE COMMISSION,

4                 Plaintiff,

5             v.                                23 CV 06188

6    IGVIA HOLDINGS INC., ET AL.,

7                 Defendants.
                                                Conference
8    ------------------------------x
                                                New York, N.Y.
9                                               August 3, 2023
                                                2:30 p.m.
10
     Before:
11
                      HON. EDGARDO RAMOS,
12
                                                District Judge
13

14                        APPEARANCES

15   FEDERAL TRADE COMMISSION
          Attorneys for Plaintiff
16   BY:  JENNIFER FLEURY
          JORDAN ANDREW
17        JESSICA MOY
          PAUL ZIMMERMAN
18
     WEIL, GOTSHAL & MANGES, LLP
19        Attorneys for Defendant IQVIA Holdings, Inc.
     BY:  CHANTALE FIEBIG
20        MARK ANDREW PERRY

21   CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP
          Attorney for Defendant IQVIA Holdings, Inc.
22   BY:  KENNETH STEPHEN REINKER

23   MORRISON & FOERSTER, LLP
          Attorney for Defendant Propel Media, Inc.
24   BY:  Alexander Paul Okuliar
          Alexa DiCunzolo
25        David Shaw
```

1            (Case called; appearances noted)

2            THE COURT:  Good afternoon.  Because the conference is
3   being conducted by telephone I request that you all please
4   endever to abide by the instructions provided to you by
5   Ms. Rivera.  Try not to speak with one another, and, from my
6   perspective, what I always endeavor to do is ask very precise
7   questions that are capable of being answered succinctly.  If
8   you find yourself talking for a little bit, stop, because
9   someone may be trying, i.e. me, to cut in with a question.
10  With that, we can begin.

11           I note, first of all, that I did receive the parties'
12  joint statement regarding the preliminary injunction hearing.
13  I received it yesterday afternoon.  I have reviewed it.
14  However, I have not gotten into the nuance of some of the
15  differences between the parties' positions, between, for
16  example, a 30-person preliminary list versus a 15-person
17  preliminary list, and things of that nature, but we'll see
18  what, if anything, we need to decided today.

19           So let me begin, first of all, with the question of
20  whether we should have an in-person hearing or not.

21           Ms. Fleury, let me hear from you first.

22           MS. FLEURY:  Absolutely, your Honor.

23           We had, as you know, proposed two different options
24  for the Court's consideration:  An in-person, live evidentiary
25  hearing with live witnesses, and a submission on the papers.

And we proposed those two options for a couple of reasons.  No. 1, we wanted to be sensitive to the Court's scheduling constrains, and the interest in resolving this matter quickly; but we also wanted an opportunity to discuss the legal standard of this 13(b) proceeding in advance of a decision, a final decision being made on the structure of how to prevent the evidence, because to the extent there is a disagreement between the parties over the governing law, that impacts the type of presentation the Court may wish to hear to resolve -- to apply the evidence to the legal standard.

So with the Court bearing in mind the Court's instruction to take many pauses, I was going to try to address the legal standard, and whether there was a disagreement between the parties first.  But I can do this in any order that you wish.

THE COURT:  Well, let me ask as well, why will that affect the presentation of evidence necessarily?

MS. FLEURY:  That's a good question, your Honor.  The reason it will affect the presentation of evidence, in our view, is that what I think the defendants were proposing in a couple of their submissions before this Court is that this is something akin to a merits trial, that we have a higher burden of proof than we think we have, and that we think the law shows.  So if the Court is sympathetic to that view, that this is essentially a merits trial, where we have a higher burden of

proof, then obviously that would affect the amount of evidence that we want to be able to show you.

In either case, either proposal the government has put forth would allow for you to receive a greater sense, a greater amount of evidence that goes towards the strength of our case than the defendant's proposal.  But -- so we think we can work and meet our burden under either option, but it seems that we --

THE COURT:  I don't read the defendants' position, and obviously I'll hear from them, that this is necessarily a merits trial.  I think everyone understands that this is a preliminary injunction hearing, not a full trial on the merits, and the question really is whether I apply the standard that you suggest, which is fair and tenable, as opposed to the standard that they suggest, which is a serious question.  And is there really such difference between those standards that it should affect the balance of our conversation?

MS. FLEURY:  I agree with all that, your Honor.  We agree with actually the serious question standard, the substantial question standard advanced by the defendants, cited by the defendants in page 6 of their joint statement, and the fair and tenable standard.  We think the Second Circuit has addressed whether there were two different standards, also cited by the defendants, I think it's on page 7 of the joint statement, and that the Second Circuit in the *Sun & Sand* case

said we don't see those as different standards; they're just a different way of saying the same standard, which is something less than finding a probable likelihood of success on the merits. It's saying the FTC has to raise substantial questions about the transaction, has to show we have a fair and tenable chance of receiving winning, and then those questions should be resolved by the FTC's administrative court in the first instance. That is the quote that they cite on page 6 of the joint statement. And we agree with that standard.

They also say other things that are inconsistent, but to the extent we can all agree it's a substantial question, it's fair and tenable chance, so it essentially means the same thing. And the Second Circuit has gone with the fair and tenable chance language, and other circuits have gone with substantial question, but we've pretty much arrived at the same place, then I think we can move very quickly past the governing law and onto the substance of how we should present the evidence.

THE COURT: So if that's the case, I mean, if we all agree that this is not a merits trial, then why are you recommending or suggesting that we need the number of witnesses and the scope of testimony that you're suggesting?

MS. FLEURY: Because in order to assess our likelihood of success on the merits, even if that isn't a particularly high bar under the law, you want access to the full slate of

1    what that evidence look likes, what we'll be able to put forth
2    in the merits trial.  Now, we recognize we're not going to get
3    the 210 hours that we would be entitled to under the merits
4    proceeding, and so we're trying to come up with ways of showing
5    you, in a case that does have two different theories of harm,
6    which is not something that was true in the example cited by
7    the defendants in their chart.  We have a horizontal case and a
8    vertical case, and we want to be able to show you the breadth
9    of our evidence and various ways we've alleged harm during this
10   transaction.  And that is why we proposed the number of
11   witnesses we've proposed, and it is also, recognizing that may
12   not work for the Court's calendar, has proposed another way,
13   where we could get that same eivdence by robust briefing,
14   attaching various types of evidence that still shows the
15   breadth of our case with more than a handful of witnesses over
16   what would essentially, under defendants' proposal, only allow
17   the government two and a half days, which is less than a day
18   per theory when it comes down to it.
19            THE COURT:  Yes.  The chart that's presented by the
20   defense concerning the hearings that have been held, they
21   characterize it as being all of the hearings that have been
22   held over the last 10 years, and that they've all involved live
23   testimony.
24            Do you dispute the accuracy of those statements, those
25   representations?

            MS. FLEURY:  I do dispute that the chart would completely include this.  The chart itself includes a couple of nine- and ten-day hearings that we actually think are more analogous to our case than some of the other examples.  It also omits other hearings that were nine or ten days.  And in addition to that, the SEC is currently engaged in merit proceedings in a different circuit, which will be a two-week trial.

            So I think what that chart shows, which I do agree with, is every case is different, and there are a range of types of ways of presenting evidence in a 13(b) proceeding.  I agree with that completely.

            For this case, we've tried to make a very concrete estimate, and I can get into more specifics of how we'd use our 40 hours that we're asking for if we do a live evidentiary presentation.  And we've tried our best to figure out various types of harm we think the transaction presents in a way that is still, as I said, far less than we get in the merits proceeding, but does a better job of getting to the breadth of evidence.

            THE COURT:  Let me turn to Ms. Fiebig.  Ms. Fiebig, what's your view of evidentiary hearing versus on the papers?

            MS. FIEBIG:  Thank you very much your Honor.

            First and foremost, we agree with your view that whatever the legal standard is that the Court applies should

not be decided today, nor is it dispositive of the nature of the hearing that the parties should proceed with. You know, obviously, from the papers, the parties dispute precisely what the contours are of the FTC's burden, but there can be no question that this Court must and should have an opportunity to take a very serious look at the FTC's case. And we're happy to brief that as we move forward in these proceedings.

I mean, the FTC will file a motion for preliminary injunction where these motions will be briefed again. We do recognize this is not a merits trial, but also not rubber-stamped, particularly because, as we indicated in our papers, for all practical purposes, this outcome is determinative. So we think, consistent with the overwhelming majority of courts in your position, it would be helpful we hope to your Honor, and most fair to the parties to have an evidentiary hearing. And that's really all we're here to discuss today, is sort of what the scope and contours of that look like.

The table that we've put forward shows that there has not, to our knowledge, been a case in the last 10 years decided on the paper. Even if you go back further than that, in the last 45 years, we've only been able to identify two instances a court decided things on the papers, or purported to.

The first is this *Lancaster* case that the FDC relies upon for this fair and tenable standard back in 1977, and this

has really been overtaken in the interim, but certainly every court since then agrees there should be an evidentiary hearing, including because there are some very fact intensive issues the Court will be asked to resolve.  So we can say we would be as flexible as necessary to fit within the Court's schedule.  We certainly do not think it will be necessary for there to be a 80-hour hearing.  We think the parties could proceed on half the time, and particularly because the government has had over a year or approximately a year to consider its own evidence, then we would expect to be able to proceed to put on an efficient case in far less than 80 hours.

THE COURT:  Ms. Fiebig, while I have you on the line, apparently the walk away date from the consummation of the closing of the deal has moved again; is that right?

MS. FIEBIG:  You're right, your Honor.  We hoped to provide the Court additional time to render its decision, given our discussion before you last time and considering that you already have another trial scheduled for November.  So we were hoping to accommodate the time that the Court would need in order to make its considered decision on these issues, and the parties worked very hard to be able to reach an agreement to extend the outside date to December 15, so that your Honor would have an opportunity to hear the evidence and issue your decision.

THE COURT:  I'm sorry if I'm mispronouncing your name,

1   Mr. Okuliar?

2       MR. OKULIAR:  Yes, Judge.  That's right.

3       THE COURT:  So what is your position on papers versus
4   live testimony?

5       MR. OKULIAR:  Judge, we would agree with IQVIA.  We
6   think there are a lot of fact issues at dispute here, and so a
7   live hearing would be ultimately better than the papers, so we
8   would like to have the opportunity for live testimony.

9       THE COURT:  Okay.  So like I said, I haven't had an
10  opportunity to digest entirely the positions of the parties,
11  but I have taken a look at my calendar, and what I can do and
12  what I will do is I can begin a hearing on Monday, November 20.
13  That of course is Thanksgiving week.  We'll go two and a half
14  or three days that week, and then I have the following week
15  that I can provide to the parties.  I don't know that you'll
16  need seven and a half or eight days, and I would rather that
17  you do it in less time than that and maybe save some time for
18  closing argument, but for right now, that is when -- so I will
19  have a hearing, and it will be over that period of time.
20  Hopefully, with that guidance, you can work backwards in terms
21  of the number of witnesses, agree on the number of witnesses
22  that both sides will put on, et cetera.  If we go ahead and
23  have it during that time, you'll get an opinion as soon
24  thereafter as possible.

25      I do note that I think it will have to -- it will

1  include an extension of the TRO that's currently in place,
2  which expires I believe on the 22nd.  So it will have to go
3  beyond then obviously.
4          MS. FIEBIG:  Thank you, your Honor.  This is Chantale
5  Fiebig for IQVIA.
6          We will confer with the government about the TRO, and
7  hope to submit a stipulated TRO to you.  I just wanted to ask
8  to clarify, did you indicate if the hearing begins on the 20th,
9  we can go two and a half days that week, and then the balance
10 of the week of the 27th, through December 31st if necessary?
11         THE COURT:  Correct.  That amount of time will be made
12 available to you.  I would hope that you can agree to use less
13 than all of that time, but if we need it, that's what we have.
14         MS. FIEBIG:  Understood.  Thank you, your Honor.
15         MS. FLEURY:  Thank you, your Honor.  This is Jennifer
16 Fleury with the FTC.
17         We can work within that window.  We appreciate it.
18 And we will have conversations with the defendants about
19 extending the TRO.  I think one thing that would be helpful in
20 coming to ground and not having to do incremental extensions is
21 trying to think through, both sides, about how much time makes
22 sense in terms of a decision, because we would want any
23 extension to extend past that.
24         I have looked into that a little bit, your Honor, and
25 it seems like why this is not -- for cases about this length,

1   normally judges take around 35 days, so I just wanted to --
2   again, I don't know how much time the Court will require, but
3   that's something to think about, is how much time on the back
4   end for making a decision is, and the post-hearing submissions,
5   if any.
6              THE COURT:  I don't know if there's going to be time
7   for post-hearing submissions, but at this point it's impossible
8   for me to tell you how long it's going to take.  I will
9   endeavor to do it as quickly as I possibly can.  We'll wait to
10  hear from the defense.  There was a representation that it
11  could not possibly be moved the last time we were all together,
12  and then low and behold, it moved.
13             I'm going out of my way to, in the middle of all of
14  this, to provide you all with as much time as possible to
15  present new evidence, and I will get you an answer as soon as I
16  can thereafter.  But obviously --
17             MS. FLEURY:  Totally understood, your Honor.
18             THE COURT:  -- as much flexibility as can be provided
19  by all sides will be appreciated.
20             MS. FLEURY:  Absolutely.
21             THE COURT:  In any event, you'll get my decision when
22  you get my decision, and all I can tell you is it will be as
23  soon as I can.
24             MS. FLEURY:  Thank you, your Honor.
25             THE COURT:  So, with that, what else do we need to

1   decide today?

2   　　　　　Ms. Fleury?

3   　　　　　MS. FLEURY:  This is Jennifer Fleury for the FTC.

4   　　　　　I'm open to discussing further issues, if the
5   defendants prefer, but I think it might be worthwhile -- we
6   were making progress, including an exchange of emails today on
7   various points for compromise, and so I think it might be
8   worthwhile for us to take the information and the guidance the
9   Court has helpfully given us today, and go back and see if we
10  can come up with a more comprehensive proposal, and compromise
11  on whatever we can compromise on, working backwards from the
12  schedule that you set.

13  　　　　　THE COURT:  That would certainly be very helpful to
14  the Court.

15  　　　　　Ms. Fiebig?

16  　　　　　MS. FIEBIG:  Yes.

17  　　　　　MS. FLEURY:  That was Ms. Fleury, for the FTC.

18  　　　　　MS. FIEBIG:  Nothing else.

19  　　　　　THE COURT:  Mr. Okuliar?

20  　　　　　MR. OKULIAR:  Yes.  Thank you, sir.  That's it.

21  　　　　　THE COURT:  Okay.  So do you need me any further this
22  afternoon?

23  　　　　　Ms. Fleury?

24  　　　　　MS. FLEURY:  Nothing from the FTC.

25  　　　　　THE COURT:  Ms. Fiebig?

N83DFEDC

1        MS. FIEBIG:  No.  Thank you very much, your Honor.
2        THE COURT:  Mr. Okuliar?
3        MR. OKULIAR:  No.  Thank you very much, your Honor.
4        THE COURT:  Okay.  Then I'll wait to hear from you on
5   any further scheduling issues, given the dates that I have
6   provided for the hearing, working backwards from there, and any
7   unconsented to issues concerning witnesses, et cetera.
8        With that, do get back to me as soon as you are able,
9   okay?
10       We're adjourned.  Take care of everyone.
11       (Adjourned
12       MS. COLSON:  Thank you journals.
13  Q.   3 people Thank you, your Honor.