Case 1:23-cv-06188-ER   Document 113   Filed 08/17/23   Page 1 of 3

# Weil, Gotshal & Manges LLP

2001 M Street, NW Suite 600
Washington, DC 20036
+1 202 682 7000 tel
+1 202 857 0940 fax

**Chantale Fiebig**
+1 (202) 682-7200
Chantale.Fiebig@weil.com

August 17, 2023

Hon. Edgardo Ramos
United States District Court, S.D.N.Y.
40 Foley Square
New York, NY 10007

Re: *Federal Trade Commission v. IQVIA Holdings Inc. et al.*, Case No. 1:23-cv-06188-ER

Dear Judge Ramos:

As IQVIA explained in its August 10, 2023 Letter Motion (ECF No. 96), it is crucial for its three designated in-house counsel to be able to access confidential discovery information, as they are responsible for making strategic litigation decisions and managing IQVIA's outside counsel. IQVIA's in-house lawyers direct the litigation and make the decisions most critical to building the company's defense. They cannot be expected to do so, especially on a compressed schedule, without access to the information the FTC purports to rely upon in prosecuting this case. *See* Ex. A (Ashman Decl.) ¶¶ 4-7; Ex. B (Nakly Decl.) ¶¶ 4-7; Ex. C (O'Tuel Decl.) ¶¶ 3-5.

In its August 16, 2023 letter (ECF No. 107), the FTC objects to allowing IQVIA's three specified in-house counsel access to information about the litigation. That position rests on three incorrect assertions:

First, the FTC represents to the Court that it received from third parties ███████████████████████████████████████████████████ To clarify, the FTC has produced its investigative file to outside counsel for IQVIA, and it does not contain documents or data from third parties that fit the description in the FTC's letter. Indeed, setting aside document productions from transaction advisors to the merging parties, the entire FTC investigative file contains only about 10 documents from third-parties consisting only of high-level financials. IQVIA asked the FTC to correct the record on this point, but the FTC refused. *See* Ex. D. Instead, the FTC says that despite specifically referencing ███████████ what it meant by this ███████████ was that ███████████████████████████. The FTC's response makes it clear that its investigative file does not contain ███████████████.

Second, the FTC states that it has concerns about allowing IQVIA's in-house counsel to access confidential information because of alleged past disclosures of confidential information by "an IQVIA executive." The subject of these allegations is not an attorney, let alone one of IQVIA's three designated in-house counsel. The information at issue was neither received nor shared in connection with this

Hon. Edgardo Ramos
August 17, 2023
Page 2

**Weil, Gotshal & Manges LLP**

litigation, and was not subject to a protective order. There is no basis to impute these allegations to the lawyers at issue here.

Third, the concerns articulated by the FTC about IQVIA's three designated in-house counsel are unfounded. All three of IQVIA's specified in-house attorneys are officers of the court, and they take their confidentiality obligations extremely seriously, as all attorneys must. Their professional responsibilities routinely require them to segregate and protect confidential information, pursuant to both ethical obligations and protective orders like the one at issue here.[1]

Mr. Ashman does not participate in competitive decision-making at IQVIA in connection with the Third-Party Access ("TPA") Program or otherwise. *See* Ex. A (Ashman Decl.) ¶¶ 8-12. Moreover, the FTC's assertions regarding the TPA program are factually incorrect. The TPA program exists specifically to expand access to data: through the TPA program, IQVIA allows its customers to use IQVIA data with third-party vendors of their choice so that the vendors can provide services to those customers. In 2022 alone, IQVIA issued more than 70,000 TPA licenses to over 2,600 vendors. IQVIA approves customer requests for TPA licenses more than 99% of the time. In the rare instance that IQVIA has denied a TPA license, it is on the grounds of intellectual property protection, regulatory compliance (e.g., privacy requirements), or if needed for IQVIA to comply with its own contractual obligations (e.g., limitations imposed by data suppliers). The FTC's assertion that IQVIA has a list of competitors to which it denies TPAs is false, and it is based on nothing more than a single three-year-old e-mail sent by someone with no involvement in the TPA program that the FTC has quoted out of context. IQVIA looks forward to presenting evidence to refute the FTC's mischaracterizations of the TPA Program at trial, but for purposes of IQVIA's limited request to have in-house counsel access confidential information to direct this litigation, the key point is that Mr. Ashman does not engage in competitive decision-making of any sort at IQVIA, as sworn in his declaration.

Ms. Nakly and Mr. O'Tuel are likewise not involved in competitive decision-making at IQVIA. *See* Ex. B (Nakly Decl.) ¶¶ 8-11; Ex. C (O'Tuel Decl.) ¶¶ 6-9. The FTC agreed in discussions that it was appropriate for Ms. Nakly to have access to the information, yet demanded that she nonetheless be subject

---

[1] The FTC's suggestion that IQVIA's in-house counsel designees should not have access to confidential information because they are "in close proximity to competitive decision-making roles" or that they "provide[] legal advice to competitive decision-makers" defies logic and contravenes well-established case law allowing in-house counsel access to confidential information. *See* ECF No. 96 at 2-3. It is every in-house lawyer's duty to provide legal advice to the company's decision-makers. By the FTC's reasoning, no in-house counsel would ever have access to confidential information. But the law is clear that in-house counsel who are not themselves involved in competitive decision-making cannot be denied access to confidential discovery information they need to defend their company in litigation, merely because of their status as in-house counsel. *See id.*; *Koninklijke Philips N.V. v. Iguzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 85-87 (S.D.N.Y. 2015).

to a year-long non-compete following the end of this litigation if she receives confidential information.[2] The FTC omits the fact that Ms. Nakly is IQVIA's head of litigation and instead seeks to characterize her only as an M&A lawyer. As to Mr. O'Tuel, he is a pure litigator. The FTC says only that he is relatively new to IQVIA, but never explains why that means he should not be able to see the materials at issue. Mr. O'Tuel has 25 years of experience as an attorney, and he is now an integral part of IQVIA's in-house litigation team. *See* Ex. C ¶¶ 2-5.

More broadly, the FTC's concerns are especially unfounded given that IQVIA has offered to notify each third party before their information is shared with IQVIA's in-house counsel and give them an opportunity to object. *See* ECF No. 96-1 ¶ 8. As such, IQVIA is seeking permission only for its three designated in-house counsel to view third-party information for which there is no objection. The FTC does not, because it cannot, address why this notice procedure does not fully address its purported concerns on behalf of third parties.[3]

For the foregoing reasons, and the reasons set forth in IQVIA's letter motion dated August 10, 2023 (ECF No. 96), IQVIA respectfully requests a conference with the Court as soon as possible.

Respectfully submitted,

/s/ *Chantale Fiebig*

Chantale Fiebig

---

[2] In support of its proposed non-compete restriction, the FTC cites examples of protective orders from other courts outside of this district involving circumstances that are not present here. *See, e.g., Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003) (patent case where both sides *agreed* that their attorneys who view confidential information should be restricted from patenting for one of the parties for the duration of the trial and for two years after its conclusion).

[3] The procedure for providing all third parties with notice and opportunity to object, which IQVIA has offered to follow, also sufficiently addresses the concerns that PulsePoint expressed in the letter it submitted. *See* ECF No. 109. Indeed, PulsePoint's objection to IQVIA sharing PulsePoint's information with its in-house counsel is exactly the type of objection that IQVIA has agreed to honor under its Proposed Amended Protective Order. *See* ECF No. 96-1 ¶ 8. The Court should not credit PulsePoint's speculation regarding the roles of IQVIA's in-house counsel, ECF No. 109 at 2, especially since that speculation is contrary to IQVIA's in-house attorneys' own sworn declarations. *See* Exs. A–C.