# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IQVIA HOLDINGS INC., <br><br> and <br><br> PROPEL MEDIA, INC. <br><br> Defendants. | Case No. 1:23-cv-06188-ER |

### DECLARATION OF JON RESNICK

1. My name is Jon Resnick. I am over the age of twenty-one years and of sound mind. The statements set forth in this declaration are true and within my personal knowledge. If called as a witness, I would and could competently testify to the matters set forth herein.

2. I am the President of the US and Canada regional business unit of IQVIA Holdings Inc. ("IQVIA"). I have been in that role since 2019. In that capacity, I have oversight over strategy, innovations, and business operations, among other things, for IQVIA's portfolio of information and technology solutions in the region.

3. I have been personally involved in various aspects of the anticipated transaction between IQVIA and Propel Media, Inc. ("Propel") that is the subject of this litigation. Among other things, I have been responsible for approving the key terms of the transaction, including financial terms and the outside closing date, sometimes called the "walkaway" date.

4. Virtually all merger agreements include a date certain—called the outside date, end date, or walkaway date—by which if the transaction has not yet closed, either party has the right to terminate the agreement and "walk away" from the transaction.

5. The walkaway date is important for numerous commercial reasons. This date is important to allow the parties to plan the future of their businesses. If a transaction does not close by the walkaway date, then the parties might decide that their time, money, and efforts are better spent elsewhere. Transactions are also often burdensome and disruptive to the parties and their executives and employees; it is important for the parties to know when the burden and disruption will end so that they are able to return their full focus to running their business. The commercial considerations surrounding the merger also might change over time, and the economic terms negotiated at the time of the agreement may be less commercially justifiable for one party or the other in the future. That is particularly true in fast-moving industries, like digital advertising.

6. The merger agreement between IQVIA and Propel was executed on July 22, 2022. ▮▮▮▮▮. In view of the FTC's investigation, the parties negotiated an amended and restated agreement that ▮▮▮▮▮ ▮▮▮▮▮. That new agreement ▮▮▮▮▮ ▮▮▮▮▮. The amended and restatement agreement required months of negotiation between the parties.

7. Because the FTC continued to investigate the merger, ▮▮▮▮▮ ▮▮▮▮▮.

8. Following a conference before the Court on July 20, 2023, IQVIA and Propel explored whether it would be possible to ▮▮▮▮▮ provide more time for the hearing and decision on the FTC's preliminary injunction motion.

9. Those negotiations took place over approximately two weeks following the July 20, 2023 conference, and involved numerous discussions and correspondence between the parties and their respective counsel. The parties sought to protect their own commercial interests, and the terms ▮▮▮▮▮ were the subject of substantial disagreement between the parties.

10. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

11. Neither IQVIA nor Propel has any contractual right or obligation to ████████████████████████████████████████.

12. Based on the negotiations that just concluded as well as the negotiations over ████████████████, I do not know whether IQVIA and Propel would be able to ████████████████████████████████████. Either party could seek additional consideration or other concessions in exchange ██████████████████████████████████████████████. The greater the consideration one party requires for ████████████, the more seriously the counterparty will have to consider whether the transaction still makes economic and commercial sense. Thus, delay ████████████████████████████, creates a real risk that the deal would fall apart.

13. Termination of the transaction would have real-world effects on numerous people, including employees of IQVIA and Propel. Digital advertising is a growing and competitive industry, and the merger will help position IQVIA to compete against larger, more established firms with greater resources. If the parties are unable to complete the transaction, the efficiencies the parties hope to gain from the transaction will be lost, reducing competition in the digital advertising industry and harming consumers. Moreover, as set forth above, the amended and restated merger agreement ████████████████████████████████████████████████████.

14. The transaction has been pending since July 2022, ████████████████████████████████████████████████████████████████████████████████████████. The pendency of the deal has created uncertainties impacting both businesses, as well as our partners and customers. Further delay would result in prejudice to the merging companies, their employees, and others.

15.     These adverse effects on Propel also affect IQVIA's business, both as a potential parent company and as an existing partner to Propel.  The benefits and efficiencies of the proposed transaction are based on Propel's historical performance as well as its future prospects, which are already being impacted by regulatory delay and could be compromised by ██████████ ████████████████████████.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on August 28, 2023, in Parsippany, New Jersey.

By.    _____
       Jon Resnick
       IQVIA Holdings Inc.

4