## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

                Plaintiff,

      v.

IQVIA HOLDINGS INC.,

and

PROPEL MEDIA, INC.

                Defendants.

Case No. 1:23-cv-06188-ER

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE</u>**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ................................................................................................................ 1

II.   ARGUMENT .................................................................................................................... 7

    A.    Defendants' Constitutional Affirmative Defenses Are Legally Insufficient .......... 8

    B.    Defendants' Equitable Affirmative Defenses Lack Any Legal or Factual
        Basis. ..................................................................................................................... 13

        1.    Laches Is Unavailable Because the FTC Has Brought This Action to
             Protect the Public Interest, and, in Any Event, Defendants' Allegations
             Are Insufficient .............................................................................................. 14

        2.    The Defense of Estoppel Is Available Only in the Most Serious of
             Circumstances—Which Defendants Cannot, and Do Not, Allege Exist
             Here ................................................................................................................ 15

    C.    The FTC Will Suffer Prejudice If This Court Does Not Strike Defendants'
        Constitutional and Equitable Affirmative Defenses. ............................................ 17

III.  CONCLUSION ................................................................................................................ 19

## **TABLE OF AUTHORITES**

**Cases**

*Axon Enterprise, Inc. v. Federal Trade Commission*, 143 S. Ct. 890 (2023)........................ 12, 18

*Brown Shoe Co., Inc. v. United States*, 370 U.S. 294 (1962) ...................................................... 15

*Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266 (2d Cir. 2005)....................................... 14

*Drozd v. INS*, 155 F.3d 81 (2d Cir.1998)..................................................................................... 16

*FTC v. Crescent Publ'g Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001)................... 9, 10, 13

*FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088 (S.D.N.Y. 1977)...................... 9, 10, 11, 13

*FTC v. Meta Platforms, Inc.*, No. 5:22-CV-04325-EJD, 2022 WL 16637996
  (N.D. Cal. Nov. 2, 2022) ....................................................................................... *passim*

*FTC v. Nat'l Tea Co.*, 603 F.2d 694 (8th Cir. 1979) .................................................................... 10

*FTC v. Quincy Bioscience Holding, Co.*, 17 Civ. 124 (LLS), 2020 WL 1031271
  (S.D.N.Y. Mar. 2, 2020)....................................................................................... 14, 18

*FTC v. Univ. Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991).......................................................... 10

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92 (2d Cir. 2019).................... *passim*

*Heckler v. Cmty Health Servs. of Crawford County, Inc.*, 467 U.S. 51 (1984)............................ 16

*Hicks v. Leslie Feely Fine Art, LLC*, 1:20-cv-1991(ER), 2021 WL 982298
  (S.D.N.Y. Mar. 16, 2021)........................................................................................... 14

*INS v. Hibi*, 414 U.S. 5 (1973)..................................................................................................... 16

*MIC Prop v. Kennolyn Camps, Inc.*, No. 5:15-cv-00589, 2015 WL 4264119
  (N.D. Cal. Aug. 3, 2015) ........................................................................................... 11

*Mulligan v. Lipnic*, 734 F. App'x 397 (9th Cir. 2018).................................................................. 17

*Office of Personal Mgmt. v. Richmond*, 496 U.S. 414 (1990) ..................................................... 16

*Rojas-Reyes v. INS*, 235 F.3d 115 (2d Cir. 2000) ....................................................................... 16

*Schweiker v. Hansen*, 450 U.S. 785 (1981) ................................................................................. 16

*SEC v. McCaskey*, 56 F. Supp. 2d 323 (S.D.N.Y. 1999) .......................................................... 7, 15

*SEC. v. Rayat*, No. 21-cv-4777 (LJL), 2021 WL 4868590 (S.D.N.Y. Oct. 18. 2021) ............. 7, 18

*Signify N. Am. Co. v. Reggiani Lighting USA, Inc.*, No. 18-cv-11098 (ER), 2020 WL 1331919
  (S.D.N.Y. Mar. 23, 2020)........................................................................................... 7, 9

*United States v. Angell*, 292 F.3d 333 (2d Cir. 2002)................................................................... 14

*United States v. E.I. du Pont*, 353 U.S. 586 (1957) ..................................................................... 15

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)...................................................... 15

*VNB Realty Inc. v. Bank of Am. Corp.*, 2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013) ................ 7

**Statutes**

15 U.S.C. § 45.................................................................................................................................. 4

15 U.S.C. § 53.......................................................................................................................... *passim*

15 U.S.C. § 56................................................................................................................................ 18

Federal Rule of Civil Procedure 12 ..................................................................................... 1, 7, 17, 18

Plaintiff Federal Trade Commission ("FTC") respectfully moves pursuant to Federal Rule of Civil Procedure 12(f) to strike various affirmative defenses that Defendants IQVIA Holdings Inc. ("IQVIA") and Propel Media, Inc. ("Propel") (collectively, "Defendants") have asserted in their Answers. The affirmative defenses that are the subject of this Motion should be dismissed with prejudice for a variety of reasons. As described below, several raise constitutional challenges to the FTC's process and powers that are "immaterial" and "impertinent" to the narrow inquiry that this Court must undertake in evaluating an FTC claim for a preliminary injunction pursuant to Section 13(b); indeed, the only court that has ruled on this issue has concluded that these constitutional defenses are not part of the inquiry under Section 13(b) of the FTC Act. *See FTC v. Meta Platforms, Inc.*, No. 5:22-CV-04325-EJD, 2022 WL 16637996, at *7 (N.D. Cal. Nov. 2, 2022). Still others raise defenses of laches and estoppel that are not only improperly pled but cannot be raised against the Government in the circumstances of this case. The Court should strike these affirmative defenses so that discovery, briefing, and the preliminary injunction hearing are efficiently focused on the issues properly before this Court and relevant to deciding whether to issue the FTC's requested preliminary injunction.

## I.      BACKGROUND

The FTC brought this action to preserve the status quo while it adjudicates in its administrative court whether IQVIA's proposed acquisition of Propel Media (the "Proposed Acquisition") violates the antitrust laws. Compl. (Dkt. 1) at 2, ¶¶ 132-33. On July 22, 2022, IQVIA and Propel signed an Agreement and Plan of Merger, pursuant to which IQVIA agreed to acquire 100% of Propel, which owns DeepIntent, Inc., a leading demand-side platform that targets healthcare professionals for programmatic advertisements. *Id.* ¶¶ 1, 24-25. On July 18, 2023, the FTC filed its Complaint in this Court requesting, *inter alia*, a preliminary injunction pursuant to

Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), to restrain Defendants from completing the Proposed Acquisition until the FTC's administrative adjudication on the merits is completed. *Id.* at 2, ¶¶ 132-33.

On August 2, 2023, IQVIA and Propel filed their respective Answers and Defenses. The following affirmative defenses are relevant to this Motion:

IQVIA's Tenth Affirmative Defense: "The FTC's parallel administrative proceedings are invalid and unconstitutional because the structure of the FTC violates the U.S. Constitution (including Article II) and the separation of powers. The Commissioners are protected from at-will removal by the President, and instead may be removed only upon a finding of 'inefficiency, neglect of duty, or malfeasance in office.' The FTC exercises quintessentially executive powers, including by prosecuting actions in its own name in both administrative proceedings and federal courts. Because the FTC exercises executive powers, the Commissioners cannot constitutionally be shielded from for-cause removal by the President, as this limitation on the President's ability to oversee and control the exercise of Executive authority violates the U.S. Constitution and the separation of powers." IQVIA Answer and Defenses (Dkt. 58) at 18.

IQVIA's Eleventh Defense: "The FTC's parallel administrative proceedings are invalid and unconstitutional because the FTC is designed as a bipartisan independent agency, but the deliberations relating to the complaint and the vote thereon involved only three Democratic Commissioners, with no Republic [sic] Commissioners participating." IQVIA Answer and Defenses (Dkt. 58) at 18-19.

IQVIA's Twelfth Defense: "The absence of bipartisan deliberations also is an independent and supporting reason that the Commissioners' protection from for-cause removal is unconstitutional and in violation of the separation of powers." IQVIA Answer and Defenses (Dkt. 58) at 19.

2

IQVIA's Thirteenth Defense: "The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Due Process Clause because they deprive IQVIA of a fair opportunity to rebut the government's factual assertions before a neutral decisionmaker. The Commissioners act as both the prosecutors in that action—deliberating and voting on the filing of the complaint—and the ultimate administrative adjudicators. That combination of executive and adjudicative authority in a proceeding is unconstitutional and raises an intolerably high risk of an unfair proceeding. This violation is exacerbated by the FTC's amendment of its own adjudication rules on June 23, 2023 to provide that the ALJ's decision in proceedings such as these is nothing more than a 'recommendation' to the Commissioners." IQVIA Answer and Defenses (Dkt. 58) at 19.

IQVIA's Fourteenth Defense: "The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Equal Protection Clause because they expose persons and entities to differential treatment for arbitrary reasons. The FTC and the Department of Justice divide up challenges to proposed mergers based on nonpublic and, on information and belief, arbitrary internal operating rules. The decision of whether the FTC or the Department of Justice will prosecute a challenge to a proposed merger has significant implications for the procedural rights of the defendants. Those implications include, but are not limited to, the forum for adjudication of the merits, the identity of the ultimate factfinder, the substantive standard for liability, the applicable procedural rules, and the standard for appellate review. There is no rational basis for this differential treatment, and reducing IQVIA's procedural and substantive rights without a rational basis violates the Equal Protection Clause." IQVIA Answer and Defenses (Dkt. 58) at 19-20.

<u>IQVIA's Fifteenth Defense:</u> "The FTC's parallel administrative proceedings are invalid and unconstitutional because adjudication of the FTC's Complaint by the ALJ violates the U.S. Constitution (including Articles II and III) and the separation of powers. ALJs enjoy two levels of removal protection—they are removable by the Commissioners only 'for cause' by the Merit System Protection Board, whose members themselves may be removed 'only for inefficiency, neglect of duty, or malfeasance in office.' This dual layer of insulation from Executive oversight is unconstitutional." IQVIA Answer and Defenses (Dkt. 58) at 20.

<u>IQVIA's Seventeenth Defense/Propel's Sixteenth Defense:</u> "Any potential claims or assertions by the FTC that IQVIA's prior acquisitions of Lasso, DMD, or MDG substantially lessened competition in any relevant market are barred by the doctrines of estoppel and laches." IQVIA Answer and Defenses (Dkt. 58) at 20; Dkt. 72 at 29.

<u>IQVIA's Eighteenth Defense:</u> "The doctrine of equitable estoppel binds the FTC to the claims, assertions, and admissions made by the U.S. Government about the digital advertising industry in the lawsuit currently pending against Google in the Eastern District of Virginia under Section 1 and Section 2 of the Sherman Act that, among other things, alleges that Google is a monopolist in digital advertising and that Google has a significant market share as a DSP."[1] IQVIA Answer and Defenses (Dkt. 58) at 20.

<u>Propel's Seventeenth Defense:</u> "The doctrine of equitable estoppel binds the FTC to the claims, assertions, and admissions made by the U.S. Government about the digital advertising industry in the lawsuit currently pending against Google in the Eastern District of Virginia under Section 1 and Section 2 of the Sherman Act that, among other things, alleges that Google is a monopolist in

---

[1] Defendants have agreed to withdraw their affirmative defenses (IQVIA's Sixteenth Defense and Propel's Fifteenth Defense) regarding the scope of Section 5 of the FTC Act. Dkt. 134 at 3.

digital advertising and that Google has a dominant DSP." Propel Answer and Defenses (Dkt. 72) at 30.

Propel's Tenth Defense: "The FTC's structure is unconstitutional because the constraints on removal of the Commissioners violate Article II of the Constitution and the separation of powers. The current day FTC does not resemble the 'quasi-legislative' or 'quasi-judicial' agency. *See Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935). The FTC is acting as an executive agency, bringing enforcement actions for violations of the antitrust, consumer protection, and privacy laws. privacy laws. *See* Daniel A. Crane, *Debunking Humphrey's Executor*, 83 GEO. WASH. L. REV. 1835, 1859-68 (2015). Therefore, as the Commissioners exercise executive function, they should be able to be removed for cause. *See Myers v. United States*, 272 U.S. 52 (1926)." Propel Answer and Defenses (Dkt. 72) at 28.

Propel's Eleventh Defense: "These proceedings are invalid because the structure of the FTC is as a bi-partisan independent agency and deliberations relating to the complaint and the related vote involved only three Democratic Commissioners with no Republican Commissioners." Propel Answer and Defenses (Dkt. 72) at 28.

Propel's Twelfth Defense: "The FTC's structure is unconstitutional because the constraints on for cause removal of the Administrative Law Judge violate Article II of the Constitution and the separation of powers. *See Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044 (2018); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477 (2010)." Propel Answer and Defenses (Dkt. 72) at 28.

Propel's Thirteenth Defense: "The FTC violates Propel Media's right to Equal Protection under the Fifth Amendment due to the Department of Justice, Antitrust Division ("DOJ") and FTC's black box clearance process. The FTC and DOJ, without authorization from Congress, arbitrarily

decide which agency investigates certain mergers. As a result of that arbitrary clearance process, this Transaction was reviewed by the FTC and thus Propel Media is forced to litigate in the administrative proceeding that lacks the protections of an Article II court such as the ability to rely on evidence not admissible under the Federal Rules of Evidence, and where the same decision-makers initiate, prosecute and decide the merits of the case. Had the DOJ reviewed the Transaction, the DOJ could only bring a challenge of the Transaction in an Article III court on a final adjudication of the merits." Propel Answer and Defenses (Dkt. 72) at 28-29.

Propel's Fourteenth Defense: "The FTC violates Propel Media's due process rights under the Fifth Amendment by depriving Respondents of their right to adjudication before a neutral arbiter. The FTC has the power to investigate, prosecute, and adjudicate the same matter, which violates due process where 'the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable.' *Withrow v. Larkin*, 421 U.S. 35, 47, 58 (1975). This is the case here as the FTC Commissioners voted out the complaint, dictate prosecution strategy, and automatically adjudicate the matter after the ALJ has made his recommended decision. The FTC reportedly has not lost an administrative proceeding in 25 years, "reveal[ing] just how tilted this game is," *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 917 (2023) (Gorsuch, J., concurring)." Propel Answer and Defenses (Dkt. 72) at 29.

Pursuant to Rule 2(A)(ii) of this Court's Individual Practices, the FTC filed on August 22, 2023 a letter seeking a pre-motion conference with this Court, Dkt. 123, which was held on September 6, 2023. At that conference, the Court authorized the FTC to make its motion to strike. *See* 9/6/2023 Hr'g Tr. at 34.

## II.     ARGUMENT

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This Court should strike an affirmative defense if the plaintiff can show "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Signify N. Am. Co. v. Reggiani Lighting USA, Inc.*, No. 18-cv-11098 (ER), 2020 WL 1331919, at *4 (S.D.N.Y. Mar. 23, 2020) (Ramos, J.) (quoting *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). In *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 95-99 (2d Cir. 2019), the Second Circuit undertook an extensive analysis of the Rule 12(f) caselaw "to clarify the factors relevant to striking an affirmative defense," *id.* at 97, and held, with respect to the first factor, that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *Id.* at 98.[2] A defendant therefore "need[s] to support these defenses with some factual allegations to make them plausible.'" *Id*. at 99. As to the second factor, an affirmative defense "should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* at 98. "And with respect to prejudice, '[a]n increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike.'" *SEC. v. Rayat*, No. 21-cv-4777 (LJL), 2021 WL 4868590, at *2 (S.D.N.Y. Oct. 18. 2021) (quoting *McCaskey*, 56 F. Supp. 2d at 326).

---

[2] In their pre-motion letter, Defendants argue that the moving party must show "the pleading has 'no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" Dkt. No. 134 at 1-2 (quoting *VNB Realty Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)). The authority on which Defendants rely for this proposition predates the Second Circuit's decision in *GEOMC*; thus, to the extent that it conflicts and/or is inconsistent with the standard articulated in *GEOMC*, it is no longer good law.

Here, both Defendants' constitutional affirmative defenses[3] and their equitable affirmative defenses of laches and estoppel[4] are legally insufficient and should be stricken on that basis. The equitable affirmative defenses fail for the additional reason that they are inadequately pled. The FTC will be prejudiced if the Court does not strike these defenses because they will require the FTC to expend unnecessary time and resources defending against sideshow matters that have no bearing on the Section 13(b) inquiry. This is especially true in light of the expedited nature of these proceedings and the far-reaching implications of Defendants' allegations—which attack the constitutionality not just of the FTC, but also of other federal agencies that use administrative proceedings to protect and serve the American public.

## A.    Defendants' Constitutional Affirmative Defenses Are Legally Insufficient.

Defendants assert multiple affirmative defenses raising constitutional challenges to the FTC's process and powers. *See* IQVIA Answer and Defenses (Dkt. 58) at 18-20 (Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Defenses); Propel Answer and Defenses (Dkt. 72) at 28-29 (Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Defenses). These "defenses" are irrelevant to this Court's determination of the FTC's request for preliminary injunctive relief under Section 13(b) of the Federal Trade Commission Act—the only claim asserted by any party in this litigation—and thus constitute "a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC*, 918 F.3d at 98.[5]

---

[3] IQVIA's Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Defenses, and Propel's Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Defenses.

[4] IQVIA's Seventeenth and Eighteenth Defenses and Propel's Sixteenth and Seventeenth Defenses.

[5] Defendants concede that their constitutional affirmative defenses attacking the FTC's process and powers raise pure questions of law. 9/6/2023 Hr'g Tr. at 31 ("it's not evidentiary defense, it's a legal defense that the agency that is proceeding is unlawful"); *see also id.* at 26 ("that's not a

Section 13(b) "authorizes the Commission to obtain a preliminary injunction "'upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest.'" *FTC v. Crescent Publ'g Group, Inc.*, 129 F. Supp. 2d 311, 319 (S.D.N.Y. 2001) (quoting 15 U.S.C. ¶ 53(b)). As courts have recognized, "the scope of the Section 13(b) inquiry is necessarily limited and narrow." *Meta Platforms*, 2022 WL 16637996, at *5 (citing *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1091 (S.D.N.Y. 1977)). Under Section 13(b), the issue is not "whether respondents have violated, or are about to violate, the antitrust laws, for adjudication of those issues is vested in the FTC in the first instance. Rather, the question for [this Court] is whether the FTC has shown prima facie that the public interest requires that a preliminary injunction issue to preserve the status quo until the FTC can perform its adjudicatory function." *Lancaster Colony Corp.*, 434 F. Supp. at 1090 (internal citations omitted).

Courts engage in a two-prong analysis to determine whether to issue a preliminary injunction under Section 13(b). At the first step, the district court must determine whether the FTC has "a fair and tenable chance of ultimate success on the merits." *Crescent Publ'g Group*, 129 F. Supp. at 319; *Lancaster Colony Corp.*, 434 F. Supp. at 1091 ("[A] preliminary injunction should issue if the FTC has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals."). This inquiry focuses on the antitrust merits of the case and the likelihood of success in the underlying administrative proceedings. *See Meta Platforms*, 2022 WL 16637996, at *5-6 (collecting cases);

---

factual question; it is a legal question"). There thus "is no question of fact which might allow the defense[s] to succeed." *Signify N. Am.*, 2020 WL 1331919, at *4.

*see also Lancaster Colony Corp.*, 434 F. Supp. at 1097 ("We find that the FTC has shown that there is a likelihood that the acquisition of Federal by Lancaster will ultimately be held unlawful *under the antitrust laws . . . .*" (emphasis added)). At the second step, the district court must "consider the equities." *Crescent Publ'g Group*, 129 F. Supp. 2d at 319. "The equities to be weighed here are not the usual equities of private litigation but public equities." *Lancaster Colony Corp.*, 434 F. Supp. at 1096. Indeed, private equities carry "little weight" so as not to "undermine section 13(b)'s purpose of protecting the 'public-at-large, rather than individual private competitors.'" *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1225 (11th Cir. 1991) (quoting *FTC v. Nat'l Tea Co.*, 603 F.2d 694, 697 n.4 (8th Cir. 1979)).

Here, Defendants' constitutional affirmative defenses are relevant to neither prong of the Section 13(b) analysis, and thus provide "a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC*, 918 F.3d at 98. Indeed, the only court to reach a decision on this same issue struck as impertinent and irrelevant constitutional affirmative defenses asserted against the FTC regarding the agency's process and powers. *Meta Platforms*, 2022 WL 16637996, at *7.[6] In that case, as here, the FTC filed suit to preliminarily enjoin an acquisition pursuant to Section 13(b). *Id.* at *1. And there, the defendants pled various affirmative defenses, including alleged bias that violated, among other things, the Due Process Clause, and (like Defendants here)

---

[6] Defendants have asserted that these "defenses" "are being litigated in another merger challenge," citing *FTC v. Amgen Inc.*, No. 23-CV-3053 (N.D. Ill.). Dkt. 134 at 2. Not so. In *Amgen*, Defendants had asserted *counterclaims*, which were being defended by the Department of Justice on behalf of the FTC pursuant to 15 U.S.C. § 56(a) and were not scheduled to be taken up by the court until *after* resolution of the FTC's Section 13(b) claim. Ex. B (*FTC v. Amgen, Inc.*, No. 23-CV-3053 (N.D. Ill.), Dkt. 123 (Statement Concerning Agreed Briefing Schedule for Motions With Respect to Defendants' Counterclaims) at 1-2); Ex. C (Docket in *FTC v. Amgen, Inc.*, No. 23-CV-3053 (N.D. Ill.) at 1, 17 (appearances by Department of Justice)). The FTC had filed a motion to strike the constitutional affirmative defenses, which was pending when the case was settled. Ex. C (Docket in *FTC v. Amgen, Inc.*, No. 23-CV-3053 (N.D. Ill.) at 17).

other constitutional defenses arising out of the Due Process Clause and Article II. *See id.* at *7;

Ex. A (*FTC v. Meta Platforms, Inc.*, No. 5:22-CV-04325-EJD (N.D. Cal.), Dkt. 84 (Defendant

Meta Platforms, Inc's Answer and Affirmative Defenses) at 17 ("Chair Khan's participation

irrevocably taints the FTC's claim, including because its initiation and maintenance violates the

Due Process Clause, U.S. Const. amend. V . . . .")). The court struck all of the challenged

affirmative defenses, and its reasoning applies here.[7]

Following an extensive survey of the case law applying Section 13(b)—including case law

from this district—the court in *Meta Platforms* concluded that "ultimate success" under the first

prong of the Section 13(b) analysis referred to "the likelihood of the FTC's success on the merits

in the underlying administrative proceedings, as opposed to success following a Commission

hearing, the development of an administrative record, and appeal before an unspecified Court of

Appeals." 2022 WL 16647996, at *6.[8] And in light of the limited nature of the district court's

inquiry under Section 13(b), "the merits" meant "the action's Section 7 antitrust merits, as

distinguishable from any procedural due process issues arising from the FTC's proceedings." *Id.*

---

[7] The *Meta Platforms* court first analyzed the impertinence of the defendants' bias defenses, which relied on, in part, the Due Process Clause, *see* 2022 WL 16647996, at *4–7, struck them, and then turned to the other constitutional defenses. While it is true that the court ultimately struck these other constitutional defenses as insufficiently pled, the court did so only after explaining that "assessment of the[] constitutional affirmative defenses overlaps significantly with its analysis of Defendants' bias-related defenses, particularly regarding the Court's ability to consider these arguments in the limited procedural posture of a Section 13(b) preliminary injunction request." *Id.* at *7. The court was clear that its reasoning applied also to constitutional defenses. *See id.* ("to the extent Defendants' constitutional defenses are predicated on Chair Khan's alleged bias or procedural deficiencies, these defenses would likewise be stricken without leave to amend"). The Court, however, granted leave to amend these other constitutional defenses because they were so inadequately pled "even under the most liberal pleading standards" such that the Court was unable to decipher what exactly they alleged. *Id.* (quoting *MIC Prop v. Kennolyn Camps, Inc.*, No. 5:15-cv-00589, 2015 WL 4264119, at *5 (N.D. Cal. Aug. 3, 2015)).

[8] This was true "[d]espite the brief reference to the Court of Appeals" at the close of the "serious questions" formulation of the Section 13(b) standard, which originated from the opinion in *Lancaster Colony Corp. Meta Platforms*, 2022 WL 16637996, at *5.

("Put differently, 'thorough investigation, study, deliberation and determination by the FTC' would be an odd description for issues that can only arise out of the FTC's own proceedings, such as those relating to the FTC's authority, bias, or due process violations."). Any such procedural due process issues were thus "not pertinent to [the district court's] assessment of the FTC's success on the merits." *Id.* They were equally irrelevant to weighing the equities under the second prong in the Section 13(b) analysis, which considers "a narrower set of equities" that "are not typically those arising out of the FTC's administrative proceedings themselves, but rather the private consequences resulting from the requested injunction." *Id.* The same is true of the constitutional affirmative defenses in this case, which, likewise, challenge the FTC's process and powers.

The Supreme Court's recent decision in *Axon Enterprise, Inc. v. Federal Trade Commission*, 143 S. Ct. 890 (2023), does not alter the analysis. The court in *Meta Platforms* stated as much: "*Axon* does not bear upon subject matter jurisdiction in the present case." *Meta Platforms*, 2022 WL 16637996, at *3. In *Axon*, the Supreme Court held that certain types of "existential" constitutional challenges may be heard by district courts, in some circumstances, before the conclusion of a corresponding administrative proceeding. *Axon Enterprise, Inc.*, 143 S. Ct. at 897-900. Unlike the situation in *Meta Platforms* (or here), the Commission in *Axon* had initiated proceedings in its administrative court but had not sought a preliminary injunction in federal court. *Id.* at 899. Therefore, no ongoing federal proceeding existed when Axon filed a separate, standalone lawsuit claiming that certain aspects of the Commission's adjudicative process were unconstitutional. *Id.* The *Meta Platforms* court expressly noted this distinction when it *rejected* the FTC's argument that the Ninth Circuit's opinion in *Axon* precluded the court from hearing Meta's constitutional affirmative defenses: "unlike *Axon* where the precluded issues were raised offensively by a plaintiff to block underlying administrative proceedings, here, the purportedly

precluded issues are raised defensively *in response* to a complaint filed by the FTC." *Meta Platforms Inc.*, 2022 WL 16637996, at *3 (emphasis in original) (internal citations omitted). As in *Meta Platforms*, Defendants here have not brought counterclaims or a separate action that would implicate the holding in *Axon.* Put simply, *Axon* was, and remains, irrelevant to the issue of whether constitutional challenges are proper *defenses* in a Section 13(b) proceeding.

*Meta Platforms*' reasoning applies here, and the constitutional defenses here should be stricken as they were in that case. This is the same type of case: an FTC action for preliminary injunctive relief pursuant to Section 13(b) of the Federal Trade Commission Act. The precedent regarding the limited scope of a Section 13(b) proceeding applies. *See Crescent Publ'g Group*, 129 F. Supp. 2d at 319; *Lancaster Colony Corp.*, 434 F. Supp. at 1091. The Section 13(b) inquiry is strictly focused on the antitrust merits, and alleged procedural issues (even of a constitutional dimension) are outside the scope of issues necessary to decide whether to grant a preliminary injunction. Accordingly, Defendants' constitutional affirmatives defenses provide "a legally insufficient basis for precluding a plaintiff from prevailing on its claims," *GEOMC*, 918 F.3d at 98, and should be stricken on that basis.

**B.     Defendants' Equitable Affirmative Defenses Lack Any Legal or Factual Basis.**

Defendants assert the equitable defenses of laches and estoppel.  *See* IQVIA Answer and Defenses (Dkt. 58) at 20 (Seventeenth and Eighteenth Defenses); Propel Answer and Defenses (Dkt. 72) at 29-30 (Sixteenth and Seventeenth Defenses). As explained below, these defenses lack the requisite legal and factual bases and should be stricken.

1. **Laches Is Unavailable Because the FTC Has Brought This Action to Protect the Public Interest, and, in Any Event, Defendants' Allegations Are Insufficient.**

A laches defense requires a defendant to show that "(1) Plaintiff knew of the conduct of which it complains, (2) Plaintiff inexcusably delayed in taking action against such conduct, and (3) Defendant would be prejudiced by the delay." *Hicks v. Leslie Feely Fine Art, LLC*, 1:20-cv-1991(ER), 2021 WL 982298, at *10 (S.D.N.Y. Mar. 16, 2021) (Ramos, J.). The Second Circuit has held, however, that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002).[9] This principle is equally applicable when the FTC seeks preliminary injunctive relief under Section 13(b) of the Federal Trade Commission Act. *FTC v. Quincy Bioscience Holding, Co.*, 17 Civ. 124 (LLS), 2020 WL 1031271, at *2 (S.D.N.Y. Mar. 2, 2020) (collecting cases striking laches defenses in Section 13(b) proceedings); *see also* 15 U.S.C. § 53(b) (permitting the Commission to bring suit in federal court when it has reason to believe injunctive relief pending adjudication by the FTC "would be in the interest of the public").

Here, because the FTC "undertakes to enforce a public right or protect the public interest," Defendants' affirmative defenses based on the doctrine of laches fail as a matter of law. *See Angell*, 292 F.3d at 338. Yet even if the doctrine of laches was available, Defendants fail to plausibly allege facts that might allow the defense to succeed. *See GEOMC*, 918 F.3d at 98-99. Defendants do not allege that the FTC unreasonably delayed in bringing any "claims or assertions" that "IQVIA's prior acquisitions of Lasso, DMD, or MDG substantially lessened competition," or that

---

[9] Although the Second Circuit has recognized that there is no *per se* rule barring a laches defense against governmental entities, the defense is available only when the case "does not involve the enforcement of a public right or the protection of the public interest." *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 279 n.8 (2d Cir. 2005).

Defendants were prejudiced as a result. *See* IQVIA Answer and Defenses (Dkt. 58) at 20 (Seventeenth Defense); Propel Answer and Defenses (Dkt. 72) at 29 (Sixteenth Defense). Nor could they. It is black-letter law that the FTC "may proceed *at any time* that an acquisition may be said with reasonable probability to contain a threat that it may lead to a restraint of commerce or tend to create a monopoly of a line of commerce." *United States v. E.I. du Pont*, 353 U.S. 586, 597 (1957) (emphasis added) (holding that the United States could seek divestiture of stock that du Pont had first acquired thirty years prior); *accord United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 241-42 (1975) (under the antitrust laws, an "acquisition" "is not a discrete transaction, but a status which continues until the transaction is undone"). Moreover, there can be no serious dispute that prior acquisitions are highly relevant in analyzing the anticompetitive effects of a transaction. *See, e.g.*, *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 302, 332-33 (1962) (prior acquisitions illustrated trends toward consolidation and vertical integration, and "account must be taken of these facts in order to predict the probable future consequences of this merger"); *see also Brown Shoe*, 370 U.S. at 334 ("the shoe industry is being subjected to just such a cumulative series of vertical mergers which, if left unchecked, will be likely 'substantially to lessen competition'").

## 2. The Defense of Estoppel Is Available Only in the Most Serious of Circumstances— Which Defendants Cannot, and Do Not, Allege Exist Here.

"To succeed on a defense of equitable estoppel asserted against a private plaintiff, a defendant must prove (1) that the plaintiff made a material misrepresentation, (2) upon which the defendant relied, (3) to his detriment." *McCaskey*, 56 F. Supp. 2d at 236. It is a "well settled" principle, however, "that the Government may not be estopped on the same terms as any other litigant," because "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule

of law is undermined." *Heckler v. Cmty Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). As such, the Second Circuit has concluded that the defense of estoppel against the government is available only "in the most serious of circumstances," such that it "will be applied only upon a showing of 'affirmative misconduct.'" *Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) (quoting *Drozd v. INS*, 155 F.3d 81, 90 (2d Cir.1998)). This is true whether the government conduct was authorized or not. *See Rojas-Reyes*, 235 F.3d at 126 (no showing of "the required affirmative misconduct *on the part of the Attorney General*" in not yet promulgating repapering regulations, which the Attorney General was expressly authorized by statute to do (emphasis added)).[10]

Defendants here do not even attempt to plead the requisite elements for estoppel against a private party—much less the additional requirement of "affirmative misconduct" against the government. With respect to their defense that the FTC is bound by claims made by the Department of Justice in a pending lawsuit against Google, *see* IQVIA Answer and Defenses (Dkt. 58) at 20 (Eighteenth Defense); Propel Answer and Defenses (Dkt. 72) at 30 (Seventeenth Defense), Defendants do not plead any material misrepresentation, reliance, or detriment. *See McCaskey*, 56 F. Supp. 2d at 236. Their allegations of estoppel concerning IQVIA's prior acquisitions, *see* IQVIA Answer and Defenses (Dkt. 58) at 20 (Seventeenth Defense); Propel Answer and Defenses (Dkt. 72) at 29 (Sixteenth Defense), are even more deficient, failing to even plead a representation by

---

[10] Notably, the Supreme Court has expressly "le[ft] for another day whether an estoppel claim could *ever* succeed against the Government," *Office of Personal Mgmt. v. Richmond*, 496 U.S. 414, 423 (1990) (emphasis added), although it has "continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the Government." *Id.* at 422-23 (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973) (per curiam); *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (per curiam)). Even in those instances, though, as Defendants concede, the Court entertained the idea of an estoppel defense only in context of *unauthorized* acts. Defendants' Letter Response (Dkt. 134) at 3.

the Government at all. In both cases, Defendants do not, and cannot as a matter of law, plead any affirmative misconduct by the FTC. "Inconsistency is not sufficient." *See Mulligan v. Lipnic*, 734 F. App'x 397, 399 (9th Cir. 2018) ("Even assuming the EEOC's positions in its 2005 manual and 2002 guidance materially differ from its position in this case, the government would be barred by estoppel only if there were affirmative misconduct. . . . Inconsistency is not sufficient, and therefore the EEOC is not estopped.").

* * *

Defendants' affirmative defenses of laches and estoppel should be stricken because they are "legally insufficient bas[es] for precluding plaintiff from prevailing on its claim," *GEOMC*, 918 F.3d at 98, and because they lack any "factual allegations to make them plausible." *Id.* at 99.

### C.   The FTC Will Suffer Prejudice If This Court Does Not Strike Defendants' Constitutional and Equitable Affirmative Defenses.

The FTC will face significant prejudice from proceeding with an evaluation of Defendants' constitutional and equitable defenses as part of the Section 13(b) inquiry, for which this Court has set an evidentiary hearing just two months from now.[11]

This is particularly true with respect to Defendants' constitutional affirmative defenses. These defenses would seek to render the FTC's administrative processes unconstitutional and thwart not only the agency's ability to both enforce the antitrust laws, but also the agency's actions to protect vulnerable consumers from scammers, false advertising, and data breaches as part of the agency's consumer protection efforts. These defenses could also affect other federal agencies that

---

[11] Rule 12(f) of the Federal Rules requires a party to file a motion to strike either before responding to the pleading in question "or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). But even if the Rules did not have this requirement, this Motion would be ripe because of the prejudice that the FTC will suffer if these issues are not decided until later in these proceedings.

rely on administrative proceedings to protect and serve the public. For this reason, any constitutional challenges against the agency must be evaluated as part of a separate action or counterclaims, and only following robust, focused briefing and argument and possible participation by the Department of Justice—as Federal Trade Commission Act and the Federal Rules contemplate. *See* 15 U.S.C. § 56(a) (requiring the FTC, before defending a civil action, to provide "written notification and undertake[] to consult" with the Department of Justice, which has "45 days after receipt of such notification to commence, defend, or intervene in, such action"); Fed. R. Civ. P. 12(a)(2) (providing the United States with 60 days following service on the United States attorney to answer claims against a United States agency).  Defendants should not be able to circumvent these requirements by shoehorning their far-reaching constitutional arguments into impermissible affirmative defenses, especially given the accelerated schedule in these proceedings and the sweeping potential implication of their arguments.[12]

Inclusion of Defendants' equitable affirmative defenses of laches and estoppel would also prejudice the FTC, "as they would threaten to shift litigation attention and discovery towards the FTC's actions, rather than Defendants' actions." *See Meta Platforms*, 2022 WL 16637996, at *7 (internal quotation marks omitted); *accord Rayat*, 2021 WL 4868590, at *4 ("Even if the affirmative defenses ultimately could be eliminated on a motion for summary judgment, permitting them to remain in the case would needlessly lengthen and complicate the pretrial process."); *Quincy Bioscience Holding Co.*, 2020 WL 1031271, at *2 (concluding that FTC "would be

---

[12] Without a hint of irony, Defendants have argued that "the defense asserted here is a less intrusive means of invoking the federal court's oversight of federal agencies that the independent action that we could otherwise file under the Supreme Court's decision in *Axon*."  9/6/2023 Hr'g Tr. at 25. That is *exactly* why inclusion of the impermissible constitutional defenses will prejudice the FTC—and other government agencies; "less intrusive means" remove the protections afforded by Congress by statute and the Federal Rules when private litigants assert "serious challenges to the structure of [an] agency." *Id.* at 24.

prejudiced by having to spend time and resources on litigating an invalid defense"). If these defenses remain in the case, the FTC will be forced to devote precious time and resources at the hearing and in briefing to respond to arguments regarding the Department of Justice's "claims, assertions, and admissions" in a wholly unrelated case in the Eastern District of Virginia. *See* IQVIA Answer and Defenses (Dkt. 58) at 20 (Eighteenth Defense); Propel Answer and Defenses (Dkt. 72) at 30 (Seventeenth Defense). It will also have to defend itself against arguments that intrude into any potential internal deliberations and privileged work product concerning IQVIA's prior acquisitions. *See* IQVIA Answer and Defenses (Dkt. 58) at 20 (Seventeenth Defense); Propel Answer and Defenses (Dkt. 72) at 29 (Sixteenth Defense). In both scenarios, the FTC will suffer prejudice.

## III.   CONCLUSION

For the foregoing reasons, Defendants' constitutional and equitable affirmative defenses should be stricken with prejudice.

Dated: September 20, 2023              Respectfully submitted,


                                      /s/ *Jennifer Fleury*

                                      Jennifer Fleury
                                      Stephen Mohr
                                      Jordan Andrew
                                      Varnitha Siva
                                      Federal Trade Commission
                                      600 Pennsylvania Avenue NW
                                      Washington, DC 20580
                                      jfleury@ftc.gov
                                      smohr@ftc.gov
                                      jandrew@ftc.gov
                                      vsivaprasad@ftc.gov

                                      *Counsel for Plaintiff Federal Trade Commission*