**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,

                Plaintiff,

         v.

IQVIA HOLDINGS INC.,

and

PROPEL MEDIA, INC.

                Defendants.

Case No. 1:23-cv-06188-ER

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE FTC'S MOTION TO STRIKE**
**CERTAIN AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT .........................................................................................................................4

I.     THE AFFIRMATIVE DEFENSES ARE RELEVANT AND ADEQUATELY
PLEADED ...................................................................................................................5

      A.    The Constitutional Defenses Are Material to the Section 13(b) Analysis...............5

            1.    The Constitutional Defenses Are Material to the FTC's Likelihood
of Ultimate Success........................................................................................5

            2.    The Constitutional Defenses Are Material to the Equities .......................14

      B.    Defendants' Equitable Defenses Are Not Legally Foreclosed .............................16

            1.    Laches Can Be a Cognizable Defense Against the Government...............18

            2.    Equitable Estoppel Is Not Categorically Foreclosed Here .......................20

            3.    The Facts Giving Rise to These Defenses Are Relevant to the
Equities ........................................................................................................22

II.    THE FTC HAS NOT IDENTIFIED ANY PREJUDICE FROM MAINTENANCE
OF THE AFFIRMATIVE DEFENSES ...................................................................23

III.   THE COURT NEED NOT RESOLVE THE MOTION AT THIS STAGE ....................25

CONCLUSION....................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMG Capital Mgmt., LLC v. FTC,*
  141 S. Ct. 1341 (2021) ................................................................................ *passim*

*Austin v. Cuomo,*
  2020 WL 7352664 (W.D.N.Y. Dec. 15, 2020) ...................................................10

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ...............................................................................11, 14, 24

*Blash v. BCS Placements, LLC,*
  2020 WL 2832777 (S.D.N.Y. May 31, 2020) ...................................................11

*Brach v. Newsom,*
  2020 WL 6036764 (C.D. Cal. Aug. 21, 2020) ...................................................10

*Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.,*
  205 F.R.D. 148 (S.D.N.Y. 2002) ................................................................4, 19

*Corniel-Rodriguez v. INS,*
  532 F.2d 301 (2d Cir. 1976) ..............................................................................21

*Deide v. Day,*
  2023 WL 3842694 (S.D.N.Y. June 6, 2023) .....................................................15

*Duncan v. Walker,*
  533 U.S. 167 (2001) ............................................................................................9

*eBay Inc. v. MercExchange, LLC,*
  547 U.S. 388 (2006) ......................................................................................8, 11

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ..........................................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ........................................................................................6, 8

*FTC v. Freeman Hosp.,*
  69 F.3d 260 (8th Cir. 1995) .................................................................................9

*FTC v. Lancaster Colony Corp.,*
  434 F. Supp. 1088 (S.D.N.Y. 1977) ..............................................................8, 11

*FTC v. Meta Platforms Inc.*,
    2022 WL 16637996 (N.D. Cal. Nov. 2, 2022) ...............................................12, 13

*FTC v. Nat'l Tea Co.*,
    603 F.2d 694 (8th Cir. 1979) .......................................................................14, 22

*FTC v. Staples, Inc.*,
    970 F. Supp. 1066 (D.D.C. 1997) .........................................................................9

*FTC v. Warner Commc'ns*,
    742 F.2d 1156 (9th Cir. 1984) .....................................................................13, 16

*FTC v. Weyerhaeuser Co.*,
    665 F.2d 1072 (D.C. Cir. 1981) ....................................................................14, 22

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
    23 F.3d 1071 (6th Cir. 1994) ..............................................................................15

*GEOMC Co. v. Calmare Thereapeutics Inc.*,
    918 F.3d 92 (2d Cir. 2019) .............................................................................4, 19

*Gonzalez v. Alliance Bancorp*,
    2010 WL 1575963 (N.D. Cal. Apr. 19, 2010) .....................................................10

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013) ............................................................................15

*Hamilton Watch Co. v. Benrus Watch Co.*,
    206 F.2d 738 (2d Cir. 1953) ...............................................................................14

*Hicks v. Leslie Feely Fine Art, LLC*,
    2021 WL 982298 (S.D.N.Y. Mar. 16, 2021) .......................................................20

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) .............................................................................................6

*Illumina, Inc. v. FTC*,
    No. 23-60167 (5th Cir. Aug. 4, 2023) ............................................................7, 24

*In re IQVIA Holdings Inc.*,
    No. 9416 (F.T.C.) .................................................................................................3

*Joffe v. King & Spalding LLP*,
    2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019) .....................................................24

*Johnson v. United States*,
    559 U.S. 133 (2010) .............................................................................................5

*King v. Burwell,*
    576 U.S. 473 (2015)...........................................................................................5

*Lamie v. U.S. Tr.,*
    540 U.S. 526 (2004)...........................................................................................9

*Lee v. E\*Trade Fin. Corp.,*
    2013 WL 4016220 (S.D.N.Y. Aug. 6, 2013) ..........................................................4

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018)................................................................................7, 10

*Mangrove Partners Master Fund, LP v. 683 Capital Partners, LP,*
    2020 WL 7335313 (S.D.N.Y. Dec. 14, 2020) .....................................................23

*Manning v. Boston Med. Ctr. Corp.,*
    725 F.3d 34 (1st Cir. 2013)..................................................................................4

*Montana v. Kennedy,*
    366 U.S. 308 (1961).........................................................................................21

*Muscarello v. United States,*
    524 U.S. 125 (1998)...........................................................................................5

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.,*
    354 F.3d 249 (4th Cir. 2003) .............................................................................15

*Niz-Chavez v. Garland,*
    141 S. Ct. 1474 (2021).....................................................................................21

*Rockett v. White,*
    2021 WL 2328417 (E.D. Cal. June 8, 2021) .......................................................10

*Ryder v. United States,*
    515 U.S. 177 (1995)...........................................................................................7

*Schweiker v. Hansen,*
    450 U.S. 785 (1981).........................................................................................21

*SEC v. Toomey,*
    866 F. Supp. 719 (S.D.N.Y. 1992) ......................................................................4

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020).......................................................................................6

*Shea v. Unum Provident,*
    2010 WL 11598016 (C.D. Cal. Apr. 21, 2010) ...............................................10, 11

*Smith v. Groose,*
    205 F.3d 1045 (8th Cir. 2000) ................................................................22

*Spolar v. Discovery Commc'ns, LLC,*
    2020 WL 7222807 (C.D. Cal. Oct. 2, 2020) ..........................................11

*Thompson v. Calderon,*
    120 F.3d 1045 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998)......................22

*Unicorn Global, Inc. v. DGL Grp., Ltd.,*
    2022 WL 3132863 (E.D.N.Y. Aug. 4, 2022) .........................................25

*United States v. Admin. Enters., Inc.,*
    46 F.3d 670 (7th Cir. 1995) ...................................................................19

*United States v. Angell,*
    292 F.3d 333 (2d Cir. 2002)...........................................................18, 19

*United States v. Arrow Transp. Co.,*
    658 F.2d 392 (5th Cir. Unit B Oct. 1981) ............................................18

*United States v. California,*
    332 U.S. 19 (1947)........................................................................18, 19

*United States v. Google, Inc.,*
    No. 23-CV-108 (E.D. Va. Jan. 24, 2023), ECF No. 1 ....................17, 21

*United States v. Jimenez,*
    789 F.2d 167 (2d Cir. 1986).................................................................23

*United States v. Summerlin,*
    310 U.S. 414 (1940)..............................................................................18

*Vlado v. CMFG Life Ins. Co.,*
    2023 WL 5591368 (S.D.N.Y. Aug. 29, 2023) ...................................4, 23

*VNB Realty, Inc. v. Bank of Am. Corp.,*
    2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013).........................................4

*Williams v. Pennsylvania,*
    579 U.S. 1 (2016)....................................................................................6

*Williamson v. Maciol,*
    839 F. App'x 633 (2d Cir. 2021) .........................................................10

**Statutes**

5 U.S.C. § 557(b) ..............................................................................................7

v

5 U.S.C. § 1202(d) ...................................................................................................8

5 U.S.C. § 7521(a) ...................................................................................................8

15 U.S.C. § 18 ..........................................................................................................8

15 U.S.C. § 41 ..........................................................................................................6

15 U.S.C. § 45(c) ......................................................................................................7

15 U.S.C. § 53(b) .............................................................................................. *passim*

15 U.S.C. § 53(b)(2) .................................................................................................5

28 U.S.C. § 1254(a) ..................................................................................................7

FTC Act Section 13(b) ....................................................................................... *passim*

Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973) ...........................................6

Pub. L. No. 93-637, §§ 205–06, 88 Stat. 2183, 2200–02 (1975) ............................6

## Other Authorities

16 C.F.R. § 3.51 ...................................................................................................6, 7

Daniel A. Crane, *Debunking Humphrey's Executor*, 83 Geo. Wash. L. Rev. 1835
(2015) ..................................................................................................................6

David Balto, *Can the FTC Be a Fair Umpire?*, The Hill (Aug. 14, 2013),
https://perma.cc/E9ZN-U7UM ........................................................................11

*Ultimate*, Webster's Third New International Dictionary (1986) ..................................5

## INTRODUCTION

Section 13(b) of the FTC Act allows a court to issue a preliminary injunction in favor of the FTC only after "weighing the equities" and considering the FTC's "likelihood of ultimate success." 15 U.S.C. § 53(b). The statute means exactly what it says: The Court must consider whether the FTC is likely to ultimately succeed on its underlying claim that the merger would be anticompetitive, and must weigh the equities of enjoining the merger pending the administrative proceedings. Defendants' constitutional defenses—which challenge the constitutionality of the FTC itself as well as of the administrative proceedings in connection with which the FTC initiated this action—plainly implicate both of those considerations. If the agency or its administrative tribunal is unconstitutional, then it has no prospect of "ultimate success" and the equities weigh heavily against affording it injunctive relief.

There is no getting around the plain meaning of Section 13(b), and so the FTC does not even try to square its challenge to the constitutional defenses with the statute. Instead, it relies entirely on a single, out-of-circuit district court opinion that does not address the statutory text and misconstrues existing authority. Rather than defend the *reasoning* in that decision, the FTC asserts as *ipse dixit* that because another court struck drastically different defenses for different reasons, this Court must strike certain defenses asserted in this case. That is incorrect. As the Supreme Court recently had occasion to remind the FTC, Section 13(b) must be enforced according to its terms, and the FTC's motion cannot be reconciled with the text and structure of the statute.

The FTC also takes aim at two equitable defenses (laches and equitable estoppel) asserted by Defendants. Contrary to the FTC's sweeping generalization, there is no categorical bar precluding the assertion of such defenses against the federal government. Rather, the application of these equitable doctrines depends on the circumstances of each case. Defendants are concerned the FTC will use this action to collaterally attack long-closed transactions (laches) and that the

FTC will take positions in this case that are inconsistent with those advanced by the Department of Justice in separate litigation (estoppel).  Notably, the FTC does not deny that it may take either of these positions.  Yet the Court's statutory obligation to "weigh the equities" surely allows it to consider, in deciding whether to enter equitable relief, whether the FTC itself is acting inequitably.

The FTC's inability to show prejudice—an essential element of a motion to strike— provides an additional basis for denying the motion.  The FTC asserts it would be prejudiced by the maintenance of the constitutional defenses, because those defenses "would seek to render the FTC's administrative processes unconstitutional" and inhibit its ability to enforce the law.  Dkt. 147, at 17.  The FTC completely misses the point:  Those are the consequences if Defendants *are right* about the FTC's unconstitutionality, and if Defendants are right, the FTC *should not* be exercising its claimed authority, at least not as to Defendants.  An affirmative defense cannot be prejudicial simply because it might succeed.  Outside of that misguided contention, the FTC does not identify any real—as opposed to conjectural—prejudice from the maintenance of the affirmative defenses, other than the ordinary burdens every litigant faces in having to respond to the opposing party's arguments.

The FTC's motion does nothing to simplify or streamline these proceedings.  It is an unnecessary distraction in the midst of fast-paced discovery, and it is without any substantial legal basis.  Moreover, even if the Court has questions regarding the relevancy or adequacy of these defenses, there is no urgency to resolving the motion:  There is no pending discovery on these topics, and Defendants do not have any present intent to introduce evidence on them at the hearing, since they are purely legal questions.  Any questions the Court has about these defenses thus can be reserved until it becomes clear whether the Court will need to reach them at all in light of its resolution of the FTC's forthcoming motion for a preliminary injunction.

## BACKGROUND

On July 17, 2023, the FTC Commissioners initiated an administrative proceeding against Defendants in the FTC's own administrative tribunal to enjoin the proposed merger.  *See In re IQVIA Holdings Inc.*, No. 9416 (F.T.C.).  On the same day, the FTC filed this Complaint seeking a preliminary injunction against the proposed merger.  Dkt. 1.  The FTC immediately filed an application for a temporary restraining order ("TRO") pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)(2), which provides in relevant part:

> Whenever the Commission has reason to believe . . . that the enjoining [of conduct or a transaction] pending the issuance of a complaint by the Commission and *until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final*, would be in the interest of the public . . . the Commission . . . may bring suit in a district court of the United States to enjoin any such act or practice.  Upon a proper showing that, *weighing the equities and considering the Commission's likelihood of ultimate success*, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond[.]

(emphases added).  The parties agreed to entry of a TRO lasting until November 22, 2023, Dkt. 44, which was later extended to December 29, 2023, Dkt. 154.

Defendants filed their respective answers on August 2, 2023.  Dkts. 56, 58, 70, 72.  Both Defendants asserted a number of affirmative defenses, including, as relevant here, that the FTC is unconstitutionally structured and that the underlying administrative proceedings are being conducted in an unconstitutional manner, *see* Dkt. 58, Aff. Defs. ¶¶ 10–15, Dkt. 72, Aff. Defs. ¶¶ 10–14, laches, Dkt. 58, Aff. Defs. ¶ 17; Dkt. 72, Aff. Defs. ¶ 16, and equitable estoppel, Dkt. 58, Aff. Defs. ¶¶ 17–18; Dkt. 72, Aff. Defs. ¶¶ 16–17.  After Defendants filed their answers, the parties negotiated a schedule for the case.  *See* Dkt. 104.

After seeking and obtaining leave from the Court, the FTC filed this motion seeking to strike from Defendants' answers the affirmative defenses outlined above.  *See* Dkt. 147.

3

**ARGUMENT**

Motions to strike under Rule 12(f) are "highly disfavored." *Lee v. E*Trade Fin. Corp.*, 2013 WL 4016220, at *7 (S.D.N.Y. Aug. 6, 2013); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (striking part of a pleading "is a drastic remedy" (quotation marks and citation omitted)). The prevailing rule is that a motion to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy *and* may cause some form of significant prejudice to one or more of the parties to the action." *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013) (emphasis added) (quotation marks and citation omitted).[1]

Where, as here, a party seeks to strike affirmative defenses as immaterial or impertinent, the moving party must show "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Vlado v. CMFG Life Ins. Co.*, 2023 WL 5591368, at *2 (S.D.N.Y. Aug. 29, 2023) (citing *GEOMC*, 918 F.3d at 96–99). A motion to strike, however, "is not intended to furnish an opportunity for the determination of disputed and substantial questions of law," *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (quotation marks and citation omitted), and "[i]t is particularly important to refrain from considering disputed questions of law when, as in this case, there has been no significant discovery," *SEC v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992).

---

[1] The FTC urges that this statement of law has been overruled by *GEOMC Co. v. Calmare Thereapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), *see* Dkt. 147, at 7 n.2, but that is incorrect. *GEOMC* held only that a modified *Twombly/Iqbal* pleading standard applies to affirmative defenses; the Court expressly confirmed that the long-recognized "second factor" regarding the legal sufficiency of an affirmative defense "needs no revision." 918 F.3d at 98.

I.      **THE AFFIRMATIVE DEFENSES ARE RELEVANT AND ADEQUATELY PLEADED**

The FTC challenges the constitutional defenses as "immaterial" to the Section 13(b) inquiry and the equitable defenses as inadequately pleaded.  Both efforts fail.

A.      **The Constitutional Defenses Are Material to the Section 13(b) Analysis**

A court may grant the FTC preliminary injunctive relief only after "weighing the equities and considering the Commission's likelihood of ultimate success."   15 U.S.C. § 53(b). Defendants' constitutional defenses are material to the FTC's request in this action because they inform both the FTC's "likelihood of ultimate success" and the "weighing [of] the equities."  The FTC's motion to strike can be denied under either rationale.

1.      **The Constitutional Defenses Are Material to the FTC's Likelihood of Ultimate Success**

**a.**  Section 13(b) is clear:  The Court *must* consider the FTC's "likelihood of *ultimate success*" before issuing preliminary injunctive relief.  15 U.S.C. § 53(b)(2) (emphasis added). Undefined terms in statutes carry their "ordinary meaning," *Johnson v. United States*, 559 U.S. 133, 138 (2010), and where "the statutory language is plain," courts "must enforce it according to its terms," *King v. Burwell*, 576 U.S. 473, 486 (2015).  These principles apply to Section 13(b), which must be construed in light of its "language and structure," irrespective of "policy-related" issues arising out of that language.  *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1347–48, 1351–52 (2021).

There is no ambiguity in the statute.  "Ultimate" in this context means "tended toward by all that precedes," "arrived at as the last result," and/or "finally reckoned,"  *Ultimate*, Webster's Third New International Dictionary (1986), and "success" means "the degree or measure of attaining a desired end," "a succeeding fully or in accordance with one's desires," and/or "favorable termination of a venture."  *Id.* at *Success*; *see also Muscarello v. United States*, 524

U.S. 125, 128 (1998) (considering dictionary definitions to interpret statute).   Whatever combination of definitions one chooses, the point is the same—likelihood of "ultimate success" refers to the likelihood of an outcome favorable to the FTC as the final result.   Section 13(b) "mean[s] what it says."   *AMG Capital Mgmt.*, 141 S. Ct. at 1349.

Under the plain language, there is no serious question that the constitutional defenses Defendants have raised are relevant to the FTC's likelihood of "ultimate success."   There are at least two threshold defects with the underlying administrative proceedings.   The first is that the FTC Commissioners are removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," 15 U.S.C. § 41, in violation of the constitutional maxim that executive officers generally are removable at will, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191–92 (2020); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (similar).   No exception for quasi-legislative or quasi-judicial officers applies here, because it is by now "hard to dispute" that the FTC's present powers are "executive."   *Seila Law*, 140 S. Ct. at 2198 n.2 (quotation marks omitted).[2]   The second defect is that the FTC Commissioners serve both as the prosecutor in the administrative proceedings (by authorizing the initial complaint) and the ultimate adjudicator, *see* 16 C.F.R. § 3.51, in derogation of Defendants' due process right to an impartial adjudicator, *see Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

---

[2] The Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), does not hold otherwise, as that case addressed only the FTC as it existed in 1935, and not the version of the FTC today, which both possesses and regularly exercises substantially more power. *See, e.g.*, Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973) (authorizing FTC to seek permanent injunctive relief in court); Pub. L. No. 93-637, §§ 205–06, 88 Stat. 2183, 2200–02 (1975) (authorizing FTC to seek certain monetary relief); *see also* Daniel A. Crane, *Debunking Humphrey's Executor*, 83 Geo. Wash. L. Rev. 1835, 1859-71 (2015) ("A century of experience has shown that the FTC's actual practice conforms very little to this vision [in *Humphrey's Executor*]… [the FTC] is independent from the President but inclined to the will of Congress, not uniquely expert, and not predominantly legislative or adjudicatory. Rather, its predominant character is that of a law enforcement agency.").

If the FTC Commissioners are in fact constitutionally prohibited from acting as the adjudicator in the underlying administrative proceedings, the "ultimate" result in any appeal by Defendants from a decision in the administrative proceedings will be that the decision must be vacated.  After the FTC's administrative law judge issues his recommendation of judgment, the Commissioners have unfettered discretion—which was recently enhanced through regulatory amendments—to adopt, modify, or reject that recommendation as they see fit.  *See* 5 U.S.C. § 557(b); 16 C.F.R. § 3.51.  The Commissioners' decision is appealable to a federal court of appeals, *see* 15 U.S.C. § 45(c), and, potentially, to the U.S. Supreme Court, *see* 28 U.S.C. § 1254(a).

Upon judicial review—whether before a court of appeals or the Supreme Court—Defendants would be entitled to vacatur of a final order rendered by an unconstitutional agency or official.  "[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to meaningful relief.  *Ryder v. United States*, 515 U.S. 177, 182–83 (1995).  Consistent with that rule, the Supreme Court has instructed that "the 'appropriate' remedy" for a proceeding overseen by an unconstitutionally installed officer "is a new 'hearing before a properly appointed' official."  *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (quoting *Ryder*, 515 U.S. at 183).  Accordingly, if, as Defendants contend, the FTC Commissioners are constitutionally prohibited from adjudicating the administrative proceedings, any judgment against Defendants in that proceeding will be vacated on judicial review.[3]

---

[3] In fact, the FTC currently is litigating many of these same constitutional defenses in an appeal from an FTC administrative proceeding and has not disputed that if those defenses have merit, the underlying order must be vacated.  *See* Brief of the FTC at 59–81, *Illumina, Inc. v. FTC*, No. 23-60167 (5th Cir. Aug. 4, 2023).

There also are other constitutional defects with the FTC and the underlying administrative proceedings, including, inter alia, the two layers of removal protection the FTC's administrative law judges enjoy, *see* 5 U.S.C. §§ 1202(d), 7521(a); *see also Free Enter. Fund*, 561 U.S. at 492–96, and the arbitrary exercise of the FTC's power to determine in which venue to file suit, *see* 15 U.S.C. § 18. If any of these arguments were successful—either in the administrative proceedings or in a federal court on judicial review—the remedy, again, would be to vacate any underlying judgment or injunction against Defendants. These defenses therefore go directly to the FTC's "likelihood of ultimate success."

**b.** Overlooking all of the above, the FTC blithely asserts that Section 13(b) "focuses on the antitrust merits of the case and the likelihood of success in the underlying administrative proceedings," excluding any consideration of non-antitrust bases on which the FTC's case may ultimately fail. Dkt. 147, at 9-10. The FTC is wrong several times over.

The FTC first errs by claiming that it need show only "a fair and tenable chance of ultimate success on the merits" in order to satisfy the first prong of Section 13(b). Dkt. 147, at 9 (quotation marks omitted). That standard was created out of whole cloth by one of the first courts to construe Section 13(b), and it was based entirely on the court's examination of one small excerpt from the legislative history. *See FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090 (S.D.N.Y. 1977). That court's novel construction, however, cannot survive modern Supreme Court precedent instructing that courts must construe the *language* and *structure* of Section 13(b), not its policy motivations, *AMG Capital Mgmt.*, 141 S. Ct. at 1347–48, 1351–52, and that courts should assume that traditional equitable standards apply unless Congress has clearly directed otherwise in the statute, *see eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006), which plainly is not the case here. Unsurprisingly, *Lancaster Colony*'s outdated standard has been firmly rejected by

8

several courts.  *See FTC v. Freeman Hosp.*, 69 F.3d 260, 267 (8th Cir. 1995) ("fair and tenable" standard "runs contrary to congressional intent and reduces the judicial function to a mere 'rubber stamp' of the FTC's decisions"); *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1072 (D.D.C. 1997) (observing that the FTC's proposed standard "has been argued and rejected in other cases" and doing the same).  Section 13(b) thus does not give the FTC any special standard for obtaining preliminary injunctive relief.

Regardless, under any standard, there is no support for the FTC's contention that constitutional arguments going to the FTC's power to conduct the underlying administrative position are "immaterial" to the FTC's likelihood of "ultimate success."  Nowhere in its motion does the FTC even attempt to grapple with the plain language of Section 13(b).  Instead, the FTC simply proclaims that "ultimate success" actually means "succe[ss] on the merits in the underlying administrative proceeding," thus foreclosing consideration of any non-merits arguments that could nonetheless result in ultimate defeat for the FTC.  Dkt. 147, at 9.  But that is not what the statute says, and the FTC cannot simply "read an absent word"—or words—"into the statute."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004).  In fact, the FTC reads the word "ultimate" *out* of the statute: The only function of the word "ultimate" in this context is to clarify that "success" must be measured by the final resolution of the proceedings; by contending that the FTC need only show a likelihood of interim success (before an administrative tribunal) on a subset of the disputed issues (the antitrust merits), the FTC proposes to divest "ultimate" of any significance.  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts must "give effect, if possible, to every clause and word of a statute" (quotation marks and citation omitted)).  No contortion of the English language can give Section 13(b) the meaning the FTC seeks to ascribe to it.

The FTC's approach also makes no sense in the context of the full statute.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (a statute should be read "as a symmetrical and coherent regulatory scheme" (quotation marks and citation omitted)).  The purpose of a Section 13(b) preliminary injunction is to provide interim relief "pending the issuance of a complaint by the Commission . . .  and until such complaint is dismissed by the Commission *or set aside by the court on review*."  15 U.S.C. § 53(b) (emphasis added); *see also AMG Capital Mgmt.*, 141 S. Ct. at 1349 (reading Section 13(b) so as to "produce[] a coherent enforcement scheme").  The FTC argues that the purpose of the preliminary injunction is to "preserve the status quo while [the FTC] adjudicates in its administrative court."  Dkt. 147, at 1.  But the FTC does not deny that in an appeal from any adverse outcome in the administrative proceedings, Defendants could seek vacatur on the basis of the constitutional defenses raised here.  *See Lucia*, 138 S. Ct. at 2055.  If the FTC cannot lawfully "adjudicate[] in its administrative court," Dkt. 147, at 1, and if any decision from the administrative proceedings will be vacated, then there is no need—and certainly no statutory basis—for a preliminary injunction whose ostensible purpose is to support those administrative proceedings.

Even looking beyond the statutory language, the FTC's approach is contradicted by equitable practice.  Courts applying the traditional four-factor test for a preliminary injunction routinely consider issues beyond the substantive merits of the plaintiff's claim, including statute of limitations, *see Austin v. Cuomo*, 2020 WL 7352664, at *7 (W.D.N.Y. Dec. 15, 2020); *Gonzalez v. Alliance Bancorp*, 2010 WL 1575963, at *3 (N.D. Cal. Apr. 19, 2010); exhaustion, *see Williamson v. Maciol*, 839 F. App'x 633, 636 (2d Cir. 2021); *Rockett v. White*, 2021 WL 2328417, at *2 (E.D. Cal. June 8, 2021); *Brach v. Newsom*, 2020 WL 6036764, at *9 (C.D. Cal. Aug. 21, 2020); *Shea v. Unum Provident*, 2010 WL 11598016, at *6–7 (C.D. Cal. Apr. 21, 2010);

preemption, *see Spolar v. Discovery Commc'ns, LLC*, 2020 WL 7222807, at *6 (C.D. Cal. Oct. 2, 2020); *Shea*, 2010 WL 11598016, at *3–5; and arbitrability, *see Blash v. BCS Placements, LLC*, 2020 WL 2832777, at *3-4 (S.D.N.Y. May 31, 2020).  Nothing in Section 13(b) suggests Congress intended a "major departure from the long tradition of equity practice" evinced by these cases, *eBay*, 547 U.S. at 391, and for that additional reason, the FTC's effort to narrow the issues under review is unsustainable.

Nor is the FTC correct that success is measured only from the perspective of the "underlying administrative proceedings."  Dkt. 147, at 9–11.  Again, the statute uses the word "ultimate," not "interim," to describe the measure of success, and it says expressly that the preliminary injunction should last only until "such complaint is dismissed by the Commission *or set aside by the court on review*."  15 U.S.C. § 53(b) (emphasis added).  No sensible reading of the text would limit the success inquiry to one intermediate step in the adjudication of the FTC's claims.  *Cf. AMG Capital Mgmt.*, 141 S. Ct. at 1349.  Indeed, even the FTC's favored authority— *Lancaster Colony*—refers expressly to the presentation of serious questions on the merits suitable for "deliberation and determination by the FTC in the first instance *and ultimately by the Court of Appeals*."  *Lancaster Colony Corp.*, 434 F. Supp. at 1091 (emphasis added).  No other approach would make sense—the FTC has not lost a *single* in-house merger proceeding since 1995, and the Commissioners vacated the administrative law judges' decisions in the only two instances in which the judge recommended dismissal of the FTC's claims.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring) ("some say the FTC has not lost an in-house proceeding in 25 years"); David Balto, *Can the FTC Be a Fair Umpire?*, The Hill (Aug. 14, 2013), https://perma.cc/E9ZN-U7UM.  If success before the administrative tribunal were the relevant

metric, the FTC could obtain a preliminary injunction as a matter of course in every case.  That, of course, is not the law.

    **c.**  In search of support for its position, the FTC relies almost exclusively on an out-of-circuit district court decision, *FTC v. Meta Platforms Inc.*, 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022).  *See* Dkt. 147, at 10–12.  As the FTC admits (albeit in a footnote), *see id.* at 11 n.7, the district court's reasoning there was far from clear:  The court concluded that Section 13(b) requires a showing of only interim success on the antitrust merits, and struck defenses regarding the alleged bias of the FTC Chairperson, with prejudice, as immaterial.  *See Meta Platforms*, 2022 WL 16637996, at *4–7.  It then analyzed the remaining constitutional defenses—some of which resemble those asserted here—and stated that "assessment of these constitutional affirmative defenses overlaps significantly with its analysis of Defendants' bias-related defenses."  *See id.* at *7.  But rather than strike the non-bias constitutional defenses on that basis, the district court held that those defenses were "inadequately pled."  *Id.*  The court thus struck those defenses *without* prejudice, observing that it could not "ascertain that further factual amendments would be futile."  *Id.*  Plainly, if the district court believed the constitutional defenses were categorically irrelevant to the Section 13(b) inquiry—as the FTC here contends—it would not have allowed the defendants to replead those defenses.  *See id.* (striking bias defenses with prejudice, because the "issues with Meta's bias-related defenses are legal and foundational in nature," and therefore "amendment would be futile").  It is thus not even clear that *Meta Platforms* supports the FTC's motion here.

    But whatever the district court in *Meta Platforms* meant, its decision does not control here and carries no persuasive force.  Aside from reciting the outcome of *Meta Platforms*, the FTC does little to actually defend the *reasoning* of that case, and for good cause.  In holding that "ultimate success" means only success on the antitrust merits, the district court there did not examine the

actual text of the statute or undertake any serious effort at statutory interpretation. *Meta Platforms*, 2022 WL 16637996, at *6.  Indeed, the court started its analysis by announcing that it interpreted "'on the merits' here to mean the action's Section 7 antitrust merits," *id.*, but "on the merits" does not appear anywhere in Section 13(b), and so the court's understanding of that phrase is irrelevant, *see AMG Capital Mgmt.*, 141 S. Ct. at 1347–48.  The statutory phrase is "ultimate success," and the district court (like the FTC here) never endeavored to construe *that* language.

Instead, the court cited cases focusing on whether the FTC has shown "that the effect of the merger may be substantially to lessen competition, or to tend to create a monopoly." *Meta Platforms*, 2022 WL 16637996, at *6 (cleaned up) (alteration and quotation marks omitted).  But none of those cases were considering whether non-merits defenses may be considered in a Section 13(b) application—they were simply reciting a common articulation of the Section 13(b) standard. And in any event, the traditional approach of a small number of lower courts is no substitute for what the text of Section 13(b) actually calls for.  *See AMG Capital Mgmt.*, 141 S. Ct. at 1351 (rejecting longstanding, atextual interpretation by the courts of appeals).  "[U]ltimate success" in Section 13(b) "mean[s] what it says." *Id.* at 1349.

As further support for its position, the district court in *Meta Platforms* also referenced the fact that some courts have indicated that the FTC need only present questions that require "thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals," *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1162 (9th Cir. 1984) (quotation marks and citation omitted), suggesting that this standard "would be an odd description for issues that can only arise out of the FTC's own proceedings," *Meta Platforms*, 2022 WL 16637996, at *6.  But this "serious questions" standard is not unique to the Section 13(b) context—the Second Circuit has held that this standard can apply in any preliminary injunction

13

application, *if* "the balance of hardships tips decidedly toward plaintiff." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953).  And as described above, courts regularly consider non-merits defenses when applying the ordinary standard for preliminary injunctive relief.  There is thus nothing "odd" about considering non-merits defenses under that standard.

Finally, the error in the FTC's position is exposed by the fact that the FTC does not and cannot dispute that Defendants could have, instead of filing affirmative defenses, filed counterclaims (or a separate action altogether) making the exact same constitutional arguments and seeking to enjoin the administrative proceedings.  *See Axon Enter.*, 598 U.S. at 195 (allowing district courts to hear affirmative claims "that the structure, or even existence, of an agency violates the Constitution").  If the Court grants the FTC's motion to strike the constitutional defenses, Defendants will likely do just that, by filing a new complaint in this Court and seeking their own preliminary injunctive relief on a parallel schedule.  It simply cannot be that arguments that would be sufficient to enjoin the underlying administrative proceedings in a separate action are irrelevant to whether a preliminary injunction should be issued in support of those administrative proceedings. The FTC is thus wrong to wave off the import of *Axon.*

### 2.    The Constitutional Defenses Are Material to the Equities

Section 13(b) also requires the reviewing court to consider "the equities" in assessing whether to issue preliminary injunctive relief.  *See* 15 U.S.C. § 53(b).  Even if an equitable argument would not provide a complete defense to liability under the Clayton Act, it may nonetheless be relevant to weighing the equities under Section 13(b).  *See FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1083 (D.C. Cir. 1981).  The kind of equities that may be considered "[are] not qualified" by the statute.  *Id.*; *see also FTC v. Nat'l Tea Co.*, 603 F.2d 694, 697 n.4 (8th Cir. 1979) (courts may consider both public and private equities).

Plainly, the constitutional defenses are relevant to the equities.  It is well settled that "the public interest lies with enforcing the Constitution."  *Deide v. Day*, 2023 WL 3842694, at *25 (S.D.N.Y. June 6, 2023) (quotation marks and citation omitted); *see also G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").  Accordingly, "upholding constitutional rights serves the public interest."  *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest.").  And as to Defendants specifically, it is categorically inequitable to inhibit their business transaction on unconstitutional grounds.  These defenses therefore inform the Court's "weighing [of] the equities."  15 U.S.C. § 53(b).

The FTC addresses the equities only obliquely, and in conflicting ways.  First, the FTC claims that the equities to be weighed "are not the usual equities of private litigation but public equities."  Dkt. 147, at 10 (quotation marks omitted) (quoting *Lancaster Colony Corp.*, 434 F. Supp. at 1096)).  As set forth above, though, that is not the prevailing rule today—courts allow consideration of *all* the equities, just as the statute directs.  Later in its brief, the FTC reverses course, asserting that the only relevant equities are "the private consequences resulting from the requested injunction" and not the equities "arising out of the FTC's administrative proceedings themselves."  *Id.* at 12 (quotation marks omitted) (quoting *Meta Platforms*, 2022 WL 16637996, at *6).  But again, not only is that contrary to the prevailing law, it also is a limitation found nowhere in the statute.

It ultimately does not matter, though, how the FTC tries to cabin the consideration of the equities under Section 13(b), because the constitutional defects in the FTC's administrative

proceedings are relevant in numerous ways.  As set forth above, it is contrary to the public interest to issue an injunction based on the unconstitutional exercise of authority by the FTC—no public good can come from an enforcement action prosecuted by an unconstitutionally structured entity. As for the private equities, it plainly would be inequitable for Defendants' merger to be derailed by an agency that lacks the authority to do so.  And even focusing solely on the economic effect of the preliminary injunction on Defendants' stakeholders, *see Warner Commc'ns*, 742 F.2d at 1165, it would not be equitable to force Defendants to suffer those adverse effects if any adverse judgment against them will ultimately be vacated on constitutional grounds.  The short shrift the FTC affords this dispositive point is insufficient to justify the exceptional relief it seeks.

\* \* \*

Whether under the framework of "ultimate success" or that of "weighing the equities," the point remains that the FTC cannot obtain preliminary injunctive relief in support of an unconstitutional proceeding.  For the FTC to suggest that its authority to conduct the underlying administrative proceedings is "immaterial" to the propriety of preliminary injunctive relief purportedly designed to maintain the status quo while those proceedings are resolved is to discard any commonsense reading of Section 13(b).  The FTC must be called upon to defend the constitutionality of its structure and proceedings, and it cannot evade its responsibility to do so by twisting the words of the statute beyond recognition.

### B.     Defendants' Equitable Defenses Are Not Legally Foreclosed

The FTC also seeks to strike Defendants' affirmative defenses regarding equitable estoppel and laches on the ground that those defenses are not available, either against the government generally or in the circumstances of this case.  The FTC's arguments fail on both fronts.

As background, there are two factual bases for these defenses.  The first is that IQVIA— the acquiring party in the proposed transaction—has previously acquired other companies that

provide services related to digital advertising.  *See* Dkt. 58, Aff. Defs. ¶ 17.  Based on the allegations in the FTC's complaint, *see* Dkt. 1 ¶¶ 12, 23, 91–94, and its discovery strategy, Defendants are wary that the FTC intends to use this action as a collateral attack on IQVIA's prior acquisitions, even though the FTC has not alleged in its complaint here that those acquisitions were improper.

The second is that the Department of Justice ("DOJ") currently is suing Google in federal court, alleging that Google exercises anticompetitive and "pervasive power over the entire ad tech industry."  Compl. ¶ 6, *United States v. Google, Inc.*, No. 23-CV-108 (E.D. Va. Jan. 24, 2023), ECF No. 1.  That industry, the *Google* complaint alleges, includes "demand side platforms" ("DSPs"), which are firms that provide the technical tools for the programmatic purchase of digital advertisements.  *See id.* ¶ 49.  From the face of the *Google* complaint, there are potentially serious inconsistencies between the DOJ's approach in *Google* and the theories the FTC proposes to advance here.  For example, the *Google* complaint does not suggest that healthcare advertising or any other particular sub-category of digital advertising comprises a discrete market, but rather asserts that Google exercises control "over the entire ad tech industry," and specifically avers that Google has a 40% "market share" for DSP services.  Compl. ¶¶ 6, 75, *Google*, ECF No. 1.  Yet here, the FTC is urging that Google is not even *included* within its proposed market for 1-to-1 programmatic advertising to healthcare professionals via DSPs, and certainly is not claiming that Google has any substantial market share.  *See* Dkt. 6, at 13–14.

Although the FTC is well aware of the factual predicates for Defendants' laches and estoppel defenses, the FTC in its motion does not deny either that it could seek to exhume past transactions by IQVIA in this litigation or that its positions in this case are inconsistent with those advanced by DOJ against Google.

### 1.   Laches Can Be a Cognizable Defense Against the Government

The FTC contends that Defendants' laches defense should be stricken, because "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest."  Dkt. 147, at 14 (quotation marks and citation omitted).  The cases the FTC cites, however, do not stand for this sweeping rule, and there are substantial legal questions about the availability of laches in a suit by the government that should not be resolved on a motion to strike and that, at the very least, Defendants should be able to preserve for appeal.

The FTC relies on *United States v. Angell*, 292 F.3d 333 (2d Cir. 2002), in which the court held that the laches argument had been waived, but indicated in the alternative that the defense was not available in the circumstances of that case.  *Id.* at 338.  The Second Circuit relied, in turn, on *United States v. Summerlin*, 310 U.S. 414, 416 (1940), and *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir. Unit B Oct. 1981).  *Angell*, 292 F.3d at 338.  *Summerlin* involved a lawsuit by the United States in its capacity as a rights holder, which the lower court dismissed based on a state statute of limitations period.  310 U.S. at 416–17.  In that context, the Supreme Court held that "the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."  *Id.* at 416.  The Court said nothing about suits brought to enforce a "public right" (which was not at issue in *Summerlin*) or about the application of a federal rule of laches.

In *Arrow Transport*, the Fifth Circuit cited *Summerlin* for the proposition that laches "cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest," 658 F.2d at 394, which, as noted above, is not what *Summerlin* held or even intimated.  The Fifth Circuit also cited *United States v. California*, 332 U.S. 19 (1947), *Arrow Transp.*, 658 F.2d at 394, in which the Supreme Court again held that laches did not apply

to the United States in litigating its *own* rights (as a land holder).  *California*, 332 U.S. at 22–23, 39–40.  Again, the Court said nothing about "public rights."

None of these Supreme Court cases stands for the sweeping rule that the FTC proposes.  There is very much a live and unsettled question regarding when and under what circumstances laches may be available against the government.  *See United States v. Admin. Enters., Inc.*, 46 F.3d 670, 672–73 (7th Cir. 1995) (collecting authorities discussing the issue).  It is not even clear whether the Second Circuit's decision in *Angell* turned on the availability of laches against the government or on the circumstances of the particular case.  292 F.3d at 338.  At the very least, the defense of laches presents a "disputed and substantial question[] of law" not suitable for resolution on a motion to strike.  *Cnty. Vanlines*, 205 F.R.D. at 153 (quotation marks and citation omitted).  Even if the Second Circuit intended to close the door on this defense, Defendants are entitled to preserve it at this stage and develop whatever record may be appropriate for appellate review.

As for the elements of laches, the FTC overstates Defendants' burden.  While the "plausibility standard of *Twombly* applies to determining the sufficiency of . . . an affirmative defense," there is a lower "degree of rigor appropriate for testing the pleading of an affirmative defense."  *GEOMC*, 918 F.3d at 98.  That is because defendants have far less time (typically 21 days, but even less here) to draft their affirmative defenses than plaintiffs have to draft their complaints, and because "the facts needed to plead an ultra vires defense" may "not be readily known to the defendant" at the time of pleading.  *Id.*

Here, Defendants have pointed to three prior IQVIA acquisitions (of Lasso, DMD, and MDG) that, they submit, should not be collaterally challenged through this litigation.  *See* Dkt. 58, Aff. Defs. ¶ 17.  There is no question the FTC knew of those transactions, that the FTC has not taken any action on them and did not include them in this complaint, or that Defendants would be

prejudiced if the FTC did so now.  *See Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 982298, at

*10 (S.D.N.Y. Mar. 16, 2021).  Whether the FTC may bring a lawsuit to challenge a transaction

years after the fact (Dkt. 147, at 15) is a different question from whether the FTC may use a Section

13(b) preliminary injunction proceeding initiated to support a proceeding only against the current

proposed transaction to indirectly attack IQVIA's prior acquisitions more generally.

A motion to strike is not the proper vehicle for sorting any of this out, particularly before

Defendants even know which arguments the FTC intends to make in support of its application.

This defense may be moot if the FTC plays it straight, but if the FTC attempts to turn this

proceeding into a broadside attack against IQVIA's attempts to compete in advertising—and in

particular if the FTC tries to collaterally attack prior transactions—Defendants ought to be able to

raise every available defense to such an effort.[4]

### 2.    Equitable Estoppel Is Not Categorically Foreclosed Here

The FTC claims that there is no cognizable defense of equitable estoppel in the

circumstances of this case, because that doctrine can be invoked against the government only

"upon a showing of affirmative misconduct."  Dkt. 147, at 15–16 (quotation marks omitted)

(quoting *Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000)).  Once again, the FTC has

oversimplified the legal issue.

Defendants are not seeking to bind the government to the comments of a single employee;

they are seeking to stop the government itself from taking inconsistent positions in two parallel

litigations.  The Supreme Court cases discussing the standard for equitable estoppel against the

government relate to efforts by litigants to use the advice or representations of a lower-level

---

[4] The *relevancy* of such transactions to an assessment of competitive effects (Dkt. 147, at 15) is
not at issue in this defense, and can appropriately be addressed in a motion *in limine* or in
substantive briefing.

government employee to estop the government at large.  *See, e.g.*, *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (observing that the Court "has never decided what type of conduct by a Government employee will estop the Government from insisting upon compliance with valid regulations"); *Montana v. Kennedy*, 366 U.S. 308, 314–15 (1961) (party could not estop the government based on erroneous advice of a consular officer).  From this line of cases, some courts have suggested that the government may never be equitably estopped absent a showing of affirmative misconduct.  *See Corniel-Rodriguez v. INS*, 532 F.2d 301, 306–07 (2d Cir. 1976) (equitably estopping the government in view of evidence of affirmative misconduct, but not holding that such misconduct was a necessary element of estoppel).  But the Supreme Court has expressly declined to endorse such a position.  *See Schweiker*, 450 U.S. at 788.

Whether the "affirmative misconduct" standard ever applies and whether it applies where, as here, estoppel is sought on the basis of the government's *own actions* (e.g., the prosecution of the *Google* litigation) are open questions.  Again, a motion to strike is not the appropriate forum to litigate and decide these nuanced questions of law, and Defendants should be allowed to build an appropriate record for appeal on this defense, if necessary.

On the merits, Defendants do not know what precise theories the FTC intends to press and whether or to what extent those theories will conflict with what the DOJ is contemporaneously arguing in the *Google* litigation.  But if the FTC in fact offers a theory of the case that is inconsistent with what the DOJ is arguing in the parallel litigation, Defendants are entitled to point that out to the Court, if for no other reason than to insist that the government "turn square corners" when it brings its power to bear on its constituents. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).  As Defendants noted to the Court, it is an "odd position for the United States government to take" that the Court should preemptively decide that it may not even *consider* the possibility

that the FTC's litigating position is inconsistent with that of the DOJ.  Hr'g Tr. 33:23–34:3 (Sept. 6, 2023).  Notably, the FTC was unwilling before this Court to represent that there would be no inconsistency in the litigating positions, *see id.* at 34:4–13, and that alone is sufficient reason not to strike this defense.

### 3.   The Facts Giving Rise to These Defenses Are Relevant to the Equities

Even if, however, the FTC were correct that these affirmative defenses do not provide a complete defense to liability under the antitrust laws or that the elements are not adequately pled, it does not and cannot deny that the underlying facts giving rise to these defenses are relevant to "weighing the equities" pursuant to Section 13(b).  As set forth above, the scope of equities appropriate for consideration "is not qualified" by Section 13(b).  *Weyerhaeuser*, 665 F.2d at 1083; *see also Nat'l Tea*, 603 F.2d at 697 n.4 (similar).

It is beyond serious dispute that it would be inequitable for the FTC to pursue a theory of competition that is incompatible with one that the DOJ is simultaneously pressing in parallel litigation.  *Cf. Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) ("[T]he use of inherently factually contradictory theories [in separate criminal cases] violates the principles of due process."); *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (plurality op.) ("[A] prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime."), *rev'd on other grounds*, 523 U.S. 538 (1998).  Thus, even if the Court were to determine that the doctrine of equitable estoppel does not formally apply in these circumstances, striking the defense now would not exclude from consideration any inconsistency between the FTC's and the DOJ's litigation positions as part of "weighing the equities."  The same is true for laches.  Regardless of whether the formal elements of laches can be satisfied here, the fact that the FTC reviewed, but did not challenge or otherwise express disapproval of, IQVIA's prior transactions in the digital advertising space is relevant to question

whether it would be equitable to enjoin the proposed transaction based on the FTC's hindsight dissatisfaction with those prior acquisitions.

Whether the Court strikes these defenses or not, the animating facts are part of the case and will have to be considered as part of the analysis of the equities. The FTC's still-premature motion therefore does nothing to streamline the proceedings and will not, even if granted, alter the substantive scope of this litigation.

## II.  THE FTC HAS NOT IDENTIFIED ANY PREJUDICE FROM MAINTENANCE OF THE AFFIRMATIVE DEFENSES

The FTC's motion fails for the independent reason that the FTC has not identified any cognizable or undue prejudice from the maintenance of these defenses.

The FTC's principal argument for prejudice from the constitutional defenses is remarkable: It argues that these defenses threaten to "render the FTC's administrative processes unconstitutional and thwart not only the agency's ability to both enforce the antitrust laws, but also the agency's actions to protect vulnerable consumers[.]" Dkt. 147, at 17. In other words, the FTC is concerned that these defenses might *succeed*. That is not what "prejudice" means in this context—all affirmative defenses are "prejudicial" to the plaintiff in the sense that, if sustained, they will defeat the plaintiff's claim. *See Vlado*, 2023 WL 5591368, at *2. But courts have long rejected that such an inherent quality constitutes prejudice. *See, e.g.*, *United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) ("What 'prejudice' as used in Rule 403 means is that admission is, as the rule itself literally requires, 'unfair' rather than 'harmful.'"); *Mangrove Partners Master Fund, LP v. 683 Capital Partners, LP*, 2020 WL 7335313, at *2 (S.D.N.Y. Dec. 14, 2020) (harm from automatic stay of discovery in securities litigation is not unduly prejudicial "any more than the prejudice that inheres in damning but admission testimony can be 'unfair' or the delay inherent

to every trial can be 'undue'").  The possibility that Defendants might be *right* about the FTC's unconstitutionality is a reason to sustain the defenses, not grounds for striking them.

In any event, though, Defendants do not ask this Court to make any sweeping pronouncements that would render the FTC powerless to carry on its work.  The Court can avoid reaching the constitutional defenses altogether if it denies the motion for a preliminary injunction. And even if the Court is considering granting an injunction, which would require it to reach the constitutional issues, any ruling adverse to the FTC will be limited to this action.  The abstract possibility that other courts may in turn rely on this Court's ruling to hold the FTC or other agencies unconstitutional in different contexts is the kind of "collateral consequences outside the courtroom" that are irrelevant to assessing prejudice.  *Joffe v. King & Spalding LLP*, 2019 WL 4673554, at *12 (S.D.N.Y. Sept. 24, 2019) (discussing Rule 403).

The FTC suggests that these expedited proceedings may not provide for adequate briefing and consideration of the constitutional issues.  Dkt. 147, at 18.  But the FTC agrees that the constitutional defenses "raise pure questions of law," *id.* at 8 n.5, and these issues have repeatedly been briefed in other cases.  The constitutional issues can be resolved in this case in the same way as they would be if Defendants had filed a separate lawsuit pursuant to *Axon*—through briefing and, if the Court deems necessary, oral argument.  That is how the FTC currently is litigating similar issues in the Fifth Circuit.  *See* Brief of the FTC at 59–81, *Illumina*, No. 23-60167.  Indeed, as noted above, if the Court strikes these affirmative defenses, Defendants likely will file a separate lawsuit in this Court seeking to enjoin the administrative proceedings.

As for the equitable defenses, the FTC asserts simply that it "will be forced to devote precious time and resources at the hearing and in briefing" if those defenses are allowed.  Dkt. 147, at 19.  But "merely expanding the scope of the litigation does not amount to prejudice."

*Unicorn Global, Inc. v. DGL Grp., Ltd.*, 2022 WL 3132863, at *1 (E.D.N.Y. Aug. 4, 2022). Moreover, Defendants have served no discovery requests regarding those affirmative defenses. In light of that, there is no merit to the FTC's assertion that these defenses will "intrude into any potential internal deliberations and privileged work product." Dkt. 147, at 19.

As this Court observed at the pre-motion hearing, the FTC's motion to strike appears to be "a way of increasing the number of motion pages [the FTC] ha[s]." Hr'g Tr. 30:2–3 (Sept. 6, 2023). The parties already negotiated the page limits for the preliminary injunction briefing—after Defendants had filed their Answers asserting the challenged affirmative defenses. Both parties can and should address these defenses in their preliminary injunction briefing.

## III.   THE COURT NEED NOT RESOLVE THE MOTION AT THIS STAGE

While the FTC's motion should be denied, the Court need not decide it before the hearing. Instead, the Court should hear the evidence and consider the FTC's motion for a preliminary injunction in context. If the Court decides, for example, that the FTC has not carried its burden of proof—or decides for any other reason to deny the preliminary injunction—then the affirmative defenses become irrelevant. The Court will be in a better position to assess the affirmative defenses at the conclusion of the hearing (and with the benefit of the parties' full briefing on all issues).

**CONCLUSION**

The FTC's motion to strike should be denied.

Dated: October 4, 2023
      Washington, DC

WEIL, GOTSHAL & MANGES LLP

 /s/ *Chantale Fiebig*
Chantale Fiebig
Mark A. Perry (*pro hac vice*)
Joshua M. Wesneski
2001 M Street NW, Suite 600
Washington, DC 20036

Tel:  (202) 682-7000
chantale.fiebig@weil.com
joshua.wesneski@weil.com

Robert Taylor
767 Fifth Avenue
New York, NY 10153
robert.taylor@weil.com

Sarah M. Sternlieb
700 Louisiana Street, Suite 1700
Houston, TX 77002
sarah.sternlieb@weil.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Kenneth Reinker
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel:  (202) 974-1500
kreinker@cgsh.com

Rahul Mukhi
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
rmukhi@cgsh.com

*Attorneys for Defendant IQVIA Holdings Inc.*

MORRISON & FOERSTER LLP
Alexander P. Okuliar (*pro hac vice*)
2100 L Street, NW, Suite 900
Washington, DC 20037
Tel: (202) 887-1500
aokuliar@mofo.com

David J. Fioccola
Mika M. Fitzgerald
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000
dfioccola@mofo.com
mfitzgerald@mofo.com

*Attorneys for Defendant Propel Media, Inc.*

26