UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>     v.<br><br>IQVIA HOLDINGS INC.,<br><br>and<br><br>PROPEL MEDIA, INC.<br><br>                Defendants. | Case No. 1:23-cv-06188-ER |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**

**MOTION TO STRIKE**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.    DEFENDANTS' INTERPRETATION OF SECTION 13(B) LACKS ANY BASIS IN THE CASELAW. ................................................................................ 2

II.   BINDING CIRCUIT PRECEDENT BARS THE EQUITABLE DEFENSES—WHICH ARE INSUFFICIENTLY PLED ANYWAY ...................................... 7

III.  THE FTC HAS SHOWN PREJUDICE .............................................................. 9

## TABLE OF AUTHORITES

**Cases**
*AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021) ................................................................ 3

*B.C. ex rel. B.M. v. Pine Plains Cent. School Dist.*, 971 F. Supp. 2d 356 (S.D.N.Y. 2013) .......... 8

*Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266 (2d Cir. 2005) ........................................... 8

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................. 6, 7

*FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34 (D.D.C. 2002) .................................................................. 4

*FTC v. Bass Bros. Enters., Inc.*, 1984 WL 355 (N.D. Ohio June 6, 1984) ..................................... 4

*FTC v. Consumer Defense, LLC*, 926 F.3d 1208 (9th Cir. 2019) ................................................... 7

*FTC v. Crescent Publ'g. Grp., Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) .................................... 6

*FTC v. Cuban Exch., Inc.*, 2012 WL 6800794 (E.D.N.Y. Dec. 19, 2012) ....................................... 6

*FTC v. Foster*, 2007 WL 1793441 (D.N.M. May 29, 2007) ........................................................... 4

*FTC v. Freeman Hosp.*, 69 F.3d 260 (8th Cir. 1995) ................................................................... 4, 6

*FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) ........................................................... 3, 4, 7

*FTC v. Hackensack Meridian Health, Inc.*, 2021 WL 4145062 (D.N.J. Aug. 4, 2021) .................. 4

*FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088 (S.D.N.Y. 1977) ..................................... 3, 4, 6

*FTC v. Meta Platforms, Inc.*, 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022) ......................... 3, 4, 5

*FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327 (3d Cir. 2016) ...................................... 4, 5, 7

*FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997) ............................................................... 4, 6

*FTC v. Verity Int'l, Ltd.*, 194 F. Supp. 2d 270 (S.D.N.Y. 2002) ..................................................... 6

*FTC v. Warner Commc'ns. Inc.*, 742 F.2d 1156 (9th Cir. 1984) ..................................................... 6

*FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981) ........................................................... 5

*FTC v. Whole Foods Mkt, Inc.*, 548 F.3d 1028 (D.C. Cir. 2008) .................................................... 7

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92 (2d Cir. 2019) ........................... 1, 7

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002) ............................... 10

*ITT v. GTE*, 449 F. Supp. 1158 (D. Hawaii 1978) ........................................................................ 9

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991) ............................................................ 10

*Office of Personal Mgmt. v. Richmond*, 496 U.S. 414 (1990) ....................................................... 9

*Rojas-Reyes v. INS*, 235 F.3d 115 (2d Cir. 2000) ......................................................................... 8

*SEC v. Durante*, 641 F. App'x 73 (2d Cir. 2013) .......................................................................... 8

*SEC v. Rayat*, 2021 WL 4868590 (S.D.N.Y. Oct. 18, 2021) ......................................................... 9

*United States v. 93 Court Corp.*, 350 F.2d 386 (2d Cir. 1965) ...................................................... 8

*United States v. Angell*, 292 F.3d 333 (2d Cir. 2002) ................................................................... 8

*United States v. Bertelsmann SE & Co.*, 646 F. Supp. 3d 1 (D.D.C. 2022) .................................. 9

*United States v. RePass*, 688 F.2d 154 (2d Cir. 1982) .................................................................. 8

*United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184 (2nd Cir. 1984) ............................... 2, 6

**Statutes**

15 U.S.C. § 45 ................................................................................................................................ 4

15 U.S.C. § 53 ......................................................................................................................... *passim*

15 U.S.C. § 56 .............................................................................................................................. 10

Fed. R. Civ. P. 4 ........................................................................................................................... 10

Fed. R. Civ. P. 12 ......................................................................................................................... 10

H.R. Rep. 93-624 (1973) (Conf. Rep.), *reprinted in* 1973 U.S.C.C.A.N. 2523 ............................. 7

# INTRODUCTION

Section 13(b) of the FTC Act is not new. In the five decades since its enactment, a substantial body of caselaw has developed applying that statute. Defendants' opposition largely ignores that precedent, encouraging this Court to accept their own *de novo* statutory interpretation. Section 13(b) is "clear" and "means exactly what it says," Defendants argue (Defs.' Mem. of Law in Opp'n to FTC's Mot. to Strike Certain Affirmative Defenses ("Opp'n"), ECF No. 156), but they cite not a single Section 13(b) case that supports their novel interpretation—or their articulation of a heightened legal standard for obtaining preliminary injunctive relief. That is not surprising because the caselaw is all to the contrary. No matter, though—according to Defendants, these are just "lower courts." And, for Defendants, that is where the court in *Meta Platforms* apparently went astray in striking constitutional defenses: it relied on Section 13(b) caselaw to reach its conclusion, and not Webster's Dictionary.

To salvage their equitable defenses, Defendants similarly dismiss precedent. Regarding laches, they insinuate *Angell* was wrongly decided, ignoring that it is just one in a line of Second Circuit decisions holding that laches is not available against the government when it is enforcing a public right—and that this Court is bound by it regardless. For equitable estoppel, Defendants assert the government is protected only against representations by "lower-level" employees, conveniently overlooking Second Circuit precedent showing even the Attorney General cannot equitably estop the government. Legal deficiencies aside, Defendants have no answer for their inability to sufficiently plead these defenses—other than (incorrectly) arguing that *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92 (2d Cir. 2019), absolves them from doing so.

Defendants likewise mischaracterize the FTC's arguments about prejudice as simply a concern that the defenses might succeed. That is not what the FTC has argued. As explained in the FTC's opening brief and at the September 6 hearing, given the import of constitutional

challenges, both the statutory scheme of the FTC Act and the Federal Rules mandate certain procedures to ensure that the government has sufficient time to defend itself against such charges, which have implications across federal agencies. Defendants contend the FTC's motion is premised on a distinction without a difference because Defendants could later file claims to enjoin the administrative proceeding. But this argument only begs the question of why they did not assert such claims to begin with—especially as the administrative proceeding enters its third month with a series of depositions of Defendants' high-ranking executives noticed for the end of this month. The answer is simple: that approach would threaten Defendants' self-imposed drop-dead date. But that date—which Defendants have established can be moved—is not a basis to push this Court to grapple with far-reaching constitutional issues on an expedited schedule.

The Court should grant the FTC's motion and dismiss Defendants' constitutional and equitable affirmative defenses with prejudice.

## ARGUMENT

### I. DEFENDANTS' INTERPRETATION OF SECTION 13(B) LACKS ANY BASIS IN THE CASELAW.

Defendants advance a novel interpretation of Section 13(b) that is unsupported by anything other than the argument of counsel and their interpretation of the dictionary—and in fact would erase a half-century of precedent. Appellants can point to no case, and the FTC is aware of none, holding that "ultimate success" under Section 13(b) means success before a hypothetical appellate court. In fact, all the caselaw is to the contrary. Defendants compound their error by repeating the same baseless arguments they raised regarding the standard to obtain relief under Section 13(b), even though courts have long held that the test under Rule 65 does not apply in cases brought under Section 13(b). *E.g.*, *United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184, 188 n.6 (2nd Cir. 1984) ("Congress made clear that it did not intend to adopt the

traditional test for a preliminary injunction applicable to private party litigation.").

***"Ultimate Success" Under Section 13(b) Refers to Success on the Antitrust Merits in the Administrative Court.*** The FTC in its opening brief explained why judicial precedent applying Section 13(b) firmly supports the FTC's position. There was no reason "to grapple with the plain language of Section 13(b)" (Opp'n at 9) when Article III courts have already done so for the past half-century. And those courts have pegged "ultimate success" to success before the administrative court—and on the merits of the antitrust laws.[1] *See, e.g.*, *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001) ("To determine likelihood of success on the merits we measure the probability that, *after an administrative hearing on the merits*, the Commission will succeed . . . .") (emphasis added); *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1091 (S.D.N.Y. 1977) ("We find that the FTC has shown that there is a likelihood that the acquisition . . . will ultimately be held unlawful *under the antitrust laws . . . .*") (emphasis added). It was on this precedent that the court in *FTC v. Meta Platforms, Inc.*, 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022), relied. *Id.* at *4-6 (collecting cases).[2]

Defendants repeatedly critique the FTC for not defending the *Meta Platforms* court's reasoning (Opp'n at 1, 12), but the court's reasoning is amply supported by judicial precedent. And, notably, that precedent extends beyond the purported "small number of lower courts" (which include the D.C. and Ninth Circuits and the Southern District of New York) cited in *Meta*

---

[1] *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), on which Defendants rely, addressed an entirely unrelated issue—whether Section 13(b) "authorizes the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement." *Id.* at 1344.

[2] Defendants never explain how the *Meta Platforms* defenses are "drastically different" from theirs (Opp'n at 1) or why the same reasoning for striking them would not apply here. Indeed, the court there made clear that to the extent the insufficiently pled "constitutional defenses [we]re predicated on Chair Khan's bias *or procedural deficiencies*, these defenses would likewise be stricken without leave to amend." 2022 WL 16637996, at *7 (emphasis added).

3

*Platforms*[3]—and even includes the few Section 13(b) cases cited by Defendants. *See FTC v. Freeman Hosp.*, 69 F.3d 260, 268 n.12 (8th Cir. 1995) ("The 'questions going to the merits' . . . are questions regarding the ultimate merits in a Clayton Act case—the lessening of competition."); *FTC v. Staples, Inc.*, 239 F. Supp. 3d 1, 5 (D.D.C. 2017) ("Likelihood of success on the merits in cases such as this means the likelihood that the Commission will succeed in proving, *after a full administrative trial on the merits*, . . . [a] violation of Section 7") (emphasis added). On the other side of this ledger is only Defendants' own reading of Section 13(b).[4]

**The "Equities" Under Section 13(b) Do Not Include Those Implicated by the Administrative Proceeding.** Defendants argue that the FTC takes "conflicting" positions in its "short shrift" analysis of the second prong of the Section 13(b) inquiry. Opp'n at 15-16. Not so.

Section 13(b) precedent is clear: As explained in the FTC's opening brief, the equities that matter under Section 13(b) are public ones, *Lancaster*, 434 F. Supp. at 1096; "private equities are afforded little weight." *E.g.*, *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352 (3d Cir. 2016). Indeed, when the FTC "demonstrates a likelihood of ultimate success, a countershowing of private equities alone would not suffice to justify denial of a preliminary

---

[3] *See, e.g.*, *FTC v. Hackensack Meridian Health, Inc.*, 2021 WL 4145062, at *14 (D.N.J. Aug. 4, 2021) ("The FTC must show that it has a likelihood of success of demonstrating, during the administrative proceeding, that the proposed merger violates Section 7 of the Clayton Act."); *FTC v. Foster*, 2007 WL 1793441, at *58 (D.N.M. May 29, 2007) (referencing "likelihood of succeeding on the merits of its Clayton Act case in an administrative proceeding"); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 43 (D.D.C. 2002) (quoting *Heinz*, 246 F.3d at 714); *FTC v. Bass Bros. Enters., Inc.*, 1984 WL 355, at *25 (N.D. Ohio June 6, 1984) (articulating the standard as the likelihood of success "in an administrative proceeding").

[4] Defendants argue that "ultimate success" under the statute must refer to federal appellate review, because "[n]o other approach would make sense." Opp'n at 11. But it is Defendants' approach that makes no sense. Because a party may seek review of a Commission order "within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business," 15 U.S.C. § 45(c), Defendants would require courts to engage in impossible soothsaying: predicting both in which circuit an appeal would be pursued and what a three-judge panel in that circuit would decide.

4

injunction barring the merger." *E.g.*, *id.* (quotation marks omitted). Defendants' cited authority is not to the contrary; indeed, in *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981), the D.C. Circuit recognized that "[p]rivate equities do not outweigh effective enforcement of the antitrust laws," emphasizing that "a countershowing of private equities alone would not suffice to justify denial of a preliminary injunction barring the merger." *Id.* at 1083.

To the extent that private equities factor at all into the analysis, they are equities going to "private consequences resulting from the requested injunction." *Meta Platforms*, 2022 WL 16637996, at *6; *accord Hershey*, 838 F.3d at 353 (equities analysis focuses on effects of the injunction). Defendants harp on inapposite cases applying the Rule 65 standard to argue that the "prevailing law" is otherwise, *see infra* at 6-7, but they (once again) fail to point to a single case applying Section 13(b) that has considered the equities associated with the FTC's administrative proceedings.[5] This is not surprising, given that those proceedings may well continue irrespective of the outcome in this litigation. *See infra* at 10.[6] Put differently, the affirmative defenses, even if successful, cannot stop the purported constitutional harms of which Defendants complain—that can occur only by enjoining the administrative process, an "intrusive" step that Defendants have not pursued. *See* 9/6/2023 Hr'g Tr. at 25.

***The FTC Need Not Meet a Heightened Standard for Preliminary Relief Under Section 13(b).*** Defendants also wrongly seek to muddle the standard for the FTC to obtain a preliminary injunction. Much like their interpretation of "ultimate success" under Section 13(b), the standard

---

[5] For the same reasons, Defendants legally deficient defenses of laches and estoppel have no place in the Section 13(b) weighing of the equities, pertaining in no way to the FTC's request for a preliminary injunction to halt this merger.

[6] Indeed, nothing in the FTC Act requires the Commission to simultaneously seek a preliminary injunction while pursuing the case in its administrative court. 15 U.S.C. § 53(b) ("the Commission . . . *may* bring suit in a district court" (emphasis added)).

5

Defendants advance has no basis in the 50 years of precedent construing the statute.

As explained in its motion, the FTC need only show a "fair and tenable chance of ultimate success on the merits" to obtain preliminary relief under Section 13(b). In response, Defendants belittle the FTC's reliance on *Lancaster* (Opp'n at 8, 11), arguing that two other courts have rejected the "fair and tenable" standard in favor of the "serious questions" formulation (*id.* at 9 (citing *Staples*, 970 F. Supp. at 1072 (applying "serious question" standard) and *Freeman Hosp.*, 69 F.3d at 267 (same))).[7] But the Second Circuit has stated that it does "not believe that there is any significant difference between the 'serious question' standard and the 'fair and tenable chance' standard." *Sun & Sand Imports*, 725 F.2d at 188 n.5. Indeed, *Lancaster* in fact *did* employ the "serious questions" standard, 434 F. Supp. at 1091, which Defendants begrudgingly acknowledge. Opp'n at 11. And rather than some outlier decision that has failed to stand the test of time, *Lancaster* has been cited approvingly by over a dozen other courts, including the Second Circuit, *Sun & Sand Imports*, 725 F.2d at 188; the Ninth Circuit, *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1162, 1164 (9th Cir. 1984); and this district and the Eastern District. *See FTC v. Verity Int'l, Ltd.*, 194 F. Supp. 2d 270, 281 nn.61-62 (S.D.N.Y. 2002); *FTC v. Crescent Publ'g. Grp., Inc.*, 129 F. Supp. 2d 311, 319 nn. 51-52 (S.D.N.Y. 2001); *FTC v. Cuban Exch., Inc.*, 2012 WL 6800794, at *1 (E.D.N.Y. Dec. 19, 2012).

Defendants further attempt to heighten the standard under Section 13(b) by contending that the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), upset the apple cart, such that ordinary "equitable practice" and the "traditional four-factor test" apply to the FTC's request for a preliminary injunction. Opp'n at 8, 10-11 (citing Rule 65 cases).

---

[7] In addition to statutory interpretation and legislative history, the *Lancaster* court relied on caselaw from the Fourth Circuit. 434 F. Supp. at 1090, 1096.

6

Defendants are wrong. Section 13(b) sets forth a different, more lenient standard than the traditional preliminary injunction test. As explained in the Conference Report, the "intent" was "to maintain the statutory or 'public interest' standard . . . and not to impose the traditional 'equity' standard." H.R. Rep. 93-624, at 31 (1973) (Conf. Rep.), *reprinted in* 1973 U.S.C.C.A.N. 2523, 2533; *see also, e.g.*, *H.J. Heinz*, 246 F.3d at 714 ("Congress intended [the Section 13(b)] standard to depart from what it regarded as the then-traditional equity standard"). Consistent with this history and the text, multiple courts of appeals in the two decades since *eBay* have applied the established Section 13(b) test—including the bedrock principle that "private equities are afforded little weight." *E.g.*, *Hershey*, 838 F.3d at 352; *see also FTC v. Whole Foods Mkt, Inc.*, 548 F.3d 1028, 1034-35 (D.C. Cir. 2008). No court has adopted Defendants' incorrect view. Indeed, the Ninth Circuit recently emphasized that the traditional preliminary injunction factors do not apply under Section 13(b). *FTC v. Consumer Defense, LLC*, 926 F.3d 1208, 1212-14 (9th Cir. 2019).[8]

## II. BINDING CIRCUIT PRECEDENT BARS THE EQUITABLE DEFENSES—WHICH ARE INSUFFICIENTLY PLED ANYWAY.

Defendants' response to the Second Circuit caselaw that bars their equitable defenses is to invite this Court to disregard that law altogether. But that law is binding on this court. In any event, Defendants fail to "support these defenses with some factual allegations to make them plausible," *GEOMC Co.*, 918 F.3d at 99—or plead their basic elements at all.

Regarding laches, Defendants first assert the caselaw cited by the FTC does not stand for the "sweeping rule" that "laches is not available against the federal government when it

---

[8] Defendants rely on a Second Circuit case from 1953 for the proposition that the "serious questions" standard applies only "*if* 'the balance of hardships tips decidedly toward plaintiff.'" Opp'n at 13-14 (emphasis in original). But that case pre-dates Section 13(b) by two decades.

7

undertakes to enforce a public right or protect the public interest." Opp'n at 18. But the FTC quoted *verbatim* Second Circuit precedent, *United States v. Angell*, 292 F.3d 333 (2d Cir. 2002), which Defendants deliberately obscure by omitting the quotation marks and citations when quoting the FTC's brief. Defendants next claim the Second Circuit could not have intended what it clearly stated in *Angell* (Opp'n at 18-19), but ignore that this Court is bound by the Second Circuit regardless. *B.C. ex rel. B.M. v. Pine Plains Cent. School Dist.*, 971 F. Supp. 2d 356, 364 n.2 (S.D.N.Y. 2013). Moreover, the Second Circuit has expressly stated that the out-of-circuit authority on which Defendants rely "does not disturb" the statement in *Angell* that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278, 279 n.8 (2d Cir. 2005). And *Angell* is no outlier; other Second Circuit decisions have reached the same holding. *E.g.*, *SEC v. Durante*, 641 F. App'x 73, 77 (2d Cir. 2013); *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982); *United States v. 93 Court Corp.*, 350 F.2d 386, 388-89 (2d Cir. 1965).[9]

Defendants' arguments regarding equitable estoppel fare no better but follow the same playbook: ignore Second Circuit precedent. Defendants contend that there are "open questions" regarding the applicability of the "affirmative misconduct" requirement. Opp'n at 21. Not so in the Second Circuit, where the court has repeatedly concluded the government cannot be equitably estopped absent a showing of affirmative misconduct, even when actions at issue are those of the Attorney General (hardly a "lower-level" employee), *Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000), or an agency collectively, *Durante*, 641 F. App'x at 77-78. Defendants

---

[9] Despite the case law barring their laches defense, Defendants claim they "are entitled to preserve it at this stage and develop whatever record may be appropriate for appellate review." Opp'n at 19. That approach would wipe Rule 12(b) and Rule 12(f) off the books. If the Second Circuit is so inclined to revisit decades of its precedent, this motions practice preserves the issue.

8

have no answer to that caselaw, other than to state the Supreme Court "has declined to endorse" the affirmative misconduct requirement. Opp'n at 21. That is of no help, though, as the Supreme Court has repeatedly questioned whether equitable estoppel could *ever* succeed against the government *at all* and has "reversed every finding of estoppel that [it has] reviewed." *Office of Personal Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990) (collecting cases).

Even if they were not barred under well-established Second Circuit law, the equitable defenses are still insufficiently pled. Defendants argue that they have a lesser burden for ultra vires defenses (Opp'n at 19), but do not assert such defenses. *SEC v. Rayat*, 2021 WL 4868590, at *4 (S.D.N.Y. Oct. 18, 2021) (laches and equitable estoppel "are more akin to those needed to plead a statute-of-limitations defense than those needed to plead an ultra vires defense" (internal quotation marks omitted)). Even if *Twombly* did not apply here, Defendants do not bother to even invoke the elements of their defenses.[10] The defenses further fail because the FTC can challenge Defendants' roll-up strategy. *E.g.*, *ITT v. GTE*, 449 F. Supp. 1158, 1174-75 (D. Hawaii 1978) ("series of acquisitions, even if severably legal, may when assembled together produce a synergistic effect of restraining trade"). And nothing in the antitrust laws suggests there can be only one relevant market so as to create any inconsistency with *Google*. *E.g.*, *United States v. Bertelsmann SE & Co.*, 646 F. Supp. 3d 1, 28 (D.D.C. 2022) ("the viability of [] additional markets does not render the one identified by the government unusable").

### III.   THE FTC HAS SHOWN PREJUDICE.

Defendants mischaracterize the FTC's argument regarding prejudice. To be clear, that

---

[10] Concerning laches, Defendants boldly claim that "[t]here is no question the FTC knew of those transactions, that the FTC has not taken any action on them and did not include them in this complaint, or that Defendants would be prejudiced if the FTC did so now" (Opp'n at 19-20), but that is not what Defendants pled, and they cite to nothing in the record to substantiate it.

argument is *not* that these defenses might succeed; it is that Defendants improperly circumvent the statutory scheme and Federal Rules by casting what they admit are separate claims (Opp'n at 14) as affirmative defenses. And given the import of the far-reaching constitutional challenges asserted, that scheme and the Rules contemplate participation by the Department of Justice, service of process on the Department of Justice, and 60 days for the United States to respond. 15 U.S.C. § 56(a); Fed. R. Civ. P. 4(i)(1)-(2), 12(a)(2). Those requirements may be too "intrusive" for Defendants' manufactured fast-track (9/6/2023 Hr'g Tr. at 25), but they are exactly why the government will suffer prejudice if these claims are heard on an expedited basis.[11]

With respect to their equitable defenses, Defendants cannot argue that they do not yet have information to properly plead the elements of these defenses (Opp'n at 19), but later contend that they do not intend to seek any discovery about them (*id.* at 25).

\* \* \*

Defendants conclude by asserting that this Court need not reach the affirmative defenses at all if it denies the FTC's motion for a preliminary injunction. *Id*. This statement only highlights the impropriety of raising their constitutional challenges in this manner. A denial of a preliminary injunction motion does not mean the administrative case ceases to exist. *See* Ex. A (Order Returning Matter to Adjudication, *In the Matter of Microsoft Corp.*, FTC Docket No 9412). Defendants cannot escape the constitutional harms that they claim they will suffer through their affirmative defenses: they must seek an injunction.  That they have not done so serves to only show the real "unnecessary distraction" in this case (Opp'n at 2): these improper defenses.

---

[11] Defendants rely on caselaw applying Rule 403 to argue issues "outside the courtroom" are irrelevant in assessing prejudice—but that is not true under Rule 12(f). *E.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002) (allegations "harm Ness Motley in the public eye"); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).

Dated: October 11, 2023                             Respectfully submitted,

<u>/s/ *Jennifer Fleury*</u>

Jennifer Fleury
Stephen Mohr
Jordan Andrew
Varnitha Siva
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
jfleury@ftc.gov
smohr@ftc.gov
jandrew@ftc.gov
vsivaprasad@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*