UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

                  Plaintiff,

      – *against* –

IQVIA HOLDINGS INC. *and* PROPEL
MEDIA, INC.,

                Defendants.

**<u>OPINION & ORDER</u>**

23 Civ. 06188 (ER)

<u>Ramos</u>, D.J.:

      The Federal Trade Commission (FTC) has moved to strike several constitutional and equitable defenses asserted by IQVIA Holdings Inc. and Propel Media, Inc. (Defendants). Doc. 146. For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND

      On July 18, 2023, the FTC filed this action to preliminarily enjoin IQVIA's proposed acquisition of Propel. Doc. 1 at 1. IQVIA is "the world's largest healthcare data provider"; Propel is the owner of DeepIntent, "a leading demand-side platform [] that targets healthcare professionals [] and other healthcare consumers in the programmatic digital healthcare advertising industry." *Id.* ¶ 1. The FTC alleges that the proposed acquisition would "substantially lessen competition by combining two of the top three providers of programmatic advertising targeted specifically at U.S.-based [healthcare professionals] on a one-to-one basis." *Id.*

      The FTC sought a preliminary injunction pursuant to section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). *Id.* ¶ 130. An evidentiary hearing before this Court is set to begin on November 20, 2023, and conclude by December 1, 2023. The FTC administrative proceedings are scheduled to begin on December 20, 2023. *See id.* at 2.

In the meantime, the FTC has moved to strike affirmative constitutional and equitable defenses that IQVIA and Propel raised in their answers.  IQVIA's constitutional defenses assert that:

- "The FTC's parallel administrative proceedings are invalid and unconstitutional because the structure of the FTC violates the U.S. Constitution (including Article II) and the separation of powers. . . ."  Doc. 56 at 18 (IQVIA's Tenth Defense).

- "The FTC's parallel administrative proceedings are invalid and unconstitutional because the FTC is designed as a bipartisan independent agency, but the deliberations relating to the complaint and the vote thereon involved only three Democratic Commissioners, with no Republic [*sic*] Commissioners participating." *Id.* at 18–19 (IQVIA's Eleventh Defense).

- "The absence of bipartisan deliberations also is an independent and supporting reason that the Commissioners' protection from for-cause removal is unconstitutional and in violation of the separation of powers."  *Id.* at 19 (IQVIA's Twelfth Defense).

- "The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Due Process Clause because they deprive IQVIA of a fair opportunity to rebut the government's factual assertions before a neutral decisionmaker. . . ." *Id.* (IQVIA's Thirteenth Defense).

- "The FTC's parallel administrative proceedings are invalid and unconstitutional under the Fifth Amendment Equal Protection Clause because they expose persons and entities to differential treatment for arbitrary reasons. . . ." *Id.* at 19–20 (IQVIA's Fourteenth Defense).

- "The FTC's parallel administrative proceedings are invalid and unconstitutional because adjudication of the FTC's Complaint by the ALJ violates the U.S. Constitution (including Articles II and III) and the separation of powers. . . ." *Id.* at 20 (IQVIA's Fifteenth Defense).

Propel's answer raises similar constitutional defenses, asserting that:

- "The FTC's structure is unconstitutional because the constraints on removal of the Commissioners violate Article II of the Constitution and the separation of powers. . . ."  Doc. 70 at 28 (Propel's Tenth Defense).

- "These proceedings are invalid because the structure of the FTC is as a bi-partisan independent agency and deliberations relating to the complaint and the related vote involved only three Democratic Commissioners with no Republican Commissioners." *Id.* (Propel's Eleventh Defense).

2

- ▪ "The FTC's structure is unconstitutional because the constraints on for cause removal of the Administrative Law Judge violate Article II of the Constitution and the separation of powers. . . ." *Id.* (Propel's Twelfth Defense).

- ▪ "The FTC violates Propel Media's right to Equal Protection under the Fifth Amendment due to the Department of Justice, Antitrust Division [] and FTC's black box clearance process. . . ." *Id.* at 28–29 (Propel's Thirteenth Defense).

- ▪ "The FTC violates Propel Media's due process rights under the Fifth Amendment by depriving Respondents of their right to adjudication before a neutral arbiter. . . ." *Id.* at 29 (Propel's Fourteenth Defense).

In addition to these constitutional defenses, both answers raise equitable defenses of laches and estoppel.  Doc. 56 at 20 (IQVIA's Seventeenth and Eighteenth Defenses); Doc. 70 at 29–30 (Propel's Sixteenth and Seventeenth Defenses).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), a court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" of its own accord or on motion by a party.  Motions to strike, however, are generally disfavored, *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at *2 (S.D.N.Y. Feb. 14, 2017), and "courts should not tamper with the pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Courts in this Circuit have traditionally applied a three-part test to motions to strike an affirmative defense:  "In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that:  (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."  *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (alteration in original) (quoting *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).

Revisiting this test in *GEOMC*, the Second Circuit explained that the first factor should be governed by the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—with the caveat that "applying the plausibility standard to any pleading

is a 'context-specific' task."  918 F.3d at 97–98 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The second factor remained the same:  "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *Id.* at 98.  As for the third factor, the court said that whether prejudice "should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense will normally depend on when the defense is presented."  *Id.*

## III.  DISCUSSION

With respect to both the constitutional and equitable defenses, the Court agrees with the FTC that the defenses are either legally insufficient or inadequately pled and that the FTC would be prejudiced by their inclusion.  Accordingly, these defenses are stricken with prejudice.

### A.  Constitutional Defenses

Section 13(b) authorizes the FTC to obtain a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest."  15 U.S.C. § 53(b).  According to the FTC, this requires a two-pronged approach:  First, the district court considers whether the FTC has "a fair and tenable chance of ultimate success on the merits."  Doc. 147 at 9 (quoting *FTC v. Crescent Publ'g Grp., Inc.*, 129 F. Supp. 2d 311, 319 (S.D.N.Y. 2001)).  Second, the court must "consider the equities."  *Id.* at 10 (quoting *Crescent Publ'g*, 129 F. Supp. 2d at 319).

The FTC contends that Defendants' constitutional defenses are immaterial to both prongs and therefore provide "a legally insufficient basis for precluding a plaintiff from prevailing on its claims."  *Id.* at 13 (quoting *GEOMC*, 918 F.3d at 98).

### 1.  "Likelihood of Ultimate Success"

On the first prong, the FTC asserts that the inquiry "focuses on the antitrust merits of the case and the likelihood of success in the underlying administrative proceedings."  *Id.* at 9.  In Defendants' view, however, the likelihood of ultimate success "refers to the

likelihood of an outcome favorable to the FTC as the final result." Doc. 156 at 6. In other words, "'success' must be measured by the final resolution of the proceedings" rather than by the chances of success on the antitrust merits in the administrative proceedings. *Id.* at 9. And if the constitutional defects they have alleged turn out to be valid, Defendants reason, then any judgment against them in the administrative proceedings will be vacated upon judicial review. *Id.* at 7.

The Court agrees with the FTC that the constitutional defenses raised here are immaterial to the section 13(b) inquiry. The overwhelming weight of the case law indicates that the relevant metric of "success" concerns the antitrust merits in the underlying proceedings. In *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088 (S.D.N.Y. 1977), for instance, the court explained that the FTC can satisfy the "likelihood of success" prong by showing "that it has a fair and tenable chance of ultimate success on the merits." *Id.* at 1090. This requirement is satisfied, the court said, "if the FTC has raised *questions going to the merits* so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." *Id.* at 1091 (emphasis added). The focus, then, is on the merits—not on constitutional issues. It would make little sense to conclude that questions about the constitutionality of the FTC warrant "thorough investigation, study, deliberation and determination" by the FTC itself. *Cf. Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021) (noting that "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise").

Several courts have adopted or endorsed *Lancaster*'s articulation of the governing standard in a section 13(b) action. That includes the Second Circuit, which discussed section 13(b) in *United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184 (2d Cir. 1984). Although that case involved injunctive relief under a different statute—the Flammable Fabrics Act (FFA)—the court noted that *Lancaster* had interpreted section 13(b) to

require a showing of "a fair and tenable chance of ultimate success on the merits." *Id.* at 188. The court said that the application of that standard to the FFA "strikes us as appropriate." *Id.*; *see also, e.g.*, *FTC v. Verity Int'l, Ltd.*, 194 F. Supp. 2d 270, 281 (S.D.N.Y. 2002) (court must "determine that the FTC has a fair and tenable chance of ultimate success on the merits"); *Crescent Publ'g*, 129 F. Supp. 2d at 319 (same).[1]

Additionally, the *Sun & Sand* court discussed a conference report issued when Congress enacted section 13(b). 725 F.2d at 188 n.6; *see* H.R. Rep. No. 93-624 (1973) (Conf. Rep.). That report had cited and "sought to codify the standard of the decisional law as illustrated by *Federal Trade Commission v. Sterling Drug, Inc.*, 317 F.2d 669 (2d Cir. 1963)." *Sun & Sand*, 725 F.2d at 188 n.6; *see* H.R. Rep. No. 93-624, at 31. While the court found that citation "odd," it explained that Congress presumably intended to adopt "the *analysis* of the case, *i.e.*, an inquiry as to whether the agency had shown a basis for believing that the statute would be violated plus a showing that the public interest warranted an injunction." *Sun & Sand*, 725 F.2d at 188 n.6. That is consistent with the conclusions of numerous other courts that the analysis focuses on the antitrust merits. *See, e.g.*, *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001) (noting that the likelihood of success inquiry was focused on "the probability that, after an administrative hearing on the merits," the FTC would succeed in showing a violation of section 7 of the Clayton Act); *FTC v. Freeman Hosp.*, 69 F.3d 260, 268 n.12 (8th Cir. 1995) (explaining that "questions going to the merits" refers to "questions regarding the ultimate merits in a Clayton Act case—the lessening of competition"); *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir. 1991) (court must "determine the likelihood

---

[1] The Second Circuit also observed that it did not see "any significant difference between the 'serious question' standard and the 'fair and tenable chance' standard." *Sun & Sand*, 725 F.2d at 188 n.5. Here, Defendants object to the "fair and tenable chance" standard, arguing that it was "created out of whole cloth" by the *Lancaster* court. Doc. 156 at 8. Defendants do not elaborate on what the correct test is, and the Second Circuit's comments suggest that the standards are "interchangeable." *Sun & Sand*, 725 F.2d at 188 n.5. But since the Court finds that the constitutional defenses would not be material to the FTC's "likelihood of ultimate success" under any standard, it need not resolve at this point whether the "fair and tenable chance" standard or some other test will ultimately apply to the section 13(b) inquiry.

that the FTC will ultimately succeed on the merits"); *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984) (court's task is to make "a preliminary assessment of the merger's impact on competition").

Another district court presented with this issue reached the same conclusion in *FTC v. Meta Platforms Inc.*, No. 22 Civ. 04325 (EJD), 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022). In that section 13(b) proceeding, the defendants asserted certain affirmative defenses based on bias and constitutional issues. *Id.* at *2. In addressing the bias defenses, the court analyzed "whether Section 13(b) requires evaluation of the FTC's success in its own administrative forum or before a Court of Appeals." *Id.* at *4. The court concluded that the "overall weight of case law applying Section 13(b)" indicated that "courts predict likelihood of success on the merits at the FTC's administrative proceedings." *Id.* Several other courts have focused their inquiry on "the underlying agency proceedings rather than on a hypothetical appeal from a yet-to-be-developed administrative record." *Id.* at *5 (collecting cases). And the *Meta* defendants failed to identify "any case where a district court—in evaluating the likelihood of FTC success for a Section 13(b) injunction request—considered evidence of the FTC's alleged bias or administrative due process violations." *Id.* at *6.[2]

Defendants take issue with *Meta*, arguing that it is unclear whether the decision supports the FTC's position because the court ultimately struck the constitutional defenses as inadequately pled. Doc. 156 at 12. But with respect to the bias-related defenses, the *Meta* court indisputably decided that the section 13(b) inquiry focuses on the likelihood of success in the underlying administrative proceedings—not on appeal. *See Meta*, 2022 WL 16637996, at *4–6; *see also id.* at *6 ("[T]he Court interprets 'on the

---

[2] *See also FTC v. Microsoft Corp.*, --- F. Supp. 3d ---, No. 23 Civ. 02880 (JSC), 2023 WL 4443412, at *9 (N.D. Cal. July 10, 2023) ("The Court is persuaded by the *Meta* court's analysis of [which forum the likelihood of ultimate success should be measured in] and adopts it here—the relevant forum for the question of likelihood of success is before the ALJ in the administrative proceedings."), *appeal filed*, No. 23-15992 (9th Cir. July 13, 2023).

merits' here to mean the action's Section 7 antitrust merits, as distinguishable from any procedural due process issues arising from the FTC's proceedings."). The court then went on to explain that its assessment of the constitutional defenses "overlap[ped] significantly" with its analysis of the bias-related defenses, "particularly regarding the Court's ability to consider these arguments in the limited procedural posture of a Section 13(b) preliminary injunction request." *Id.* at *7. Defendants fail to explain why the scope of the predictive inquiry would be different in the context of bias-related defenses as opposed to constitutional defenses.[3]

Defendants further object that *Meta*'s reasoning lacks persuasive force because the court did not "undertake any serious effort at statutory interpretation." Doc. 156 at 13. On Defendants' account, the definition of "ultimate" suggests that the inquiry is focused on "the likelihood of an outcome favorable to the FTC as the final result." *Id.* at 6. Again, however, the *Meta* court's understanding of the section 13(b) inquiry as concentrated on the antitrust merits is supported by decades of case law interpreting the statute. *See supra* at 5–7; *see also* Doc. 159 at 3–4 & n.3 (collecting cases). Defendants offer no authority of their own to suggest that the inquiry includes constitutional issues that have nothing to do with the FTC's chances of establishing a violation of the antitrust laws. And while Defendants' preferred dictionary entries define "ultimate" with reference to finality, *see* Doc. 156 at 5, other dictionaries indicate that the term can also mean "eventual"—which is consistent with the view that "ultimate success" refers to success in the administrative proceedings, *see Ultimate*, Merriam-Webster Online,

---

[3] Defendants criticize the *Meta* court's use of the term "on the merits" because it does not appear in section 13(b). Doc. 156 at 13 (quoting *Meta*, 2022 WL 16637996, at *6). But the *Meta* court was simply following the guidance of the Ninth Circuit, which has said—like numerous other courts—that section 13(b) requires the court to "determine the likelihood that the Commission will ultimately succeed on the merits." *Meta*, 2022 WL 16637996, at *4 (quoting *Warner*, 742 F.2d at 1160); *see also, e.g.*, *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337 (3d Cir. 2016) ("We first consider the FTC's likelihood of success on the merits.").

https://www.merriam-webster.com/dictionary/ultimate (last visited Oct. 31, 2023). The Court therefore declines to adopt Defendants' novel construction of the statute.

The broader context of section 13(b) also favors the FTC's interpretation. As other courts have noted, section 13(b) "was not designed to innovate." *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1082 (D.C. Cir. 1981). Instead, Congress intended to codify the prevailing approach that courts had followed when agencies sought interim relief. *Id.* Under that approach, the agency "was not held to the high thresholds applicable where private parties seek interim restraining orders." *Id.* And those cases "lightened the agency's burden by eliminating the need to show irreparable harm." *Id.* It would be odd to construe section 13(b)—which adopted an approach that reduced agencies' burden and imposed a lower threshold than is applicable to private parties—as opening the door to any imaginable challenge to the validity of FTC proceedings. Limiting the inquiry to questions about the antitrust merits, therefore, better fits the aims of the statute. *Cf. Sun & Sand*, 725 F.2d at 188 n.6 (noting that Congress "[p]resumably" intended to adopt "an inquiry as to whether the agency had shown a basis for believing that the statute would be violated").

Nor are Defendants' other arguments persuasive. For instance, they contend that the FTC's position is "contradicted by equitable practice" because courts evaluating preliminary injunction requests "routinely consider issues beyond the substantive merits of the plaintiff's claim." Doc. 156 at 10–11 (collecting cases). But the case law is clear that the section 13(b) inquiry is distinct from that of a traditional preliminary injunction request. *See, e.g.*, *H.J. Heinz*, 246 F.3d at 714 (explaining that Congress "intended this standard to depart from what it regarded as the then-traditional equity standard"); *Sun & Sand*, 725 F.2d at 188 n.6 ("Congress made clear that it did not intend to adopt the traditional test for a preliminary injunction applicable to private party litigation."). And again, Defendants have not pointed to any section 13(b) case in which a court has gone beyond the antitrust merits to analyze whether a preliminary injunction was warranted.

Defendants also argue that success before the administrative tribunal cannot be the relevant metric because the FTC's track record in such proceedings would mean that "the FTC could obtain a preliminary injunction as a matter of course in every case." Doc. 156 at 12. The *Meta* court explained why this argument is incorrect: "District courts do not determine 'likelihood of success' by a statistical calculation of the parties' odds, but instead are charged with exercising their 'independent judgment' and evaluating the FTC's case and evidence on the merits." 2022 WL 16637996, at *5 (quoting *Lancaster*, 434 F. Supp. at 1090). In other words, a court's exercise of judgment to evaluate the likelihood of success on the antitrust merits does not turn on whether the FTC typically wins in its administrative proceedings.

Finally, Defendants point out that they could have filed a separate action or counterclaims raising these constitutional issues. Doc. 156 at 14. If those constitutional arguments would be sufficient to enjoin the underlying proceedings in a separate action, Defendants reason, then they should also be sufficient to determine whether a preliminary injunction should issue here. *Id.*

This argument only highlights the oddity of resolving the constitutional challenges in a section 13(b) proceeding. To see why, assume Defendants are right that the proper inquiry focuses on whether the FTC is likely to succeed in showing an antitrust violation *and* likely to succeed on the question whether the structure of the FTC is constitutionally sound. If the Court ruled in Defendants' favor, concluding that the FTC was not likely to succeed on the constitutional question, the limited effect of that decision would be to deny the FTC a preliminary injunction. But that is all the decision would do; it would not stop the FTC from moving forward with the very administrative proceedings that Defendants contend are unconstitutional. It makes more sense, then, for the constitutional challenges to be resolved in a separate action. If Defendants prevailed on their constitutional claims in *that* context, the FTC would be enjoined from proceeding against them—and the harm to Defendants would be redressed. *Cf. Axon Enter., Inc. v.*

*FTC*, 598 U.S. 175, 192 (2023) (emphasizing that parties challenging agencies' constitutional authority to proceed were objecting to "the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process"). That sequence is much more logical than the one contemplated by Defendants' position.

Accordingly, the Court concludes that the constitutional defenses are not material to the FTC's "ultimate likelihood of success" on the antitrust merits.

    2.  *"The Equities"*

Under the second prong of the section 13(b) inquiry, a court must consider "the equities." The FTC argues that this analysis accounts for only "public equities" rather than "the usual equities of private litigation." Doc. 147 at 10 (quoting *Lancaster*, 434 F. Supp. at 1096). Defendants respond that the relevant equities "'[are] not qualified' by the statute." Doc. 156 at 14 (alteration in original) (quoting *Weyerhaeuser*, 665 F.2d at 1083).

As another court in this District has noted, "[t]here is some disagreement among circuits about the weight to be given private hardship." *Crescent Publ'g*, 129 F. Supp. 2d at 319 n.52. Some courts have said that private equities "are not proper considerations for granting or withholding injunctive relief under § 13(b)." *FTC v. Food Town Stores, Inc.*, 539 F.2d 1339, 1346 (4th Cir. 1976). Other courts have said that "it is proper to consider private equities in deciding whether to enjoin a particular transaction," though such concerns are afforded "little weight." *Univ. Health*, 938 F.2d at 1225. "The prevailing view is that, although private equities may be considered, they are not to be afforded great weight." *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352 (3d Cir. 2016).

In any event, neither public nor private equities are implicated by Defendants' constitutional defenses. Here too, *Meta* is instructive. The court explained that while "Defendants' allegations of agency bias or due process violations appear to be relevant equitable considerations at first glance, courts applying Section 13(b) consider a narrower

set of equities." *Meta*, 2022 WL 16637996, at *6. The relevant public equities include "economic effects and pro-competitive advantages for consumers and effective relief for the commission." *Id.* (quoting *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989)). And to the extent private equities are relevant, they "are not typically those arising out of the FTC's administrative proceedings themselves, but rather the private consequences resulting from the requested injunction." *Id.* Accordingly, the court concluded that the defendants' allegations of bias "would not be pertinent in its balancing of equities." *Id.*

The same is true in this case. While the *Meta* court analyzed the equities in the context of bias-related defenses, Defendants here do not explain why the analysis should be any different in the context of constitutional defenses. And again, the *Meta* court explicitly stated that there was significant overlap in its analysis of the constitutional defenses, "particularly regarding the Court's ability to consider these arguments in the limited procedural posture of a Section 13(b) preliminary injunction request." *Id.* at *7.

Defendants rely on case law observing that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." Doc. 156 at 15 (citing *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); *see also id.* at 16 (asserting that "it is contrary to the public interest to issue an injunction based on the unconstitutional exercise of authority by the FTC"). With respect to private equities, likewise, Defendants assert that it would be inequitable to force them to suffer the adverse effects of a preliminary injunction "if any adverse judgment against them will ultimately be vacated on constitutional grounds." *Id.* at 16.

As discussed above, however, resolving these issues in Defendants' favor would not prevent the alleged constitutional violations because it would do nothing to halt the FTC administrative proceedings. *See supra* at 10–11. As the FTC points out, it is not even required to seek a preliminary injunction while pursuing a case in its own administrative forum. *See* Doc. 159 at 5 n.6 (citing language in section 13(b) providing

that the FTC "may" bring suit in district court).  The Supreme Court explained in *Axon Enterprise* that these kinds of constitutional claims are about "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker."  598 U.S. at 191.  That type of injury would not be redressed by the Court's declining to enter a preliminary injunction under section 13(b).

*   *   *

The Court concludes that the constitutional defenses are not material to either prong—the FTC's likelihood of success or the weighing of the equities—of the section 13(b) inquiry.  As a result, the defenses are "legally insufficient bas[es] for precluding [the FTC] from prevailing on its claims."  *GEOMC*, 918 F.3d at 98.  And there is no issue of fact that might allow the defense to succeed, as Defendants have conceded that these are questions of law.  *See, e.g.*, Doc. 134 at 3 (stating that "there are no disputed factual issues with respect to [the challenged affirmative] defenses").

The Court also finds that the FTC would be prejudiced by inclusion of the constitutional defenses in these proceedings.  For one, the defenses "threaten to shift litigation attention and discovery towards the FTC's actions, rather than Defendants' actions."  *Meta*, 2022 WL 16637996, at *7 (quoting *FTC v. Am. Tax Relief, LLC*, No. 11 Civ. 6397 (DSF) (PJW), 2011 WL 13135578, at *1 (C.D. Cal. Oct. 19, 2011)).

In addition, these sorts of constitutional challenges "are fundamental, even existential."  *Axon Enter.*, 598 U.S. at 180.  The FTC would suffer prejudice if it were forced to litigate these challenges amid a section 13(b) proceeding involving complex factual disputes and technical questions of antitrust law.  *Cf.* Doc. 87 at 19 (Defendants asserting that "ruling on the FTC's motion will require the Court to resolve numerous factual disputes").  Moreover, this case is proceeding on an expedited schedule due in part to commercial considerations raised by Defendants.  *See* Doc. 144 at 38 (IQVIA's counsel discussing the "compressed time schedule"); *id.* at 40 (the Court stating that it will issue its opinion by December 29, 2023).  While such urgency may be warranted to

13

decide whether a preliminary injunction should issue, it makes little sense to subject a decision on the constitutionality of the FTC to the same fast-tracked timetable. That is especially true because, as discussed above, a decision in Defendants' favor at this stage would not actually redress their alleged constitutional injuries.

If Defendants wish to raise these constitutional defenses in a separate proceeding, they are free to do so. *Cf. Meta*, 2022 WL 16637996, at *7 ("The Court makes no opinion as to Defendants' likelihood of success on its objections to the FTC's agency process . . . ."). But a section 13(b) proceeding is not the proper forum to resolve these weighty questions.

The constitutional defenses are stricken with prejudice.

### B. Equitable Defenses

Defendants have also asserted equitable defenses of laches and estoppel. Doc. 56 at 20; Doc. 70 at 29–30. The FTC has moved to strike these defenses as well, arguing that they are both legally insufficient and inadequately pled. Doc. 147 at 13–17.

#### 1. Laches

First, with respect to laches, both Defendants state: "Any potential claims or assertions by the FTC that IQVIA's prior acquisitions of Lasso, DMD, or MDG substantially lessened competition in any relevant market are barred by the doctrine[] of . . . laches." Doc. 56 at 20; Doc. 70 at 29. A laches defense typically requires a showing that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Republic of Turkey v. Christie's Inc.*, 62 F.4th 64, 71 (2d Cir. 2023) (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)).

The Second Circuit has said, however, that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002). The court reaffirmed that conclusion in *Cayuga Indian Nation v. Pataki*, 413 F.3d 266 (2d Cir. 2005). *Id.* at

279 n.8 ("Our holding here thus does not disturb our statement in [*Angell*] that 'laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest,' inasmuch as this case does not involve the enforcement of a public right or the protection of the public interest.").

Defendants retrace the path *Angell* took and criticize the cases upon which the court relied. *See* Doc. 156 at 18–19. Invoking a decision from another circuit, Defendants insist that there is "very much a live and unsettled question regarding when and under what circumstances laches may be available against the government." *Id.* at 19 (citing *United States v. Admin. Enters., Inc.*, 46 F.3d 670, 672–73 (7th Cir. 1995)). That may be, but it is at least settled in this Circuit. And "it goes without saying, that it is not the province of this Court to disregard binding Second Circuit precedent." *Cadlerock Props. Joint Venture, L.P. v. Schilberg*, No. 01 Civ. 896 (MRK), 2005 WL 1683494, at *8 (D. Conn. July 19, 2005). The Court declines Defendants' invitation to do so here.

Defendants also suggest that "[i]t is not even clear whether the Second Circuit's decision in *Angell* turned on the availability of laches against the government or on the circumstances of the particular case." Doc. 156 at 19. In the Court's view, *Angell* could hardly have been more clear regarding the unavailability of laches against the government. But even if it were not, Defendants' position would still be foreclosed by subsequent Second Circuit decisions reaffirming *Angell*'s conclusion. *See, e.g.*, *SEC v. Durante*, 641 F. App'x 73, 77 (2d Cir. 2016); *Cayuga*, 413 F.3d at 279 n.8; *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005).[4]

---

[4] To the extent Defendants would like to ask the Second Circuit to revisit this issue, they have preserved their ability to do so by raising it in the briefing here. But that does not mean the Court must leave the defenses in the case to allow Defendants to develop a record. *See* Doc. 156 at 19; *see also id.* at 21 (making a similar argument with respect to the estoppel defense). The whole point of a motion to strike is to avoid spending time on legally irrelevant defenses. *See, e.g.*, *Simon v. Mfrs. Hanover Tr. Co.*, 849 F. Supp. 880, 882 (S.D.N.Y. 1994) (observing that motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case" (citation omitted)).

The state of the law in this Circuit, then, is well settled:  laches is not available against the government when it undertakes to protect the public interest.  And there can be no dispute that the FTC commenced this action to protect the public interest.  The "very purpose of the Federal Trade Commission Act—which the FTC is enforcing in this action—'is to protect the public.'"  *FTC v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551 (ILG) (RLM), 2011 WL 13295634, at *4 (E.D.N.Y. Oct. 5, 2011) (quoting *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1368 (11th Cir. 1988)); *see also* 15 U.S.C. § 53(b) (providing that the FTC may bring suit when it has reason to believe a preliminary injunction "would be in the interest of the public").  So a laches defense is not available.  *See, e.g.*, *FTC v. Quincy Bioscience Holding Co.*, No. 17 Civ. 124 (LLS), 2020 WL 1031271, at *2 (S.D.N.Y. Mar. 2, 2020) ("Because the FTC brought this action to protect the public interest, there is no question of law or fact that would allow defendants to succeed on the defense of laches . . . .");  *Consumer Health*, 2011 WL 13295634, at *6 (collecting cases and noting that "courts in this Circuit and others routinely grant motions to strike a laches defense when it is asserted against the FTC").[5]

Additionally, the Court finds that the FTC would be prejudiced if it were required to litigate the laches defense.  *See, e.g.*, *Quincy*, 2020 WL 1031271, at *2 (concluding that FTC "would be prejudiced by having to spend time and resources on litigating an invalid defense"); *SEC v. PacketPort.com*, No. 05 Civ. 1747 (JCH), 2006 WL 2798804, at *4 (D. Conn. Sept. 27, 2006) (finding that SEC "would be prejudiced by having to waste any amount of time responding to a legally insufficient laches defense").

---

[5] Defendants further argue that both the laches and estoppel defenses are relevant to "weighing the equities" under section 13(b).  Doc. 156 at 22.  Even assuming that view is correct, it is not decisive as to whether the defenses can survive a motion to strike.  *See, e.g.*, *City of New York v. FedEx Ground Package Sys., Inc.*, 314 F.R.D. 348, 358 n.4 (S.D.N.Y. 2016) (granting motion to strike certain defenses while noting that "the Court can balance equitable considerations in its determination as to whether injunctive relief is warranted under the [Contraband Cigarette Trafficking Act], should that be necessary"); *New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 648 n.11 (S.D.N.Y. 2016) (where equitable defenses were relevant to the imposition of injunctive relief, court still granted motion to strike and explained that "[a] separate defense is not required as the concept is already embedded in the concept of the requested relief itself"), *vacated in part on other grounds*, No. 15 Civ. 1136 (KBF), 2016 WL 10672074 (S.D.N.Y. June 21, 2016).

The laches defense is stricken with prejudice.

2.   *Estoppel*

Defendants also invoke the doctrine of equitable estoppel.  Specifically, they assert that the doctrine "binds the FTC to the claims, assertions, and admissions made by the U.S. Government about the digital advertising industry in the lawsuit currently pending against Google in the Eastern District of Virginia under Section 1 and Section 2 of the Sherman Act that, among other things, alleges that Google is a monopolist in digital advertising and that Google has a significant market share as a [demand side platform]."  Doc. 56 at 20.[6]  *See generally United States v. Google LLC*, No. 23 Civ. 108 (LMB) (JFA) (E.D.V.A.).

Ordinarily, equitable estoppel is proper if "the enforcement rights of one party would create injustice to the other party who has justifiably relied on the words or conduct of the party against whom estoppel is sought."  *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 93 n.3 (2d Cir. 2006).  The doctrine may apply where:  "(1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely on it; (2) and the other party reasonably relies upon it; (3) to her detriment."  *Id.* (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)).

It is well established, however, that "the Government may not be estopped on the same terms as any other litigant."  *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549, 558 (W.D.N.Y. 2020) (quoting *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984)).  The doctrine applies against the government only "'in the most serious of circumstances' when a party has reasonably and detrimentally relied on the government's misrepresentation, and the government has engaged in affirmative misconduct."  *Davila v.*

---

[6] Propel's answer includes the same language except for the very last line, which states that "Google has a dominant [demand side platform]."  Doc. 70 at 30.  None of the parties have suggested that this difference should affect the Court's analysis.

*Lang*, 343 F. Supp. 3d 254, 283 (S.D.N.Y. 2018) (quoting *United States v. Sampson*, 898 F.3d 270, 285 (2d Cir. 2018)).   There is an "extraordinarily strong presumption against applying equitable estoppel against the government."  *Sampson*, 898 F.3d at 285; *see also, e.g.*, *Drozd v. INS*, 155 F.3d 81, 90 (2d Cir. 1998) ("The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances and is applied with the utmost caution and restraint." (internal quotation marks and citations omitted)).[7]

That presumption cannot be overcome here.  For one, Defendants have not offered any allegations indicating that they relied to their detriment on the Department of Justice's position in the *Google* litigation.  *See, e.g.*, *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426–27 (S.D.N.Y. 2010) (striking estoppel defense where there was "no indication that the Defendants relied, to their detriment or otherwise, on any conduct by the Plaintiffs"); *SEC v. Sarivola*, No. 95 Civ. 9270 (RPP), 1996 WL 304371, at *2 (S.D.N.Y. June 6, 1996) (striking estoppel defense where defendants "offered nothing to suggest there has been any conduct by the Commission upon which they relied, let alone that they changed their position for the worse").

Nor have Defendants identified any "misrepresentation of fact" that the government made to them.  In fact, Defendants' own brief underscores the deficiency of their asserted defense.  Defendants state that they "do not know what precise theories the FTC intends to press and whether or to what extent those theories will conflict with what the DOJ is contemporaneously arguing in the *Google* litigation."  Doc. 156 at 21.  That makes it even more difficult to understand how there could have been a material

---

[7] Defendants again quibble about the appropriate test, arguing that there are "open questions" as to whether and when the affirmative misconduct standard applies.  Doc. 156 at 21.  But in this Circuit, it is clear that the affirmative misconduct requirement must be satisfied in order to apply equitable estoppel against the government.  *See, e.g.*, *SEC v. Durante*, 641 F. App'x 73, 78 (2d Cir. 2016) (rejecting estoppel defense in part because defendant "fails to make the showing of 'affirmative misconduct' necessary to succeed on this defense"); *Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) (explaining that "estoppel will only be applied upon a showing of 'affirmative misconduct' by the government").

misrepresentation on the government's part, or detrimental reliance on Defendants' part, such that an equitable estoppel defense might be available.  *Cf. Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000) (concluding that estoppel was not applicable where SEC did not make "any representations at all" to petitioners).

Courts regularly strike estoppel defenses with similar deficiencies.  In another FTC action, for instance, the defendant invoked equitable estoppel alleging that the FTC "purposely delayed bringing this Complaint in order to induce the Defendants' detrimental reliance."  *Consumer Health*, 2011 WL 13295634, at *7 (citation omitted). The court concluded that "even when liberally construed, these allegations contain no facts concerning any material misrepresentation by the FTC to [the defendant], let alone any facts concerning affirmative misconduct by the FTC."  *Id.*  The court therefore struck the equitable estoppel defense as legally and factually insufficient.  *Id.*; *see also, e.g.*, *Silva v. Hornell Brewing Co.*, No. 20 Civ. 756 (ARR) (PK), 2020 WL 8079823, at *4 (E.D.N.Y. Dec. 1, 2020) (striking estoppel defense where defendants relied solely on "boilerplate statement" that plaintiff's claims were barred by estoppel "without offering any factual basis in support").

Here too, Defendants do not provide any allegations making it plausible that they can satisfy the estoppel requirements—even before accounting for the higher standard to invoke the defense against the government.  *See, e.g.*, *McCaskey*, 56 F. Supp. 2d at 326 (striking estoppel defense where defendants "offered nothing to suggest they detrimentally relied on any misrepresentation by the SEC, let alone that such reliance resulted in prejudice to their case of a constitutional magnitude"); *see also In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (LBS) (AJP), 2011 WL 3586129, at *4 (S.D.N.Y. Aug. 11, 2011) (where defendants invoked estoppel to bar Secretary of Labor from proceeding because prior regulatory investigations did not result in any adverse findings against them, court struck the defense and found that Secretary's failure to act was "far short of

the affirmative misconduct required to plead equitable defenses against the Government").[8]

The Court also concludes that the FTC would be prejudiced by having to litigate this defense. *See, e.g.*, *McCaskey*, 56 F. Supp. 2d at 326–27 (finding that allowing estoppel defense to remain "would prejudice the SEC by needlessly lengthening and complicating the discovery process and trial of this matter").

The estoppel defense is stricken with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the FTC's motion to strike is GRANTED.  The constitutional and equitable defenses are stricken with prejudice.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 146.

It is SO ORDERED.

Dated:   October 31, 2023
         New York, New York

_____
                  EDGARDO RAMOS, U.S.D.J.

---

[8] In addition, Defendants' answers reference estoppel with respect to potential claims by the FTC that IQVIA's prior acquisitions substantially lessened competition in any relevant market. *See* Doc. 56 at 20; Doc. 70 at 29.  Defendants did not pursue this argument in their brief, focusing solely on the estoppel defense related to the *Google* litigation, *see* Doc. 156 at 20–22, so it could be deemed abandoned, *see, e.g.*, *Informed Consent Action Network v. Becerra*, 595 F. Supp. 3d 70, 80 n.4 (S.D.N.Y. 2022) ("'When a party fails adequately to present arguments,' including in an opposition brief, courts may 'consider those arguments abandoned.'" (quoting *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021))).  And even if it were not abandoned, the defense would be stricken for the same reasons discussed above—namely, Defendants have failed to identify any misrepresentation by the government on which they detrimentally relied.