# MEMO ENDORSED

Chantale Fiebig
+1 (202) 682-7200
Chantale.Fiebig@weil.com

October 30, 2023

Honorable Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007
Tel (212) 805-0294
Courtroom 619

> The FTC is directed to respond to IQVIA's letter by November 3, 2023.  The Court will hold a telephonic conference to discuss the issues raised on November 7, 2023, at 11:00 a.m.  The parties are directed to dial 877-411-9748 and to enter access code 3029857# when prompted.  SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: November 1, 2023
> New York, New York

Re:   *FTC v. IQVIA Holdings Inc. and Propel Media, Inc.*, Case No.: 1:23-cv-6188 (S.D.N.Y.); Disclosure of Confidential Information to Designated In-House Counsel

Dear Judge Ramos:

Pursuant to the Amended Protective Order (Dkt. No. 153), IQVIA Holdings Inc. respectfully requests an order permitting three of its in-house attorneys access to a limited body of third-party evidence—identified by the FTC itself as central to its case—that is currently misdesignated as Confidential Information.  The Amended Protective Order makes clear that information may be so designated only if it constitutes a "trade secret or other confidential ... information," *see* Amended Protective Order ¶ 1, but the FTC has routinely designated *all* information from or about third parties as "confidential" even where it clearly is not.  This practice is jeopardizing IQVIA's ability to manage its defense and prejudicing its ability to prepare for the upcoming hearing.

Most recently, the FTC designated as Confidential Information (1) all information from or about third parties in the Memorandum of Law in Support of its Motion for Preliminary Injunction (Dkt. No. 174), and (2) the *entirety* of the supporting expert report of Kostis Hatzitaskos, permitting IQVIA in-house counsel to view only redacted copies of both documents.  The Preliminary Injunction Motion outlines the FTC's theory of its case and cites the principal evidence on which the agency apparently intends to rely at the hearing that begins in three weeks, on November 20, 2023.  Dr. Hatzitaskos is the FTC's sole expert and his report contains citations to the evidence on which he bases his opinions.  IQVIA has asked the FTC to agree that unredacted versions of the Preliminary Injunction Motion and the Hatzitaskos Report may be provided to the three in-house counsel responsible for supervising this litigation.  The FTC has refused this request, and continues to take the position that all information from or about third parties cannot be viewed by IQVIA's in-house counsel unless IQVIA obtains consent from the third party.

Under the terms of the Amended Protective Order, IQVIA cannot disclose designated information to in-house counsel unless it either obtains the consent of any implicated third party or litigates the matter before this Court.  *See* Amended Protective Order ¶ 8.  This process has proven exceptionally cumbersome, as more than 50 third parties were deposed or produced materials in discovery, including IQVIA's customers, dozens of competitors in the FTC's alleged market, and many new entrants into the healthcare digital advertising market.  IQVIA has diligently complied with this Court's order and has reached out to these third parties on an individual basis, but this process is highly cumbersome and inefficient.  Furthermore, many parties have responded with a blanket refusal to give consent, while others have required particularized redactions.  The Amended Protective Order provides that IQVIA cannot seek leave of the Court to disclose any

confidential information from a non-consenting third party unless it first meets and confers with the party, then files a joint position statement with the FTC. *Id.* But it is not feasible to litigate third-party confidentiality on an individual basis for dozens of parties with only 3 weeks remaining before trial.

In the Preliminary Injunction Motion and the Hatzitaskos Report, the FTC has now specified the core evidence upon which it will rely to challenge the merger. The third-party materials contained in these documents are a small subset of the evidence generated from third parties during discovery, as most of this evidence supports IQVIA's transaction and has been deliberately ignored by the FTC. Because this handpicked evidence is central to the FTC's case, it is vitally important that IQVIA in-house counsel be permitted access to these documents immediately, without regard to whether third parties consent. In-house counsel cannot be put in the position of hearing that evidence for the first time at the hearing. They need to see it now, in order to assist in preparing witnesses and advising the company regarding the litigation. Any information the FTC relies on at trial will be presumptively public, and it will be the *FTC's* burden as the proponent of such information to make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).

Here, by contrast, much of the material designated as confidential by the FTC is clearly innocuous. For instance, in both the Preliminary Injunction Motion and the Expert Report, the FTC has designated as confidential the very names of many of the companies that compete to provide digital healthcare advertising services to pharmaceutical companies. *See, e.g.*, Preliminary Injunction Motion at 26; Expert Report at 142. The FTC's attempt to shield this information from in-house counsel amounts to precisely the sort of "trial by ambush" the discovery process is designed to avoid. *See Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Accordingly, IQVIA has prepared versions of the Preliminary Injunction Motion and the Hatzitaskos Report with all third-party information redacted. IQVIA is providing copies of these documents to the Court for *in camera* review. The highlighted text is third-party information that does not fit the definition of "Confidential Information" and therefore should be available to designated in-house counsel under the Amended Protective Order. The red text appears to be "Confidential Information" and thus would remain withheld from in-house counsel. (Gray highlighting may be disregarded, as it reflects party information that is confidential as to the public but not as to the parties.) IQVIA respectfully requests an order permitting in-house counsel to review these two documents with the exception of the red text.

This limited disclosure would apply only to three individuals: Maureen Nakly, Vice President and Associate General Counsel; Harvey Ashman, Senior Vice President and Deputy General Counsel; and John O'Tuel, Assistant General Counsel. Access to information "[cannot] be denied solely because of counsel's in-house status." *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (same). "Even if a district court is satisfied that … a risk exists [of inadvertent disclosure or competitive use], the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).

Courts determine whether in-house counsel may access information "on the basis of each individual counsel's actual activity and relationship with the party represented," turning primarily on in-house counsel's involvement in "competitive decision making." *U.S. Steel Corp.*, 730 F.2d at 1468–69.  Here, as IQVIA has previously set out, *see* Dkt. No. 115, Ms. Nakly, Mr. Ashman, and Mr. O'Tuel are not involved in competitive decision-making.  (The contrary suggestion by a competitor, PulsePoint, *see* Dkt. No. 109, is entirely unsupported and incorrect.)

Ms. Nakly is Vice President, Associate General Counsel in IQVIA's Global Legal Department, where she serves as IQVIA's head of litigation.  *See* Declaration of Maureen Nakly (Dkt. No. 115-2) ¶ 2.  Ms. Nakly provides advice in connection with mergers and acquisitions, but this advice focuses on "litigation diligence and regulatory compliance matters," not competitive decisionmaking.  *Id.* ¶ 5.  Ms. Nakly is not involved in matters relating to "the design, development, pricing or offerings of IQVIA products and services," nor does she make business decisions regarding "issues like pricing, product design or product development." *Id.* ¶ 8.

Mr. Ashman is IQVIA's Senior Vice President and Deputy General Counsel in its Global Legal Department.  See Declaration of Harvey Ashman (Dkt. No. 115-1) ¶ 3.  Mr. Ashman provides legal guidance to IQVIA and outside counsel in connection with antitrust, intellectual property, and licensing matters.  *Id.* ¶ 4.  Mr. Ashman's role is limited to providing legal advice, and he is not involved in business decisions relating to the sale or development of IQVIA's products.  *Id.* ¶ 8.  Mr. Ashman reviews license requests relating to IQVIA's Third Party Access ("TPA") program "for legal concerns," but he "do[es] not participate in any business discussions evaluating the competitive impact associated with the grant of a TPA license." *Id.* ¶ 9.

Finally, Mr. O'Tuel is assistant general counsel in IQVIA's Global Legal Department and a member of the in-house legal team.  See Declaration of John O'Tuel (Dkt. No. 115-3) ¶ 2.  Mr. O'Tuel assists outside counsel to make key strategic litigation decisions, identify potential witnesses, and collect necessary data.  *Id.* ¶¶ 3-4.  As with Ms. Nakly and Mr. Ashman, Mr. O'Tuel does not make business decisions relating to IQVIA's products.  *Id.* ¶ 6.

IQVIA has designated these three individuals to manage this litigation, but their inability to access third-party information as a result of the FTC's overbroad designations has, among other things, impeded their ability to propose a remedy that could satisfy the FTC's concerns with the merger, and to determine which witnesses should be called to testify at trial.  To mitigate further prejudice to IQVIA's ability to present its defenses in this federal proceeding, IQVIA respectfully requests that the Court order that the three designated in-house counsel may access unredacted copies of the Preliminary Injunction Motion and Hatzitaskos Report (with the few exceptions noted above).

In addition, the FTC has taken the unsupportable position that in-house counsel may not attend the deposition of its economic expert, Dr. Hatzitaskos.  Because that deposition is scheduled for November 8, IQVIA respectfully requests a prompt hearing (if necessary) and ruling on this request.

Sincerely,

*/s/ Chantale Fiebig*

Chantale Fiebig