# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | Case. No.: 1:23-cv-06188-ER |
| v. | |
| IQVIA HOLDINGS INC., | |
| and | |
| PROPEL MEDIA, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT DR. ANUPAM B. JENA**

I.  **INTRODUCTION**

Defendant IQVIA proposes to acquire its direct competitor, DeepIntent, and in doing so, further concentrate the market for HCP programmatic advertising. Recognizing there is a presumption of illegality for mergers above a certain market concentration, Defendants respond: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defs.' Mem. in Opp'n to FTC's Mot. for PI at 47, ECF No. 211. But, as Defendants recognize in the very next sentence, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id*. at 48 (citing cases) (emphasis added). Notwithstanding their acknowledgment of what is required to mount an efficiencies defense under the law—which is Defendants' burden, if it is even a cognizable defense under the Clayton Act—Defendants cite ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Opp'n 48 nn. 201-206. The problem with this is that Dr. Jena ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Accordingly, Dr. Jena's conclusions about the specific pro-competitive benefits of the transaction (paragraphs 63-66 and 71-72), which Defendants cite in support of their efficiencies defense, should be excluded as unreliable.

Defendants also seek to offer expert opinion testimony from Dr. Jena to support their claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Opp'n 37 nn. 149, 155-156. But there is a problem with relying on Dr. Jena to support this claim as well—Dr. Jena, a purported industry expert, has no experience in healthcare advertising and lacks familiarity with the vast majority of these alleged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, he did not use any reliable method to determine whether a company qualified as an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, Dr. Jena's conclusions about the availability of suitable

1

███████████████ (paragraphs 48-56) should also be excluded.

## II. LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, a party offering expert testimony has the burden of establishing that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

The district court has the "gatekeeping" responsibility of barring the introduction of conjecture and speculation by witnesses who may not be qualified to render truly expert opinions on the matter at issue, and whose proffered testimony is not supported by validation and reliable scientific methodology. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that this "gatekeeper" function applies not only to testimony based on "scientific" knowledge but to testimony based on "technical" and "other specialized" knowledge as well). Courts may exclude before trial "experts presenting . . . evidence and testimony that does not 'fit' the facts of the case." *Id.*; *see also Joseph S. v. Hogan*, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011) (courts should not "shirk [their] responsibility of performing a full Daubert analysis" even in bench trials).

## III. ARGUMENT

### A. Dr. Jena's Opinion that the Proposed Transaction Would Lead to Benefits for Healthcare Marketers Should be Excluded as Unreliable

In support of Defendants' efficiencies defense, Dr. Jena opines that the proposed acquisition of DeepIntent would ███████████████████████████████████████████████████████████████████████████████████. PX6503 (Jena

2

Report) ¶¶ 63-66.  In his deposition, Dr. Jena admitted that he has ███████████ ████████████████████████████████████████████████████ ██████████████████████████████  PX0583 (Jena Dep.) at 27:22-28:2, 116:23-117:13. Nevertheless, Defendants rely on Dr. Jena's report in support of efficiencies claims ██████ █████████████████████████████████. Defs.' Mem. in Opp'n to FTC's Mot. for PI at 48-49, ECF No. 211.  Dr. Jena's opinions regarding the purported benefits of the proposed transaction stemming ██████████████████████, specifically the opinions found in paragraphs 63 through 66 and 71 through 72 of Dr. Jena's report, are not reliable and should be excluded.



Under Rule 702, "the proffered testimony [must have] a sufficiently reliable foundation to permit it to be considered." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (internal quotation marks and citation omitted).  "In a reliability inquiry, the district court should consider the indicia of reliability identified by Rule 702: (1) that the testimony is grounded on sufficient facts or data that "is the product of reliable principles and methods," and (2) that "the witness has applied the principles and methods reliably to the facts of the case."'" *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y.2009).

When a party defends a transaction by pointing to "procompetitive benefits," those purported benefits are considered an "efficiencies defense." *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 176 (3d Cir. 2022).  Therefore, any reliable principles and methods used to satisfy the Rule 702 reliability standard should be grounded in analyses consistent with those used to determine whether an alleged efficiency is cognizable.  "For the efficiencies defense to be cognizable, the efficiencies must (1) 'offset the anticompetitive concerns in highly concentrated markets'; (2) 'be merger-specific' (i.e., the efficiencies cannot be achieved by either party alone); (3) 'be verifiable, not speculative'; and (4) 'not arise from anticompetitive reductions in output or

service.'"[1]  *Hackensack*, 30 F.4th at 176.  To satisfy the second requirement, the claimed efficiencies "cannot be achieved by either company alone because, if they can, the merger's asserted benefits can be achieved without the concomitant loss of a competitor." *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 720 (D.C. Cir. 2001).  Here, Dr. Jena does not apply any reliable methodology that would support the claim that an ▮▮▮▮▮ is a cognizable efficiency.

First, Dr. Jena's opinion fails to provide reliable expert testimony on one of the key requirements of a cognizable efficiency: whether it is merger-specific.  Dr. Jena's report and testimony do not address the potential that IQVIA would be able to ▮▮▮▮▮ on its own absent the proposed transaction.  When asked if he ▮▮▮▮▮ PX0583 (Jena Dep.) at 65:24-66:2.  Dr. Jena testified further that ▮▮▮▮▮ PX0583 (Jena Dep.) at 130:18-22.

In fact, IQVIA is well-positioned to offer ▮▮▮▮▮ absent the proposed acquisition.  ▮▮▮▮▮.  PX4001-026.  Dr. Jena admitted to not knowing ▮▮▮▮▮.  PX0583 (Jena Dep.) at 65:15-66:2, 93:14-16.  Dr. Jena further concedes that he does not have an opinion

---

[1] As the Merger Guidelines direct, "it is incumbent upon the merging firms to substantiate efficiency claims so that the Agencies can verify by reasonable means the likelihood and magnitude of each asserted efficiency, how and when each would be achieved (and any costs of doing so), how each would enhance the merged firm's ability and incentive to compete, and why each would be merger-specific." U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines § 10.

regarding how difficult it would be ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ PX0583 (Jena Dep.) at 107:7-14, 109:1-11.

Second, even if Dr. Jena's claimed benefits of the proposed transaction were merger-specific, they are not independently verifiable and would not result in an increase in competition post-merger. For efficiencies to be cognizable, the parties cannot rely on "speculative" evidence, *Hackensack*, 30 F.4th at 177-78, and the proposed efficiencies must flow from an increase in competition rather than an anticompetitive effect of the proposed transaction. *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 791 (9th Cir. 2015). Dr. Jena's opinion fails on both scores. Dr. Jena did not attempt to quantify the potential value created by the proposed transaction, and he testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. PX0583 (Jena Dep.) at 116:23-117:10. He also does not reference any evidence in the record quantifying the purported benefits ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Jena's report does not reference any financial projections, synergies estimates, or testimony from IQVIA executives analyzing the potential benefits ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as a result of the proposed acquisition. In addition, Dr. Jena is silent on whether IQVIA's post-acquisition ability to offer ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ would flow from an increase in competition. Given the complete lack of quantifiable evidence in Dr. Jena's report, any proffered testimony regarding the potential benefits of the proposed transaction should also be excluded for a failure to substantiate or verify through "reliable principles and methods."

Dr. Jena's opinion regarding the purported benefits of the proposed transaction lacks any reliable methodology under the established standards for determining a cognizable efficiency and thus is inadmissible under Rule 702. *See* PX5282, Transcript of Bench Trial, AM Session, *United*

5

States v. Bertelsmann SE & Co., Civ. A. No. 21-02886, Dkt. No. 224 (D.D.C. Aug. 17, 2022) ("[T]he efficiencies have not, in fact, been independently verified by anyone, and they, therefore, are not cognizable under the horizontal merger guidelines and are not reliable under Rule 702.").

### B. Dr. Jena's Opinion that ████ Is Not Based on Any Relevant Expertise or Reliable Evidence

In determining whether a witness is qualified to be an expert, "the court must examine the totality of the witness's background to determine whether he or she exhibits any one or more of the qualifications listed in Rule 702—knowledge, skill, experience, training, or education—with respect to a relevant field." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015). "Second, the court 'compare[s] the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'" *Id.*

Dr. Jena's testimony regarding ████ is not related to his areas of expertise, and therefore paragraphs 48 through 56 of Dr. Jena's report should be excluded. Dr. Jena is a Professor of Health Care Policy and Medicine at Harvard Medical School and a physician in the Department of Medicine at Massachusetts General Hospital. PX6503 (Jena Report) ¶ 1; PX0583 (Jena Dep.) at 8:3-7; 28:9-29:11. His proffered expertise in economics and medicine, however, do not make Dr. Jena an expert in HCP programmatic advertising. Dr. Jena bases his ████ on his experience working with data to publish his own studies, none of which relate to programmatic advertising. PX6503 (Jena Report) ¶ 34. By his own admission, Dr. Jena has ████. PX0583 (Jena Dep.) at 37:11-38:9, 39:2-5. Moreover, Dr. Jena has ████

██████████████████████████████████.″ PX0583 (Jena Dep.) at 40:10-13. Nevertheless, Dr. Jena opines that there are ██████████████████████████████ to advertising agencies and pharmaceutical companies for use in HCP programmatic advertising campaigns. But without "an adequate showing that [a proffered expert] possesses the requisite expertise to be a reliable witness on the subject," the testimony is inadmissible under Rule 702. *Bayoh v. Afropunk LLC*, 2020 WL 6269300, *4 (S.D.N.Y. Oct. 26, 2020).

Even if Dr. Jena possessed the specialized knowledge required to provide expert testimony ██████████████████████████████████, his testimony does not contain required indicia of reliability. In Figure 3 of his expert report, Dr. Jena lists ███████ ██████████████████████████████ PX6503 (Jena Report) ¶ 48. However, Dr. Jena did not apply any reliable methodology to determine which ███████ ██████████████████████████████████. Dr. Jena's testimony and the sources cited in his expert report reveal that he chose ███████ ████████████ based largely on basic information from those companies' websites. Dr. Jena admitted that █████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ PX0583 (Jena Dep.) at 242:13-243:1. Even the sources cited as support for Figure 3 of Dr. Jena's expert report do not withstand scrutiny. As just one example, the website source for ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ *See* ██████████████████████

7

█████████████████████████████████████████████████████████████ appears to be contact data intended for mailing campaigns for HCPs in Europe that have no relation to HCP programmatic advertising or even digital advertising.

Even more telling is that Dr. Jena was completely unfamiliar with at least some of the ████ ████████████████████████████████████████████████████████████████████████████████████. For instance, when asked about ██████ involvement in HCP programmatic advertising, Dr. Jena could only identify ████████████████████████████████████████████████████████████ █████████████████████████████████████████. PX0583 (Jena Dep.) at 243:20-244:15; PX0548 (Margolis Dep.) at 162:2-23. Similarly, when asked about ███████, which is included in both Figure 3 and Table 1 of Dr. Jena's report, Dr. Jena was unable to identify ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████. PX0583 (Jena Dep.) at 254:11-256:14. Dr. Jena instead relies on the testimony of ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████.

Another indication that Dr. Jena did not employ any reliable methodologies in determining ███████████████████████████████████████ is his confessed lack of knowledge about ████████████████████████████████████████████████████████████ ██████████████████████████████████████████." PX0583 (Jena Dep.) at 221:19-222:19. This level of understanding should be a basic requirement for determining whether ████████ ████████████████████████████████████████████████████. Dr. Jena did not evaluate the ████ ████████████████████████████

8



[REDACTED], relying instead on his belief that [REDACTED]" PX0583 (Jena Dep.) at 48:6-49:6. When asked whether certain [REDACTED], Dr. Jena testified [REDACTED]." PX0583 (Jena Dep.) at 48:6-49:6. Notably, his testimony contradicts his claimed basis of expertise for determining the [REDACTED] as stated in his expert report: [REDACTED]." PX6503 (Jena Report) ¶ 34.

Dr. Jena's proffered testimony [REDACTED] used in HCP programmatic advertising is based on a cursory review of company websites and references to materials drafted by IQVIA's counsel. "Expert testimony is not admissible when it addresses 'lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help.'" *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) (citation omitted). The websites and other materials offered are readily comprehensible by a lay witness, and Dr. Jena's expertise does not enable him to provide additional context for these specific opinions. Thus, Dr. Jena's testimony is inadmissible as it does not offer any specialized assistance to the Court and instead improperly substitutes his opinions for the Court's role as finder of fact.

## IV. CONCLUSION

The FTC requests that the Court exclude certain testimony from Dr. Anupam Jena.

9

| | |
|---|---|
| Dated: November 13, 2023 | Respectfully submitted, |
| | /s/ *Varnitha Siva* |
| | Varnitha Siva<br>Jennifer Fleury<br>Stephen Mohr<br>Jordan Andrew |
| | Federal Trade Commission<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>(202) 326-2951<br>vsivaprasad@ftc.gov |