**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,

                    Plaintiff,

          v.

IQVIA HOLDINGS INC.,

and

PROPEL MEDIA, INC.

                    Defendants.

Case No. 1:23-cv-06188-ER

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE FTC'S MOTION *IN LIMINE***
**TO EXCLUDE CERTAIN OPINIONS OF DR. ANUPAM B. JENA**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.    Dr. Jena is Uniquely Qualified to Opine on ███████████████
           ████████████████████ .................................................... 2

    II.   Dr. Jena's Testimony on the Value Derived From the Transaction is
           Reliable and Admissible ..................................................................... 7

CONCLUSION .................................................................................................................. 10

**INTRODUCTION**

Dr. Jena is a Professor at Harvard Medical School and a University of Chicago-trained PhD economist who maintains a clinical practice at Massachusetts General Hospital. His expertise is healthcare economics, including the "economics of physician behavior."[1] He works with data offered by IQVIA and many others to assess HCP decisionmaking, such as what influences prescribing behavior. Communications with HCPs regarding prescription and over-the-counter drugs and medical devices are at the heart of this case. Of all the trial witnesses, Dr. Jena is the *only* one who offers the perspective of an HCP. He is well positioned to assist the Court in deciding whether the FTC's challenges to the transaction have merit. Indeed, the FTC does not challenge Dr. Jena's qualifications generally or his opinions in Section III of his report (¶¶ 22-31) regarding the important functions that healthcare marketing serves for both HCPs and patients. Nor does the FTC challenge Dr. Jena's opinions in Section IV.A (¶¶ 35-47), which analyze the data related to programmatic marketing. Instead, the FTC seeks to exclude two narrower sets of Dr. Jena's opinions.

First, the FTC argues that Dr. Jena's opinions regarding ███████████████████ ██████ (Section IV.B, ¶¶ 48-56) are inadmissible based on his alleged lack of experience with HCP programmatic marketing. But the FTC's own expert, Dr. Hatzitaskos, has even *less* real-world experience with digital marketing.[2] Dr. Jena has actually used many of the datasets he addresses, and has carefully evaluated others in conducting an empirical analysis of ██████████ ████████████████████. This evidence will be important to the Court as it evaluates the FTC's vertical theory.

---

[1] Jena Dep. Tr. 28:5-16, 35:2-21, 148:18-19.
[2] Hatzitaskos Dep. Tr. 10:16-19.

Second, the FTC argues that Dr. Jena's opinions about the value that will be created by the transaction (Section V, ¶¶ 63-66 and 71-72 of his report) are inadmissible because his opinions are qualitative rather than quantitative. But the FTC's own expert provides more qualitative opinions than quantitative ones, and the FTC primarily relies on qualitative evidence in support of its own case. Defendants are entitled to respond in kind, and Dr. Jena's testimony will assist the Court in evaluating the procompetitive benefits of the transaction if it is allowed to close.

Dr. Jena's expertise and well-supported opinions will help the Court understand the transaction in context. The particular opinions challenged by the FTC—███████████████████ ██████████████████—go to central issues in the litigation, and respond to opinions expressed on the same subjects by the FTC's expert. They should not be excluded. *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012) ("[T]he rejection of expert testimony is the exception rather than the rule." (quotation marks omitted)). All of the FTC's arguments ultimately go to the weight to be afforded Dr. Jena's opinions, not their admissibility.



## ARGUMENT

I. **Dr. Jena is Uniquely Qualified to Opine on** ███████████████████ ████████████

The FTC asks this Court to exclude Dr. Jena's opinion that ████████████████ ████████████████████████. The government moves to exclude it on the grounds that he is not "an expert in HCP programmatic advertising" and he has "█ ██████████████████████████████████████." MIL at 6-7. But if that were the standard for admissibility, then the FTC's own expert would have to be excluded for an even greater lack of experience. Dr. Hatzitaskos has no "████████████ ███████████"[3] In contrast, Dr. Jena has both consulted with life sciences companies

---

[3] *See* Hatzitaskos Dep. Tr. 10:16-19.

providing inputs for advertising campaigns, worked with the data at issue, and studied how healthcare marketing influences physicians.[4]

In any event, HCP programmatic advertising is a relatively recent, rapidly evolving field.[5] Experience in the market as proposed by the FTC is not a necessary prerequisite for the opinions that Dr. Jena will offer. If "an expert has educational and experiential qualifications in a field 'closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.'" *Suazo v. Ocean Network Exp. (N.A.), Inc.*, 2023 WL 2330428, at *11 (S.D.N.Y. Mar. 2, 2023) (Ramos, J.); *Stagl v. Delta Air Lines*, 117 F.3d 76, 81-82 (2d Cir. 1997). Here, a "well-trained" physician economist with first-hand experience with the data sources at issue is available, and it would be "error to exclude [him]." *Stagl*, 117 F.3d at 82. (reversing district court because "to require the degree of specificity the court imposed came close to letting that industry indirectly set its own standards"). The FTC's "questions as to qualifications" go to "the weight (or lack thereof) to be afforded to his testimony." *Chill v. Calamos Advisors LLC*, 417 F. Supp. 3d 208, 252 (S.D.N.Y. 2019).

Dr. Jena is well qualified to examine the datasets available to participants in the digital healthcare advertising industry and opine on ██████████████████████████. Dr. Jena is familiar with the data here because he uses many of these datasets in his own research to identify physicians and understand their behavior.[6] This includes "██████████████████████████

---

[4] Jena Dep. Tr. 37:6-9; 38:10-39:1; 43:5-44:6.

[5] Jena Dep. Tr. 39:10-16 ("██████████████████████████████████████████████████"); *see also id.* Tr. 116:17-19 ("██████████████████████████████████████████████████████").

[6] Jena Dep. Tr. 39:6-40:9.

████████████████████████████████████████████████" such as prescribing more

medications.[7] Furthermore, the FTC argues its vertical case through vague allegations that IQVIA

may broadly foreclose use of its data by unspecified companies. Dr. Jena provides valuable

testimony from a knowledgeable industry participant that ████████████████████████████

██████████████████████████████████████.[8]

Turning to the reliability of Dr. Jena's opinions, Dr. Jena's empirical analysis comparing

the "██████████████████████████████████████████████████" will

be particularly useful for the Court. *See* Jena Report ¶ 53. For example, Dr. Jena prepared a chart

illustrating that ████████████████████████████████████████████████

████████████████████████████████████. *See* Jena Report, Table 1.

████████████████████████████████████████████████████████████████

Although Table 1 is within the paragraphs that the FTC seeks to exclude, the FTC makes no

argument that Dr. Jena's analysis of ██████████████████, as summarized in Table 1, is

---

incorrect, unreliable, or unhelpful to the Court. Indeed, the FTC barely mentions Dr. Jena's actual opinions and supporting demonstratives.

The FTC's motion focuses almost exclusively on Dr. Jena's Figure 3, which merely illustrates ███████████████████████████████████. As Dr. Jena explained at his deposition, "██████████████████████████████████████████████████ ██████████████████████████████████████████" and that he did not believe that "██████████████████████████████████████████████ ██████████████████████████"[9] Dr. Jena's opinion that ████████████ ████████████████████████████████ follows not just from his review of public information, but also from his own experience working with these datasets. *See* Jena Report ¶¶ 50-52. As Dr. Jena explains, ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. Jena Report ¶¶ 54-56. To be sure, these opinions are not consistent with the FTC's vertical theory, but that is not a reason to exclude them.

The FTC's arguments that Dr. Jena's testimony is unreliable and that he is unfamiliar with the data underlying Figure 3 are based on a memory test given at his deposition that, at most, goes to weight, not admissibility. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the . . . lack of textual authority for his opinion[] go to the weight, not the admissibility, of his testimony"); *Pension Committee of Univ. of Montreal Pension Plan v. Banc*

---

[9] Jena Dep. Tr. 162:13-163:6. Dr. Jena based this on ████████████████████████████ ███████████████████████████. *See id.*

*of Am. Secs., LLC*, 716 F. Supp. 2d 220, 227 n.45 (S.D.N.Y. 2010) ("lapses in memory are traditionally challenged through cross-examination"). "An expert is not required to have memorized the complete contents of h[is] expert report." *Bd. of Trustees of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 6288415, at *11 (S.D.N.Y. Dec. 15, 2011).

To the extent the FTC has questions about "the weight or sufficiency of the evidence upon which [Dr. Jena] relied, or the conclusions generated therefrom," those too "can be asked on cross-examination." *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009). Even so, the FTC's attempt to impugn Dr. Jena's methodology by questioning the evidence behind ████████████████████████ listed in Figure 3 is misplaced. Citations in Dr. Jena's report, as well as other evidence in the record, establish that ████████████████ ████████████████████.[10]

The FTC's unfounded attack on Dr. Jena's unfamiliarity ████████████████████ ████████ is further belied by the FTC's mischaracterization of his deposition testimony. The FTC argues that Dr. Jena "confessed lack of knowledge" about "████████████████████████ ████████████████████████████████████ ████████" MIL at 8 (misquoting Jena Dep. Tr. 221.19-222:19). But Dr. Jena merely testified that ████████████████████████████████████████

---

[10] ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



"[11] That does not mean that his analysis was not reliable. As Dr. Jena explained, he has "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and he "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[12] Dr. Jena's opinions are the product of abundant knowledge and experience, and can help this Court render its decision. *See Stagl*, 117 F.3d at 81; *Suazo*, 2023 WL 2330428, at *11.

In sum, the FTC's vertical theory posits that the merger would allow IQVIA to withhold its data from competitors to the detriment of competition. Dr. Jena's testimony contravenes that theory with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is for the Court to decide whose position has more basis in fact, law, economics, and common sense. To make that decision, the Court should hear the evidence on both sides. The FTC's attempt to exclude Dr. Jena's opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ suggests that it lacks a response to his opinions, but not that they are unreliable within the meaning of *Daubert*.

## II.   Dr. Jena's Testimony on the Value Derived From the Transaction is Reliable and Admissible

Separately, the FTC is wrong that Dr. Jena's opinions regarding some of the anticipated benefits of the transaction should be excluded.

If the FTC were to establish a *prima facie* case that the transaction would adversely affect competition, Defendants would be entitled to rebut that case by offering contrary evidence. *United States v. Baker Hughes Inc.*, 908 F.2d 981, 985 (D.C. Cir. 1990) (a "variety of factors … can rebut a prima facie case," including "significance of market shares and concentration, likelihood of

---

[11] Jena Dep. Tr. 221:19-222:6.
[12] Jena Dep. Tr. 221:5-9. That Dr. Jena sometimes uses the data available to him does not contradict that he "compare[s] and contrast[s] the suitability of available data sources." MIL at 9 (citing Jena Report ¶ 34).

express collusion or tacit coordination, and prospect of efficiencies from merger," "industry structure, weakness of data underlying prima facie case, elasticity of industry demand, inter-industry cross-elasticities of demand and supply, product differentiation, and efficiency"). Most relevant for purposes of this motion, Defendants would show that the efficiencies created by the transaction counterbalance any alleged anticompetitive effects. *See New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 213 (S.D.N.Y. 2020).

Utilizing his unique perspective as a physician economist, Dr. Jena opines that the transaction could generate certain benefits. There are three principal rationales for the combination of DeepIntent and Lasso that will be developed at trial: (1) DeepIntent has a larger footprint and stronger relationships in DTC advertising, whereas Lasso is focused more on HCP advertising, (2) DeepIntent has its own in-house DSP technology, whereas Lasso licenses that technology from Xandr, and (3) DeepIntent has advertising capabilities related to Connected TV, which Lasso lacks. Dr. Jena opines principally on ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. Jena Rep. ¶¶ 63-71. These are pro-competitive benefits. Defendants' economic expert (Dr. Israel) and other witnesses will testify about the rationales for the transaction, as well as other efficiencies more generally.

The FTC seeks to exclude these opinions on the ground that an "efficiencies defense," to be "cognizable," must "(1) offset the anticompetitive concerns in highly concentrated markets; (2) be merger-specific (i.e., the efficiencies cannot be achieved by either party alone); (3) be verifiable, not speculative; and (4) not arise from anticompetitive reductions in output or service." *See* MIL at 3-4 (citing *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 176 (3d Cir. 2022)). But

while that is the FTC's preferred articulation of the legal standard, the FTC is incorrect to suggest that it also provides the yardstick by which the admissibility of expert testimony is measured. On the contrary, an expert's opinion is relevant if it "has any tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. R. 401) (emphasis added). Whether Dr. Jena's testimony, standing on its own, is sufficient to establish an efficiencies defense is not the proper inquiry: His opinions provide *inputs* to an efficiency analysis. The FTC's attacks on Dr. Jena's analyses are misguided.[13]

First, as to the FTC's argument that Dr. Jena's testimony does not support that any efficiencies are "merger-specific," the FTC maintains that "IQVIA is well-positioned to ▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *absent* the proposed acquisition." MIL at 4 (emphasis added). The FTC is confusing the *Daubert* standard with the merits inquiry. This Court will decide whether or not the FTC has carried its ultimate burden of proving that the merger will substantially lessen competition. If the FTC can make out a *prima facie* case, the Court will have to account for the beneficial consequences of the merger.  Both the FTC's expert (Dr. Hatzitaskos) and Dr. Jena offer opinions relevant to that inquiry, regardless whether or not they are dispositive. As this Court has recognized, it is enough that the other alternatives are not "practical," or do not "achieve the level of efficiencies promised by the Proposed Merger." *Deutsche Telekom AG*, 439 F. Supp. 3d at 213. Here, the trial evidence will show that the acquisition of DeepIntent is a superior way for IQVIA

---

[13] The FTC cites *United States v. Bertelsmann SE & Co.*, Civ. A. No. 21-02886, Dkt. No. 224 (D.D.C. Aug. 17, 2022), *see* MIL 5–6, where the court ruled that revenue projections prepared by a non-expert affiliated with the merging parties, and incorporated into the expert report without verification, could not be relied upon. Nothing in *Bertelsmann* suggests that an independent expert, such as Dr. Jena, must cite a second independent party to verify the expert's projections.

to achieve efficiencies, including growth in DTC advertising, along with new Connected TV and DSP capabilities. *See, e.g.*, Defs.' Br. in Opp. to Preliminary Injunction, Dkt. 211, at 7, 9, 22, 48. Dr. Jena's opinions support that position.

Second, the FTC conflates "verifiable" with "quantifiable." Where, as here, a merger has not yet been consummated, "it is impossible to quantify precisely the efficiencies that it will generate." *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1089 (D.D.C. 1997). The judicial role is therefore to make reasonable predictions about the future, distinguishing "between efficiencies which are merely speculative and those which are based on a prediction backed by sound business judgment." *Id.* at 1089. Dr. Jena points out that ████████████████████████████████ ████████████████████████████████████████████████████████████. Jena Report ¶ 65-66. ██████████████████████████████████████████████████████████ ███████████████████████████████. *Id.* ¶ 65. These opinions will be helpful to the Court in evaluating whether the merger is likely to substantially lessen competition. *See, e.g.*, *Deutsche Telekom AG*, 439 F. Supp. 3d at 188 ("Evaluation of the likely competitive of a prospective business merger . . . . provides the Court occasion to engage in . . . a prophetic role," applying "the judge's own skills and frontline experience in weighing, predicting, and judging complex and often conflicting accounts of human conduct.").

In summary, the opinions that the FTC seeks to exclude, coupled with other evidence to be presented at the hearing, will be useful to the Court in deciding whether the merger will likely have substantial anticompetitive effects. The Court will have ample opportunity to determine what weight to give Dr. Jena's opinions. The FTC's motion should therefore be denied.

## CONCLUSION

The FTC's motion in limine to exclude certain of Dr. Jena's opinions should be denied.

Dated: November 16, 2023
Washington, DC

WEIL, GOTSHAL & MANGES LLP

 /s/ *Chantale Fiebig*
Chantale Fiebig
Mark A. Perry (*pro hac vice*)
Joshua M. Wesneski
2001 M Street NW, Suite 600
Washington, DC 20036
Tel:  (202) 682-7000
chantale.fiebig@weil.com
mark.perry@weil.com
joshua.wesneski@weil.com

Robert Taylor
767 Fifth Avenue
New York, NY 10153
robert.taylor@weil.com

Sarah M. Sternlieb
700 Louisiana Street, Suite 1700
Houston, TX 77002
sarah.sternlieb@weil.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Kenneth Reinker
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel:  (202) 974-1500
kreinker@cgsh.com

Rahul Mukhi
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
rmukhi@cgsh.com

*Attorneys for Defendant IQVIA Holdings Inc.*

MORRISON & FOERSTER LLP
Alexander P. Okuliar (*pro hac vice*)
Bradley S. Lui (*pro hac vice*)
David J. Shaw (*pro hac vice*)
2100 L Street, NW, Suite 900

Washington, DC 20037
Tel: (202) 887-1500
aokuliar@mofo.com

Michael B. Miller
Mika M. Fitzgerald
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000
dfioccola@mofo.com
mfitzgerald@mofo.com

*Attorneys for Defendant Propel Media, Inc.*