# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>     v.<br><br>IQVIA HOLDINGS INC.,<br><br>         and<br><br>PROPEL MEDIA, INC.,<br><br>                Defendants. | Case No. 1:23-cv-06188-ER |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY REAL CHEMISTRY, INC.'s AND CHARLES HEMANN'S MOTION TO QUASH SUBPOENA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A CIVIL ACTION**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

ARGUMENT ................................................................................................................................. 5

I.      THE TRIAL SUBPOENA IS INVALID UNDER RULE 45. ............................................ 5

      A.      The Trial Subpoena must be quashed because it violates the geographical
            limitations of Rule 45. ........................................................................................... 5

            1.      Mr. Hemann lives outside of the Court's territorial subpoena power ...................... 5

            2.      Mr. Hemann does not "regularly transact business" within the Court's
                    territorial subpoena power ............................................................................ 6

      B.      The Trial Subpoena must be quashed because it imposes an undue burden on
            Mr. Hemann. .......................................................................................................... 7

      C.      The Trial Subpoena must be quashed because it does not provide Mr. Hemann
            with a reasonable time for compliance. ................................................................. 9

II.     15 U.S.C. § 23 DOES NOT PROVIDE A BLANKET EXCEPTION TO RULE 45'S
       GEOGRAPHIC LIMITATIONS, AND ITS REQUIREMENTS HAVE NOT BEEN
       MET. ................................................................................................................................. 11

      A.      The Subpoena must be quashed because the FTC has not shown cause as to
            why Mr. Hemann's testimony is necessary. ......................................................... 12

      B.      The Subpoena must be quashed because the FTC does not bring this action "on
            behalf of the United States." ................................................................................. 15

III.    PERMITTING MR. HEMANN TO TESTIFY REMOTELY DOES NOT CURE THE
       DEFECTIVE TRIAL SUBPOENA. .................................................................................. 16

CONCLUSION ............................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*A. Kush & Assocs., Ltd. v. Weingeroff Enters., Inc.*,
   No. 85 C 493, 1988 WL 64082 (N.D. Ill. June 8, 1988) .............................................12, 13, 15

*Ardak Akishev, et al. v. Sergey Kapustin, et al.*,
   No. CV 13-7152 (NLH/AMD), 2017 WL 11637308 (D.N.J. Mar. 9, 2017).........................11

*Argent Funds Grp., LLC v. Schutt*,
   No. 3:05 CV 01456 SRU, 2006 WL 2349464 (D. Conn. June 27, 2006) ...............................8

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) ..........................................................................................7

*Broumand v. Joseph*,
   522 F. Supp. 3d 8 (S.D.N.Y. 2021).....................................................................................16

*Brown v. Hendler*,
   No. 09 CIV. 4486 RLE, 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011) ..............................10, 11

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................................7

*Great Lakes Reinsurance (UK) SE v. Herzig*,
   No. 16 CIV. 9848 (PGG), 2023 WL 4406149 (S.D.N.Y. July 7, 2023)...........................5, 6, 7

*Johnsen, Fretty & Co., LLC v. Lands South, LLC*,
   526 F. Supp. 2d 307 (D. Conn. 2007)....................................................................................8

*Keawsri v. Ramen-Ya Inc.*,
   No. 17-CV-2406 (LJL), 2022 WL 2162981 (S.D.N.Y. May 5, 2022) ..............................6, 7, 9

*M'Baye v. New Jersey Sports Prod., Inc.*,
   246 F.R.D. 205 (S.D.N.Y. 2007) ..........................................................................................6

*Perez v. Progenics Pharm., Inc.*,
   No. 10-cv-08278 (LAP), 2015 WL 4111551 (S.D.N.Y. June 24, 2015)............................6, 7

*Rochester Drug Coop. v. Soni*,
   23-MC-00091 (PMH), 2023 WL 2919097 (S.D.N.Y. Apr. 12, 2023) ..................................16

*Searle v. Gilead Scis., Inc.*,
   No. 22 CIV. 352 (ER), 2022 WL 294727 (S.D.N.Y. Feb. 1, 2022) .......................................5

*United States v. Wyeth*,
   Civil Action Nos. 03-12366-DPW, 06-11724-DPW, 2015 WL 8024407 (D.
   Mass. Dec. 4, 2015) ..........................................................................................................12

**Statutes**

15 U.S.C. § 23 ............................................................................................................... *passim*

18 U.S.C. § 1965(c) ...................................................................................................... 12, 13

Racketeer Influenced and Corrupt Organizations Act ................................................... 13

Federal Rule of Civil Procedure 43 .............................................................................. 16

Federal Rule of Civil Procedure 45 ..................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure ("Rule") 45, Non-Parties Real Chemistry, Inc. ("Real Chemistry")[1] and Charles Hemann ("Mr. Hemann") respectfully submit this Memorandum of Law in Support of their Motion to Quash Plaintiff Federal Trade Commission's ("FTC" or "Plaintiff") Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action issued to Real Chemistry and Mr. Hemann by Plaintiff on November 20, 2023 (the "Trial Subpoena").

## PRELIMINARY STATEMENT

A week and a half ago, the Federal Trade Commission ("FTC") explicitly told Mr. Hemann that he would not need to appear as a live trial witness. Despite this unqualified written communication, and Mr. Hemann's (and Real Chemistry's) historical compliance with the FTC's numerous demands for documents, information, and testimony, including a videorecorded trial deposition, the FTC now seeks to compel Mr. Hemann—who lives and works in or around Chicago, Illinois—to serve as a live remote witness against his will and on less than a full week's notice. Real Chemistry and Mr. Hemann noted these objections, and the FTC chose to proceed in seeking to compel Mr. Hemann's live testimony regardless.

Over the short period of time leading up to and during this litigation, Plaintiff has continuously pursued Mr. Hemann, a non-party to this action, for information and testimony. During its investigation of the transaction, Plaintiff demanded, and Mr. Hemann agreed to sit for, a nearly hour-long interview, which took place on June 29, 2023. Thereafter, on July 11, Mr. Hemann sat for an investigational hearing before the FTC lasting between one and two hours. Between September and October of this year, Mr. Hemann then spent hours on calls with outside counsel and Real Chemistry's in-house legal team and assisted in personally gathering and

---

[1] The Trial Subpoena was issued to Real Chemistry International, LLC. However, this is a holding company, and the operating entity is Real Chemistry, Inc. As such, we proceed as if the Trial Subpoena was issued to Real Chemistry, Inc.

producing over 440 pages of documents in response to document subpoenas issued by both parties to this action. This culminated in Mr. Hemann sitting for a videorecorded deposition on October 6, 2023 (the "Trial Deposition"), where he was again questioned extensively by counsel for Plaintiff, as well as counsel for Defendants, giving between three to four hours of testimony, on top of the hours he had to spend preparing for the deposition.

This time spent complying with the parties' demands was in addition to Mr. Hemann's busy schedule performing his core responsibilities leading Real Chemistry's healthcare-focused digital marketing and media business as its President of Integrated Activation. Recognizing those efforts, which resulted in the FTC having several hours of his videorecorded testimony from the Trial Deposition, the FTC communicated to him and the Defendants in writing on November 9 that Mr. Hemann would not need to provide live testimony, and that instead the FTC would play for the Court excerpts from his testimony at the Trial Deposition. Mr. Hemann relied on that commitment in arranging his schedule for the subsequent two weeks during which the trial would proceed.

Nonetheless, five days later (on November 14), the FTC went back on its word, and told Mr. Hemann that it likely would seek to compel him to provide testimony pursuant to an inherently defective Trial Subpoena—a subpoena that is defective even if the FTC now chooses "only" to seek Mr. Hemann's live testimony remotely. As a resident of Chicago, Illinois who does not regularly travel to New York City for business, Mr. Hemann is well outside of the 100-mile territorial limitation of this Court's subpoena power as established under Rule 45. The FTC has not shown that good cause exists to deviate, under the specific circumstances of this matter, from this standard territorial limitation long resident in the Federal Rules of Civil Procedure, which exists precisely to protect witnesses like Mr. Hemann.

What is more, if compelled to testify live remotely, Mr. Hemann would need to spend time preparing for and giving testimony that will likely be a restatement of prior testimony given during both his investigational hearing and again at his deposition (the latter of which was videorecorded, and therefore could simply be played for the Court). And, if the FTC's allegations are correct, equivalent testimony could easily be obtained from any other healthcare-focused advertising agency located in New York City, one of the advertising capitals of the entire country. For these reasons, the Court should quash the FTC's defective Trial Subpoena.

## BACKGROUND

For months, non-parties Real Chemistry and Mr. Hemann have been complying with both parties' many demands related to this litigation and the preceding investigation. In June 2023, the FTC contacted Real Chemistry, requesting that it discuss topics related to its investigation into the contemplated merger challenged in this action. Hemann Decl. ¶ 7. Given the topics that the FTC was interested in discussing, Real Chemistry identified Mr. Hemann as the individual best suited for this interview. *Id.* Despite Mr. Hemann's already exceedingly busy schedule leading Real Chemistry's healthcare-focused digital marketing and media business as its President of Integrated Activation, he complied. Hemann Decl. ¶¶ 1, 7. In doing so, he sat for an interview with the FTC on June 29. Hemann Decl. ¶ 7. Following that interview, the FTC then demanded that Mr. Hemann meet with them again, this time to provide testimony during an investigational hearing. Hemann Decl. ¶ 8. Mr. Hemann again complied, and, in doing so, was forced to spend hours preparing with both in-house and outside legal counsel to give testimony and ultimately providing approximately one to two hours of testimony during an investigational hearing before the FTC on July 11, 2023. *Id.* Mr. Hemann's involvement, however, did not end there.

Following the initiation of this action, in response to separate voluminous document

subpoenas issued by Defendants and Plaintiff on, respectively, August 29 and September 1, Mr. Hemann was once again required to personally spend hours retrieving documents to satisfy both parties' subpoenas.[2] Hemann Decl. ¶¶ 9, 10. Those efforts ultimately culminated in the production of over 440 pages of documents and data to both parties, made via four separate productions in September and October 2023. Hemann Decl. ¶ 10. But the parties still required more of Mr. Hemann, as they then both issued separate subpoenas for the deposition of a corporate representative of Real Chemistry. Hemann Decl. ¶ 11. Mr. Hemann was the only choice to appropriately speak to many of the topics noticed in those subpoenas, requiring him to sit for a deposition, which occurred on October 6, 2023. Hemann Decl. ¶¶ 11, 12. During that deposition— which was the second time he gave recorded testimony in this matter and the third time he answered questions from the FTC from the beginning of the investigation—Mr. Hemann gave approximately three to four hours of videorecorded testimony beginning at approximately 9:30 AM EDT and concluding at 1:12 PM EDT. Hemann Decl. ¶ 12. Again, additional time needed to be spent with both in-house and outside legal counsel to prepare for that deposition. *Id.*

On November 9, 2023, the FTC notified Mr. Hemann that his involvement in this matter had finally concluded, stating that "we notified Defendants today of our intent to call Chuck Hemann by video deposition designation." Hemann Decl. ¶ 14. Less than a week later, on November 14, the FTC reversed course, stating that it had changed its position and that it would seek to compel Mr. Hemann's live testimony on November 27, despite Mr. Hemann being beyond the Court's subpoena power. Hemann Decl. ¶¶ 15, 16. The FTC then issued the Trial Subpoena in the late afternoon on Monday, November 20, seeking to compel Mr. Hemann to testify live by teleconference at 9:00 AM on Monday, November 27, immediately following Thanksgiving

---

[2] What is more, both parties' subpoenas were extremely broad in their scope and specified unreasonably short timeframes for compliance. *See* Hemann Decl. ¶ 9.

weekend. Hemann Decl. ¶ 16. Despite noticing Mr. Hemann's testimony for Monday, November 27, we understand that the FTC may permit him to give testimony on either Monday, November 27 or Wednesday, November 29. Hemann Decl. ¶ 17.

## ARGUMENT

## I.   THE TRIAL SUBPOENA IS INVALID UNDER RULE 45.

The Trial Subpoena must be quashed for three separate reasons, each of which, on its own, is sufficient to quash the subpoena: (1) Mr. Hemann is located outside the territorial limits of the Court's subpoena power because he neither lives in nor regularly transacts business within the Court's territorial jurisdiction; (2) compliance with the Trial Subpoena would subject him to undue burden; and (3) the Trial Subpoena does not provide Mr. Hemann with a reasonable time for compliance. Under Rule 45, a court "must quash or modify a subpoena that . . . fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c); [or] subjects a person to undue burden" as is the case here. *See* Rule 45(d)(3)(A)(ii), (iv).

### A.   The Trial Subpoena must be quashed because it violates the geographical limitations of Rule 45.

#### 1.   **Mr. Hemann lives outside of the Court's territorial subpoena power**.

The Trial Subpoena must be quashed because Mr. Hemann resides outside of the Court's territorial subpoena power. Rule 45 provides that "federal courts can only compel the appearance of witnesses who reside in the district or are located within 100 miles of the place of trial." *Searle v. Gilead Scis., Inc.*, No. 22 CIV. 352 (ER), 2022 WL 294727, at *2 (S.D.N.Y. Feb. 1, 2022) (citing Rule 45(c)(1)(A)). It is well settled that "a trial subpoena that requires the attendance . . . outside the territorial power of the Court . . . may be quashed for that reason alone." *Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16 CIV. 9848 (PGG), 2023 WL 4406149, at *3 (S.D.N.Y.

July 7, 2023) (quoting *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2022 WL 2162981, at *2 (S.D.N.Y. May 5, 2022)).

Mr. Hemann lives in Chicago, Illinois, nearly 800 miles from this Court's address at 40 Foley Square, New York, New York. Hemann Decl. ¶ 4. He is employed at Real Chemistry's offices in Chicago. Hemann Decl. ¶ 5. Because he resides well beyond the 100-mile geographical limitation set in Rule 45, he is beyond the court's subpoena power, rendering the Trial Subpoena invalid and appropriate for the Court to quash.

> 2.  **Mr. Hemann does not "regularly transact business" within the Court's territorial subpoena power.**

While Rule 45(c)(1)(A) also states that one who "regularly transacts business in person" within 100 miles of the Court is subject to its subpoena power, this standard is similarly unsatisfied for Mr. Hemann. He does not regularly travel to the New York area for business purposes; he has traveled for business within a 100-mile radius of the Court only eight times since 2021. Hemann Decl. ¶ 6. Each trip lasted no more than one or two days. *Id.*

While there is no bright line test for the number of trips or days that qualify as "regular" business travel, courts have typically found that infrequent, albeit periodic, trips are insufficient to invoke a court's subpoena powers. *See Perez v. Progenics Pharm., Inc.*, No. 10-cv-08278 (LAP), 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015) (finding person who attended quarterly meetings in person or by phone at defendant company's headquarters in New York did not regularly conduct business in New York for purposes of Rule 45 trial subpoena); *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) (determining that 14 to 18 days of business travel in New York over two years was not "regular" in quashing subpoena). In *Perez*, though the subpoenaed individual regularly attended board meetings on a quarterly basis within the court's territorial jurisdiction, such infrequent contact was not deemed to be sufficient to

compel this individual to testify at trial. *Perez*, 2015 WL 4111551, at \*2. Similarly, while Mr. Hemann might visit the New York area occasionally for business purposes, he has only made eight such trips since 2021. Hemann Decl. ¶ 6. These infrequent trips lasted merely one or two days. *Id.* Such a tenuous connection to the New York area is plainly insufficient to cause Mr. Hemann to be under this Court's subpoena power.

Because he neither resides in nor regularly travels for business to the geographic area subject to the Court's subpoena power as established in Rule 45, Mr. Hemann's attendance at trial cannot be compelled. The Trial Subpoena therefore must be quashed. *See* Fed. R. Civ. P. 45(c)(1); *Great Lakes*, 2023 WL 4406149, at \*3.

**B.      The Trial Subpoena must be quashed because it imposes an undue burden on Mr. Hemann.**

There exist other limitations apart from the clear territorial restrictions on the power of a subpoena. Specifically, a court is required to quash a subpoena that subjects any person, including a non-party, to "undue burden." Rule 45(d)(3)(A)(iv). "The Court engages in a balancing test to determine whether undue burden exists." *Keawsri*, 2022 WL 2162981, at \*2 (citations omitted). This balancing exercise prompts the court to "consider whether the information is necessary and whether it is available from any other source." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (citations omitted). In this balancing effort, a non-party like Mr. Hemann is entitled to special "consideration regarding expense and inconvenience." C*oncord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) (quashing burdensome subpoena served on non-party Merrill Lynch).

Compliance with the Trial Subpoena would impose an undue burden on Mr. Hemann. To comply, he would need to spend significant time preparing for and providing testimony. The FTC's conduct has also directly contributed to increasing the burden on Mr. Hemann. Mr. Hemann was

plainly told that he would not be called as a live trial witness. As a result, he had no expectation that he would need to be give testimony during this period. Nor did he have any expectation that he would need to entirely reorganize his schedule to accommodate such testimony and preparation for it. The last-minute issuance of the Trial Subpoena itself—caused entirely by the FTC's decision to wait to issue it until just two full business days from the date on which he will be compelled to testify—only further compounds this burden.[3]

Mr. Hemann would be required to bear these burdens simply to likely repeat the same recorded testimony that he gave on now two prior occasions during his investigational hearing and videorecorded deposition. If the FTC's case is strong, it is surely the case that the Court will be hearing from other similarly situated digital marketing and media agencies, many of which are almost certain to be larger in terms of the aggregate volume of programmatic HCP advertising procured for their clients. In short, compelling this non-party witness's live testimony is duplicative and unnecessary.

Should Mr. Hemann not testify as a live trial witness, his prior testimony unquestionably could still be presented to the Court in the form of his videorecorded deposition. *See Argent Funds Grp., LLC v. Schutt*, No. 3:05 CV 01456 SRU, 2006 WL 2349464, at *5 (D. Conn. June 27, 2006) ("[N]on-party witnesses who cannot be compelled to testify by subpoena can appear at trial through a videotaped deposition."); *Johnsen, Fretty & Co., LLC v. Lands South, LLC*, 526 F. Supp. 2d 307, 314 (D. Conn. 2007) (allowing testimony on videotape for nonparties who cannot

---

[3] Additionally, the FTC indicated that they permit Mr. Hemann to give testimony on November 29 (instead of November 27, as indicated in the Trial Subpoena) but did not indicate a specific time. Compelling Mr. Hemann to testify on November 29 in the afternoon, would require him to reschedule a preexisting medical appointment with a specialist physician. Hemann Decl. ¶ 17. The purpose of this appointment is to meet with the specialist in preparation for a subsequent medical procedure to occur at a subsequent scheduled date. *Id.* If forced to reschedule this preparation appointment, the subsequent procedure would similarly require rescheduling. *Id.* Due to this specialist's limited schedule, rescheduling both appointments would be extremely difficult, and, if Mr. Hemann is forced to do so, would likely delay his necessary medical procedure until sometime into early 2024. *Id.*

be subpoenaed); *Keawsri*, 2022 WL 2162981, at *3 ("Defendants have not shown how the witnesses possess relevant testimony or why—if they do possess relevant testimony—such testimony could not be presented by deposition."). Indeed, it is our understanding that Defendants do not even oppose allowing the FTC to play Mr. Hemann's prior videorecorded testimony.

Because Mr. Hemann has already taken time out of his busy schedule to sit for a videorecorded deposition where the parties questioned him for several hours, Plaintiff can easily present videoclips from Mr. Hemann's deposition at trial, as we understand they plan to do for other witnesses. As such, they would still be able to introduce Mr. Hemann's testimony at trial. Because the same testimony he would likely provide at trial is available from Mr. Hemann's videorecorded deposition, there is almost no value in his live testimony, certainly relative to the burden it would impose on Mr. Hemann. Lastly, while the FTC has not revealed the names of any of its other trial witnesses to Mr. Hemann, he understands that the FTC has been in contact with, and may seek to introduce testimony on behalf of, other digital marketing and media agencies. It is likely the case that Mr. Hemann's testimony will tread no new ground and will be similar to that offered by these other agencies, given the overlap in their roles, responsibilities, and interaction with other market participants.

Because the burden to Mr. Hemann is significant, particularly in light of his status as a non-party, and the benefit of his live testimony essentially nonexistent, the balance of interests here falls in Mr. Hemann's favor, and the Trial Subpoena should be quashed.

**C.      The Trial Subpoena must be quashed because it does not provide Mr. Hemann with a reasonable time for compliance.**

Courts must also quash subpoenas that "fail[] to allow a reasonable time to comply"—a standard that is certainly met here. *See* Rule 45(d)(3)(A)(iv). Despite: (1) placing Mr. Hemann on a final witness list on November 3; (2) informing Mr. Hemann on November 9 that he would not

be called as a live trial witness; (3) reversing itself on November 14 and stating he would be called as a trial witness, and (4) knowing that Mr. Hemann would not appear voluntarily and that they would need to issue a subpoena to compel his testimony, the FTC failed to serve the Trial Subpoena until November 20. This is a mere seven days—and *only two full business days* given the intervening Thanksgiving holiday—from the date he would provide his testimony. This certainly does not provide a reasonable time for Mr. Hemann to comply.

No bright line rule exists as to whether a subpoena has afforded a witness reasonable time for compliance; instead, courts look to the totality of the circumstances in making this assessment. *See, e.g., Brown v. Hendler*, No. 09 CIV. 4486 RLE, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011). In *Brown*, the court quashed as unreasonable under Rule 45 a post-judgment deposition subpoena giving the witness nine days to comply. The circumstances here are less reasonable than those in *Brown*. Here, the FTC issued the Trial Subpoena on Monday, November 20, just seven days before the date on which Mr. Hemann would be compelled to testify on Monday, November 27. This is two days fewer than the court in court in *Brown* determined to be unreasonable. In actuality, however, the FTC has not even given Mr. Hemann that long—he really has just two days during this week to prepare his testimony. Because the FTC served the Trial Subpoena in the late afternoon on Monday, November 20 and because of the intervening Thanksgiving holiday, Mr. Hemann is therefore left with just two full business days on which to prepare his testimony— Tuesday, November 21 and Wednesday, November 22.[4] Otherwise, he would be required to disrupt his Thanksgiving holiday. Complying would therefore require Mr. Hemann, a non-party

---

[4] Despite noticing Mr. Hemann's testimony for Monday, November 27, we understand that Plaintiff may permit Mr. Hemann to give testimony on either Monday, November 27 or Wednesday, November 29. However, on its face, the Trial Subpoena sets the date for testimony as November 27. This offer, because it is not reflected in the subpoena or elsewhere, therefore does not impact the analysis. Moreover, even if made to comply on November 29, the Trial Subpoena remains unreasonable for the reasons set out herein, and because Mr. Hemann has a difficult to reschedule medical appointment (one required in advance of a medical procedure) for the afternoon of November 29.

witness, to work over his Thanksgiving holiday and act within this short timeframe. This is unreasonable and would not allow him sufficient time to prepare for his testimony. *See Brown*, 2011 WL 321139, at *2; *Ardak Akishev, et al. v. Sergey Kapustin, et al.*, No. CV 13-7152 (NLH/AMD), 2017 WL 11637308, at *5 (D.N.J. Mar. 9, 2017) (granting non-parties' motions to quash deposition and document subpoenas because nine days' notice, which was further shortened to even fewer business days due to Christmas, was not a reasonable time to comply with the subpoenas).

This unreasonably short amount of time in which to prepare is also not born out of any unavoidable or unforeseen circumstances. Rather, it has been created by the FTC's own lack of diligence and organization. While Mr. Hemann was informed that he was included on the FTC's trial witness list on November 2 (which Mr. Hemann and Real Chemistry understand was subsequently exchanged between the parties on November 3), he was specifically told, in writing, on November 9 that he would not need to provide live trial testimony. Then even after the FTC went back on that representation on November 14, they waited until November 20 to issue the Trial Subpoena, despite, we understand, issuing other non-party subpoenas on or around November 14. The FTC has been inconsistent and dilatory, whether negligently so or otherwise, with their approach towards Mr. Hemann, and now expects him, as a non-party to this litigation, to go above and beyond what reasonable compliance should be. The result is an unreasonable Trial Subpoena, which must be quashed under Rule 45.

## II.    15 U.S.C. § 23 DOES NOT PROVIDE A BLANKET EXCEPTION TO RULE 45'S GEOGRAPHIC LIMITATIONS, AND ITS REQUIREMENTS HAVE NOT BEEN MET.

The Trial Subpoena must be quashed because, even to the extent 15 U.S.C. § 23 ("Section 23") could be viewed as creating an exception to the 100-mile geographical restriction for antitrust

cases—which we do not concede—it has not been satisfied. Consistent with Rule 45(c), Section 23 presumes that courts, in hearing antitrust actions, are similarly geographically restricted in their subpoena power, providing that "no writ of subpoena shall issue for witnesses living out of the district in which the court is held at a greater distance than one hundred miles from the place of holding the same." 15 U.S.C. § 23. Only upon a showing of the following two narrow circumstances does Section 23 purport to permit courts to depart from this presumed territorial limitation: (1) the "suit, action, or proceeding [is] brought by or on behalf of the United States"; and (2) the trial court has given "permission" to issue the subpoena after the subpoenaing party has made an affirmative "application" and shown "cause" that the otherwise improper subpoena can be issued. *See* 15 U.S.C. § 23. Plaintiff here has not satisfied either requirement. Nor is there any exception on the face of Rule 45 that suggests Section 23 should apply in these circumstances.

### A. The Subpoena must be quashed because the FTC has not shown cause as to why Mr. Hemann's testimony is necessary.

The FTC cannot rely on Section 23 to transform the Trial Subpoena, which violates Rule 45(c), into an enforceable subpoena because they have not made the required particularized showing that Mr. Hemann must be compelled to testify at trial. Under Section 23, Plaintiff has a statutory obligation to make a "proper application" showing "cause" as to why Mr. Hemann specifically should be required to appear at trial in New York City. *See* 15 U.S.C. § 23; *United States v. Wyeth*, Civil Action Nos. 03-12366-DPW, 06-11724-DPW, 2015 WL 8024407, at *4 n.2 (D. Mass. Dec. 4, 2015) (emphasizing that 15 U.S.C. § 23 requires plaintiffs to show cause as to why "distant witnesses" need to appear at trial); *see also A. Kush & Assocs, Ltd. v. Weingeroff Enters., Inc.*, No. 85 C 493, 1988 WL 64082 (N.D. Ill. June 8, 1988) (interpreting 18 U.S.C. § 1965(c)'s analogous provision regarding authorization for nationwide service to require an individualized showing of cause as to a particular subpoenaed party).

In *A. Kush*, the court determined that 18 U.S.C. § 1965(c)'s analogous provision permitting nationwide service only "upon a showing of good cause" in cases brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") had not been satisfied. There, a third party who had previously been deposed had been issued a subpoena to serve as a trial witness. Although the third party was outside of the court's 100-mile territorial jurisdiction under a prior version of Rule 45, the subpoenaing party claimed that the third party's live testimony was needed so that the jury could "make an in-person credibility determination." *A. Kush*, 1988 WL 64082, at *5. The court disagreed, finding that "'[g]ood cause' must mean more than this" because, if sufficient, then "every request for a RICO subpoena would be for good cause per se." *Id*. at *4. The FTC has done even less here than the subpoenaing party in *A. Kush* to show cause, as it has offered no explanation as to why Mr. Hemann specifically must be compelled to testify live, to comply with the Trial Subpoena. It has made no attempt at showing that Mr. Hemann can offer some unique testimony that other trial witnesses cannot provide. It has made no attempt to explain why Mr. Hemann's videorecorded deposition is insufficient.

It does not do so because it cannot. First, Mr. Hemann understands that the parties are submitting videorecorded deposition testimony of several other witnesses, and the FTC has not articulated any reason why it cannot do the same for Mr. Hemann, as his live trial testimony would be likely to retread the same topics to which he has already testified during that videorecorded deposition. Second, there are numerous other healthcare-focused digital marketing agencies who are better situated to serve as trial witnesses. Hemann Decl. ¶ 18. Indeed, the agencies Publicis Groupe, CMI Media Group, McCann Health, Ogilvy Health, Area 23, Klick Health, and Saatchi & Saatchi are based in or have a significant presence in the New York or Philadelphia metropolitan

areas, all within the Court's clear territorial subpoena power.[5] *Id.* Third, these agencies are significantly larger than Real Chemistry and are therefore able to offer an equally if not more comprehensive picture of the relevant entities involved in and particularities of the alleged market the FTC claims is at issue in this action. *Id.* Plaintiff has therefore made no particularized showing of cause to subject Mr. Hemann to the Trial Subpoena, and it must be quashed as a result.

The Joint Stipulated Civil Case Management Plan and Scheduling Order's (the "Case Management Plan") broad authorization of nationwide service in this matter does not satisfy Section 23's requirement and therefore does not save the Trial Subpoena. *See* ECF No. 103 at 13. The Case Management Plan states:

> Good cause having been shown in view of the geographic dispersion of potential witnesses in this action, the parties will be allowed nationwide service of process of discovery and trial subpoenas pursuant to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23, to issue from this Court that may run into any other federal district requiring witnesses to attend this Court.

This language in the Case Management Plan is insufficient to satisfy a particularized showing of good cause to compel a non-party like Mr. Hemann's compliance with the Trial Subpoena under Section 23 in contravention of the clear language of the current version of Rule 45. First, as discussed, statutes requiring a showing of cause before issuance of a nationwide subpoena have been interpreted to require a particularized showing of cause for each subpoenaed individual. The Case Management Plan makes no such specific findings as to Mr. Hemann and instead broadly provides that cause has been shown due to "the geographic dispersion of potential witnesses." Second, the mere general existence of dispersed witnesses cannot be sufficient to compel every witness's compliance with subpoenas issued in this matter. If this standard was sufficient, then it would be the case that nearly any subpoena in an antitrust action would meet this

---

[5] References to these companies are meant as illustrative and not comprehensive examples of other agencies which operate in this space.

standard, which defies the plain reading of the statute, which affirmatively requires cause to be shown. As in *A. Kush*, a generalized interpretation of "good cause" that would all but obviate that language should be avoided.

Third, the Case Management Plan, including the provision regarding nationwide service, was jointly submitted by the parties to this litigation without any input from any third party (or any particular reason for a third party to know it should provide input at that point). The parties to the matter are motivated to find that cause exists to issue nationwide subpoenas, as it significantly reduces their burden to organize their discovery plan, take thoughtful depositions with an eye toward trial, and limit imposition on non-party witnesses, instead providing them with a blank check to involve any non-party no matter how distantly located or duplicative their testimony may be. That being the case, in entering the Case Management Plan, it is understandable but insufficient and ultimately unfair that no third party's interest was actively considered on this critical point, yet they would potentially be required to testify in contravention of the clear language of Rule 45, if mere inclusion in the plan were a sufficient showing. It therefore cannot be the case that the Case Management Plan provision satisfies Section 23's requirements, and the subpoena must therefore be quashed.

**B.     The Subpoena must be quashed because the FTC does not bring this action "on behalf of the United States."**

Moreover, Section 23 titled "Suits by United States; subpoenas for witnesses," specifically addresses suits, actions, or proceedings "brought by or on behalf of the United States . . . arising under the antitrust laws." The pending action was not brought by or on behalf of the United States, but rather, by the FTC, an independent administrative agency. Section 23 cannot be distorted to permit nationwide service of trial subpoenas in antitrust actions that are brought by or on behalf

of any entity other than the United States.[6] Thus, Section 23 is inapplicable to Mr. Hemann's trial subpoena, and for this reason as well, the subpoena must be quashed.

### III.   PERMITTING MR. HEMANN TO TESTIFY REMOTELY DOES NOT CURE THE DEFECTIVE TRIAL SUBPOENA.

The FTC's offer in the Trial Subpoena for Mr. Hemann to give testimony remotely instead of in person does not render the otherwise invalid Trial Subpoena enforceable. While Rule 43(a) permits witnesses to provide live court testimony remotely, it is well-established that "Rule 43(a) cannot be used as an end-run around Rule 45(c)" and the geographical limitations on subpoena power set therein. *Rochester Drug Coop. v. Soni*, 23-MC-00091 (PMH), 2023 WL 2919097, at *3 (S.D.N.Y. Apr. 12, 2023) (determining the subpoena compelling deposition testimony outside of the court's territorial jurisdiction to be invalid). However, the FTC looks to do just that.

Courts in this District have rejected the notion that modification to allow for remote testimony permits a subpoenaing party to disregard the 100-mile territorial limitation of a court's subpoena power. *See Broumand v. Joseph*, 522 F. Supp. 3d 8, 24 (S.D.N.Y. 2021) (determining arbitral subpoena for remote testimony was unenforceable where the witness was located outside of the court's territorial jurisdiction); *Rochester Drug Coop.*, 2023 WL 2919097, at *3 (same). This is because, based on a plain reading of Rule 45(c), the geographical limitations concern not "how far a person would have to travel, but simply the location of the proceeding at which a person would be required to attend." *Broumand*, 522 F. Supp. 3d at 24. Indeed, finding otherwise would bestow on every court "unbounded power to compel remote testimony from any person residing anywhere in the country" and thus "render Rule 45(c)'s geographical limitations a nullity." *Broumand*, 522 F. Supp. 3d at 24. As discussed, Mr. Hemann is located outside of the Court's

---

[6] It appears that no court has opined on whether Section 23 can be invoked by the FTC, as acting "by or on behalf of the United States."

territorial jurisdiction as he lives in Chicago—nearly 800 miles from New York City—and because he does not regularly do business in the New York area. Any claim that the Trial Subpoena's modification to allow for remote testimony makes this otherwise invalid subpoena enforceable would therefore be an impermissible attempt at an "end-run around" the Court's territorial limitations under the federal rules. Because Mr. Hemann is located outside of the Court's territorial jurisdiction and the Trial Subpoena's permission for remote testimony does not cure that defect, the Trial Subpoena is unenforceable and must therefore be quashed.

## CONCLUSION

For the foregoing reasons, this Court should grant an order pursuant to Rule 45 of the Federal Rules of Civil Procedure quashing the Trial Subpoena.

Dated:  November 21, 2023

ROPES & GRAY LLP

*/s/ Jonathan Klarfeld*
**ROPES & GRAY LLP**
Jonathan Klarfeld
Chong S. Park (*pro hac vice* application
pending)
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Tel: 202-508-4600
jonathan.klarfeld@ropesgray.com
chong.park@ropesgray.com

*Counsel for Third-Party Real Chemistry*

17